UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NEAL DAVIS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 3:16-CV-01312-L |
| § | |
| MARTIN MARIETTA MATERIALS, § | |
| INC., § | |
| § | |
| Defendant. § | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, Defendant Martin Marietta Materials, Inc. ("Martin Marietta") moves for summary judgment on Plaintiff's FLSA claim for unpaid overtime and on his Title VII/Texas Labor Code claims for unlawful discrimination based on race or sex. As permitted under Local Rule 56.3(b), the matters required pursuant to Local Rule 56.3(a) are set forth in this Brief.

### I.   SUMMARY

*Fair Labor Standards Act ("FLSA") Claim* – Plaintiff claims he occasionally worked unpaid overtime after he clocked out and during certain lunch periods. Martin Marietta has a payroll adjustment form that employees use to correct their timesheets if they believe they are incorrect. However, Plaintiff never submitted the Martin Marietta payroll adjustment form to correct any timesheets that he now alleges failed to reflect all overtime. Further, Plaintiff has no alternative documentation, or even a personal recollection, identifying the number of unpaid overtime hours he allegedly worked or the dates he worked them. Because there is no just and reasonable way to assess and calculate Plaintiff's FLSA claim, summary judgment should be granted.

*Title VII and Texas Labor Code Discrimination Claims* – Plaintiff claims he was denied promotions to Human Resources Manager (a/k/a Administrative Manager) and Planner and eventually terminated based on his race or sex. With regard to Administrative Manager, Plaintiff had no Human Resources experience with a private employer. The candidate selected, however, had already successfully handled substantially similar HR duties for Martin Marietta's Midlothian Plant, the location of the open position. With regard to Planner, the candidate selected had been performing the Planner job duties for approximately one year before the hiring decision. Because Plaintiff cannot show that no reasonable employer would have selected the successful candidates (or otherwise show pretext), summary judgment should be granted on both promotion claims.

Finally, with regard to termination, Martin Marietta's attendance policy provides that six absences or 12 tardies within 12 months support termination. After earlier attendance policy warnings, Plaintiff was tardy 24 times in 12 months. He was, thus, terminated per the attendance policy. Plaintiff cannot show application of the attendance policy was pretextual, and summary judgment should be granted.

## II.   UNDISPUTED FACTS

*Alleged Overtime*

1. Plaintiff was a Warehouse Clerk at Martin Marietta's Cement Plant in Midlothian, Texas ("Midlothian Plant"). Plaintiff claims that, after clocking out, he would occasionally unload a late-arriving truck. He also claims he would work during certain lunch breaks. This is the unpaid overtime that Plaintiff seeks. Pl. Dep. 165:23-166:8 (App. 025); *see also* Pl. Dep. 104:21-24 (App. 014) & Ex. 20 (lunch policy) (App. 059-060)

2. Martin Marietta records employee work time through a Kronos time clock system. Pl. Dep. 103:17-23 (App. 014) & Ex. 20 (App. 059-060). Plaintiff admits he recorded his time by punching-in and punching-out on the time clock. Pl. Dep. 51:13-17 (App. 007) & Ex. 10 (App.

2

033) (Plaintiff's time clock detail). Work time recorded on Plaintiff's timesheets was paid to him. Pl. Dep. 55:4-7 (App. 007).

3.      Based on Plaintiff's timesheets, Martin Marietta paid him a substantial amount of overtime. For instance, during the year before termination, Plaintiff was paid $31,576.42 in regular pay and $23,023.47 in overtime pay. Pl. Dep. 47:2-15 (App. 005) & Ex. 5 (App. 029). For virtually every day worked, Plaintiff received overtime pay. Pl. Dep. 52:4-7 (App. 006).

4.      Martin Marietta had a process in place to correct inaccurate timesheets. Pl. Dep. 50:7-11 (App. 006). As Plaintiff knew, an employee could obtain and sign a payroll adjustment form if his timesheets were incorrect. Pl. Dep. 49:8-50:16 (App. 006) & Ex. 7 (App. 030) & 8 (App. 031); *see also* Pl. Dep. 53:11-19 (App. 007) & Ex. 9 (App. 032).

5.      Yet, Plaintiff cannot identify a single instance when he submitted a payroll adjustment form indicating that he worked overtime that had not been paid. Pl. Dep. 52:8-12 (App. 006); 58:12-16 (App. 008); 164:6-19 (App. 024). Plaintiff cannot explain why he did not submit these forms if he had worked unpaid overtime.[1]  Pl. Dep. 50:24-51:7 (App. 006); *see also* Pl. Dep. 167:19-168:14 (App. 025).

6.      Plaintiff further concedes he has no document, note, or calendar entry that specifies when or for how long he allegedly worked unpaid overtime. Pl. Dep. 60:2-11 (App. 008); 61:5-8 (App. 009); 61:20-62:7 (App. 009); 164:22-165:3 (App. 024-025). He admits one would have to guess or speculate in order to determine when he allegedly was not paid overtime or the amount

---

[1] Plaintiff claims on certain occasions he verbally told his supervisor that he needed to correct a clock-in reflected on his timesheets.  Pl. Dep. 153:12-155:1 (App. 023) & Ex. 10 (App. 033-054).  These were not connected to work during lunch or coming back to work; rather, Plaintiff described items such as a late clock-in because a train blocked the entrance or the time clock was not working.  Pl. Dep. 154:2-17 (App. 023). He claims "maybe on two occasions" his supervisor did not get around to making these edits, but he cannot provide additional information.  Pl. Dep. 154:22-155:10 (App. 023).

3

of unpaid overtime. Pl. Dep. 60:12-16 (App. 008); 62:3-7 (App. 009); 65:6-11 (App. 010); 164:10-165:22 (App. 024-025).

*HR Position / No Promotion*

7. Plaintiff applied to become the Midlothian Plant Human Resources Manager (a/k/a Administrative Manager). Pl. Dep. 87:14-88:8 (App. 011) & Ex. 18 (App. 055) (job description); 91:4-8 (App. 012).

8. When he applied, Plaintiff had no Human Resources experience in the private sector. Pl. Dep. 98:8-11 (App. 013). Plaintiff also had no experience with key job duties such as applicant processing and private payroll functions. Pl. Dep. 98:5-25 (App. 013).

*9.* Bridgette Hurst was the candidate selected for the position. Pl. Dep. 88:9-12 (App. 011). She had recently served as HR Administrator for the Midlothian Plant, which had substantially similar job duties. Hurst Decl. ¶ 3 (App. 075); Pl. Dep. 88:18-22 (App. 011). During that earlier stint, Ms. Hurst was widely considered to be a good and fair HR employee who was respected by her colleagues. Pl. Dep. 88:23-89:9 (App. 011-012). Accordingly, Ms. Hurst was selected as Administrative Manager. Hurst Decl. ¶ 3 (App. 075); Doyle Decl. ¶¶ 3-4 (App. 087); Pl. Dep. 89:15-17 (App. 012); 90:14-19 (App. 012).

*Planner / No Promotion*

10. Ms. Kirkpatrick was previously the Maintenance Administrator at the Midlothian Plant from April 2014 to January 2016. During 2015 through the beginning of 2016, Ms. Kirkpatrick performed the Planner job duties because the employee who held the position was on extended medical leave. Hurst Decl. ¶ 4 (App. 075-076).

11. In or about January 2016, Ms. Kirkpatrick was hired as Planner because she was already successfully performing the Planner job duties. Hurst Decl. ¶ 3 (App. 075).

*Termination*

12.    In contrast, Plaintiff had attendance issues. Martin Marietta has a written attendance policy. Pl. Dep. 116:3-7 (App. 017) & Ex. 25 (App. 068). Plaintiff was aware of the attendance policy and its rules. Pl. Dep. 118:8-10 (App. 018).

13.    The attendance policy states two tardies equal one absence; thus, 12 tardies equal six absences. Pl. Dep. 117:8-15 (App. 018). Six absences within 12 months supports termination. Pl. Dep. 118:1-7 (App. 018).

14.    Prior to termination, Plaintiff received a verbal warning, a written warning, and a final warning related to the attendance policy. Pl. Dep. Ex. 28 (App. 072); *see also* Pl. Dep. Ex. 24 (App. 067) (final page) & Ex. 27 (App. 070-071) (final warning with plaintiff's handwriting on document).[2]

15.    In or about January 2016, Bridgette Hurst, Human Resources, reviewed Plaintiff's attendance records. This revealed Plaintiff had clocked in after his 6 a.m. start time 24 times in the prior 12 months. Hurst Decl. ¶¶ 6-7 (App. 076) & Ex. A (App. 078-084); Pl. Dep. 145:3-10 (App. 021) (identifying 6 a.m. as start time). Human Resources determined that this supported termination under the attendance policy. Hurst Decl. ¶¶ 6-7 (App. 076) & Ex. A, p. 1 (App. 078); Pl. Dep. 201:1-5 (App. 026).

16.    Human Resources prepared Plaintiff's termination documentation, which highlighted information from the attendance policy, relevant time records, and Plaintiff's earlier attendance discipline. Hurst Decl. ¶ 7 (App. 076) & Ex. A (App. 078-084).

---

[2] Plaintiff initially did not remember receipt of a written attendance warning. However, after reviewing Deposition Exhibit 28, he testified that he did receive a verbal warning followed by a written attendance warning, both of which were prior to Plaintiff's final warning before termination. Pl. Dep. 134:24-135:23 (App. 019); 137:17-22 (App. 020); 140:19-22 (App. 020); Ex. 28 (App. 072).

17.     Plaintiff claims that Carl Weatherford received preferential treatment under the attendance policy. Pl. Dep. 204:2-5 (App. 026). Mr. Weatherford and Plaintiff worked for different supervisors. Pl. Dep. 151:15-17 (App. 022). Unknown to Plaintiff, Mr. Weatherford was suspended on December 15, 2015, because of four tardies. Hurst Decl. ¶ 9 (App. 076) & Ex. B, p.1 (App. 085); Pl. Dep. 150:21-24 (App. 022) & Ex. 30, p.1 (App. 073). After additional attendance issues, in or about June 2016, Mr. Weatherford was terminated pursuant to the attendance policy. Hurst Decl. ¶ 9 (App. 076) & Ex. B, p.2 (App. 086); Pl. Dep. 151:7-10 (App. 022).

### III.     ARGUMENTS AND AUTHORITIES

**A.     Plaintiff cannot establish an FLSA claim for unpaid overtime.**

1.     <u>Plaintiff lacks required evidence showing the amount of overtime owed</u>.

The Northern District of Texas has been clear that summary judgment is warranted when an FLSA claim lacks specific, reasonable evidence supporting alleged unpaid overtime. In one Northern District case, the court stated:

> Aside from plaintiff's admitted guess as to how many overtime hours she worked, she has produced no factual allegations as to when those hours were worked, what work was accomplished, or for how many of those hours she was not paid. Furthermore, she can point to no records which underreport her time. Because plaintiff has provided the court with no factual allegations in support of her claim that she was not paid for overtime hours under the FLSA, summary judgment must be granted as to that claim.

*Oti v. Green Oaks SCC, LLC*, 2015 WL 329216, at *3 (N.D. Tex. Jan. 23, 2015); *see also Carmichael v. Monarch Dental Corp.,* 2014 WL 1622709, at *3 (N.D. Tex. Mar. 31, 2014) (granting summary judgment for employer because employee merely asserted unpaid overtime but did not present specific evidence of the dates or pay periods and could not create a non-speculative

damages model); *see also Ihegword v. Harris Cty. Hosp. Dist.,* 555 Fed. App'x. 372, 375 (5th Cir. 2014) (rejecting FLSA claim where the only evidence was employee's "unsubstantiated assertions speculated from memory . . . that she actually worked overtime for which she was not compensated").

Here, Plaintiff concedes that he has no documentation or personal recollection of the alleged dates he worked unpaid overtime or the amount of overtime. He admits it would require speculation and guesswork to determine alleged unpaid overtime. Undisputed Fact Nos. 5-6. Plaintiff's lack of specific evidence warrants summary judgment because there is no just and reasonable way to assess or calculate the FLSA claim.

2. <u>Plaintiff failed to follow Martin Marietta's procedure for correcting timesheets</u>.

When an employer has "a reasonable process for an employee to report uncompensated work time, [the employer] is not liable for non-payment if the employee fails to follow the established process." *Nieddu v. Lifetime Fitness, Inc.*, 38 F. Supp. 3d 849, 863–64 (S.D. Tex. 2014); *see Von Friewalde v. Boeing Aerospace Ops., Inc.*, 339 Fed. Appx. 448, 459 (5th Cir. 2009) ("[A]n employee has a duty to notify his employer when he is working extra hours . . . [W]e have expressly rejected the notion that an employer does not have the right to require an employee to adhere to its procedures for claiming overtime"); *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (affirming summary judgment in favor of employer for unpaid meal breaks where employee did not follow the employer's procedures for reporting unpaid work).

Plaintiff knew he had the right to submit payroll adjustment forms if he thought his timesheets or pay was inaccurate. *See* Undisputed Fact Nos. 4-5. Plaintiff did not submit a single payroll adjustment form indicating that he worked unpaid overtime. Accordingly, for this independent reason, summary judgment on Plaintiff's FLSA claim should be granted.

**B.      Plaintiff cannot establish his failure to promote claims.**

Martin Marietta has the legal right to pick among job candidates without judicial second-guessing "unless one candidate is so clearly better qualified that no reasonable employer would have made the same hiring decision." *Cramer v. NEC Corp. of Am.,* 496 F. App'x 461, 465 (5th Cir. 2012); *see also Moss v. BMC Software, Inc.,* 610 F.3d 917, 923 (5th Cir. 2010) ("To show that he was clearly better qualified than [the comparator] and raise a fact question as to whether discrimination was a factor in [employer's] hiring decisions, [plaintiff] must present evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."); *Little v. Tex. Dep't of Criminal Justice*, 177 S.W.3d 624, 632–33 (Tex. App.-Houston [1st Dist.] 2005, no pet.) ("A plaintiff may raise a genuine issue of material fact about pretext by presenting evidence that she is clearly better qualified than the applicant actually selected for the positions in dispute. The evidence of relative qualifications must be more than merely subjective and speculative. It must be specific and comparative in nature") (inside quotes and inside citations omitted). Plaintiff cannot meet this exacting standard and cannot otherwise show pretext.

*Administrative Manager* - Plaintiff cannot show that no reasonable person would have chosen Ms. Hurst as Administrative Manager for Martin Marietta's Midlothian Plant. Ms. Hurst had relevant experience regarding the duties listed on the job description because less than one year earlier she was successfully serving as an HR employee at the Midlothian Plant. Plaintiff, on the other hand, had no Human Resources experience in the private sector. Further, Plaintiff had no relevant experience in critical areas such as payroll. *See* Undisputed Fact Nos. 7-9. So, it defies logic to claim that no reasonable person would have chosen Ms. Hurst over Plaintiff.

*Planner* –Ms. Kirkpatrick was the obvious choice to fill the Planner position. For approximately one year prior to Ms. Kirkpatrick's promotion, the person who held the Planner

8

position was absent due to a medical leave. During this leave of absence, Ms. Kirkpatrick performed the job duties for the absent Planner, and management believed she did a good job. *See* Undisputed Fact Nos. 10-11. Under these circumstances, a reasonable employer certainly could have chosen Ms. Kirkpatrick as Planner.

C.   **Plaintiff cannot establish his termination based on the attendance policy was pretext for discrimination.**

Under the standard burden-shifting analysis, after Martin Marietta shows a legitimate, non-discriminatory reason for termination, Plaintiff must show the stated reason is pretext for unlawful discrimination.[3] *Robertson-King v. Louisiana Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) ("If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff to show the reason is 'merely pretextual.' In conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions") (inside quotes and inside citations omitted); *Mission Consol. Independent School Dist. v. Garcia,* 372 S.W.3d 629, 634 (Tex. 2012) (Texas follows the federal burden shifting standard in discrimination cases).

Martin Marietta has an attendance policy that provides: (1) two tardies equal one absence, and (2) six absences within 12 months equal termination. During an attendance review, Human Resources concluded that Plaintiff had clocked in after his start time 24 times (12 absences) in 12 months. This is double the number of absences warranting termination under the policy. Accordingly, based on the attendance policy, Martin Marietta terminated Plaintiff's employment. *See* Undisputed Fact Nos. 12-16. Plaintiff cannot identify any other employee who received preferential treatment under the attendance policy. *See* Undisputed Fact No. 17. Because Plaintiff cannot establish pretext, summary judgment is warranted on his termination claim.

---

[3] For purposes of summary judgment only, Martin Marietta does not challenge the prima facie case on the wrongful termination claim.

9

WHEREFORE, Martin Marietta requests that the Court grant summary judgment on all of Plaintiff's claims and grant such other and additional relief to which Martin Marietta may be entitled.

Respectfully submitted,

/s/ *Mike Birrer*
Mike Birrer
  Texas State Bar No. 00783662
  mbirrer@ccsb.com
Chelsea Glover
  Texas State Bar No. 24097738
  cglover@ccsb.com
CARRINGTON, COLEMAN,
  SLOMAN & BLUMENTHAL, L.L.P.
901 S. Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

***Attorneys for Defendant Martin Marietta Materials, Inc.***
