# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **NEAL DAVIS,** § | |
| § | |
| *Plaintiff,* § | |
| § | |
| **v.** § | **Case No. 3:16-CV-01312-L** |
| § | |
| **MARTIN MARIETTA MATERIALS,** § | |
| **INC.,** § | |
| § | |
| *Defendant.* § | |

## APPENDIX IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

| No. | Description | APP. NO. |
|---|---|---|
| 1. | Deposition of Neal Davis | APP. 003-APP. 028 |
| 2. | Davis Deposition Exhibit 005 (Paycheck Detail) | APP. 029 |
| 3. | Davis Deposition Exhibit 007 (Payroll Adjustment Form) | APP. 030 |
| 4. | Davis Deposition Exhibit 008 (Corrected Timecard) | APP. 031 |
| 5. | Davis Deposition Exhibit 009 (Payroll Adjustment Form) | APP. 032 |
| 6. | Davis Deposition Exhibit 010 (Time Card Detail) | APP. 033-APP.054 |
| 7. | Davis Deposition Exhibit 018 (HR Job Description) | APP. 055-APP. 058 |
| 8. | Davis Deposition Exhibit020 (Lunch Pay Policy) | APP. 059-APP. 060 |
| 9. | Davis Deposition Exhibit 024 (Termination Documentation) | APP. 061-APP. 067 |
| 10. | Davis Deposition Exhibit 025 (Written Attendance Policy) | APP. 068-APP. 069 |
| 11. | Davis Deposition Exhibit 027 (Final Written Warning) | APP. 070-APP. 071 |
| 12. | Davis Deposition Exhibit 028 (Davis Email re Attendance Discipline) | APP. 072 |
| 13. | Davis Deposition Exhibit 030 (Weatherford Suspension and Termination) | APP. 073-APP. 074 |

1

| | | |
|---|---|---|
| 14. | Declaration of Bridgette Hurst | App. 075 |
| 15. | Exhibit A to Declaration of Bridgette Hurst (Termination Documents) | App. 078-App. 084 |
| 16. | Exhibit B to Declaration of Bridgette Hurst (Weatherford Documents) | App. 085-App. 086 |
| 17. | Declaration of Terry Doyle | App. 087 |

Respectfully submitted,

/s/  *Mike Birrer*

Mike Birrer
  Texas State Bar No. 00783662
  mbirrer@ccsb.com
Chelsea Glover
  Texas State Bar No. 24097738
  cglover@ccsb.com
CARRINGTON, COLEMAN,
  SLOMAN & BLUMENTHAL, L.L.P.
901 S. Main Street, Suite 5500
Dallas, Texas 75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333

**Attorneys for Defendant Martin Marietta Materials, Inc.**

2

Page 1

```
1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
2                        DALLAS DIVISION
3   NEAL DAVIS,                   )
         Plaintiff,               )
4                                 )
    vs.                           )  CASE NO. 3:16-CV-01312-L
5                                 )
    MARTIN MARIETTA               )
6   MATERIALS, INC.,              )
         Defendant.               )
7
8
9                      ORAL DEPOSITION OF
10                         NEAL DAVIS
11                       AUGUST 7, 2020
12
13
14
15        ORAL DEPOSITION OF NEAL DAVIS, produced as a witness
16   at the instance of the Defendant, and duly sworn, was
17   taken in the above-styled and -numbered cause on the
18   7th day of August, 2020, from 9:30 a.m. to 4:11 p.m.,
19   before Susan Flanagan, Certified Shorthand Reporter in
20   and for the State of Texas, reported by machine
21   shorthand, at the offices of Carrington, Coleman, Sloman
22   & Blumenthal, LLP, 901 Main Street, Suite 5500, Dallas,
23   Texas, pursuant to the Federal Rules of Civil Procedure
24   and any provisions stated on the record or attached
25   hereto.
```

Page 2

```
1                       APPEARANCES
2   FOR PLAINTIFF:
3       MR. VINCENT J. BHATTI
        The Bhatti Law Firm
4       14785 Preston Road, Suite 550
        Dallas, Texas 75254
5       (214) 253-2533
        (214) 279-0033 (Fax)
6       vincent.bhatti@bhattilawfirm.com
7
8   FOR DEFENDANT:
9       MR. MIKE BIRRER
        MS. CHELSEA GLOVER
10      Carrington, Coleman, Sloman & Blumenthal, LLP
        901 Main Street, Suite 5500
11      Dallas, Texas 75202
        (214) 855-3000
12      (214) 855-1333 (Fax)
        mbirrer@ccsb.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1                          INDEX
2                                                    PAGE
3   NEAL DAVIS
4      Examination by MR. BIRRER .........................6
5      Signature Page ..................................207
       Court Reporter's Certificate ....................209
6
7
8                         EXHIBITS
9   EXHIBIT          DESCRIPTION                       PAGE
10   1    Personal Information Form                      37
11   2    Certificate of Release or Discharge from Active 38
         Duty
12
     3    Employment History Record                      39
13
     4    Storeroom Attendant Job Description             45
14
     5    Paycheck Stub Dated December 31, 2015          47
15
     6    Paycheck Stub Dated January 29, 2016           47
16
     7    Martin Marietta Payroll Adjustment Form for Neal 49
17        Davis
18   8    Time Card for Neal Davis dated February 9 to    49
          February 15, 2015
19
     9    Texas Industries, Inc., Payroll Adjustment Form 48
20        for Billy Wiggins
21   10   Time Detail for Neal Davis dated December 2014 to 51
          January 2016
22
     11   EEOC Charge of Discrimination                   66
23
     12   EEOC Intake Questionnaire                       67
24
     13   Paycheck Stub Dated December 31, 2015           54
25
```

Page 4

```
1                    EXHIBITS (continued)
2   EXHIBIT          DESCRIPTION                       PAGE
3
     14   Paycheck Stub Dated January 23, 2015           55
4
     15   Paycheck Stub Dated February 13, 2015          57
5
     16   Martin Marietta  Materials Nondiscrimination   71
6         Policy and Prohibition Against Harassment Policy
7    17   Excerpt from Martin Marietta's Code of Ethical 86
          Business Conduct
8
     18   Martin Marietta Administrative Manager Job     88
9         Description
10   19   Resume of Bridgette Hurst                      101
11   20   Texas Cement Production Lunch Pay Policy       103
12   21   Martin Marietta Maintenance Planner Job        106
          Description
13
     22   Martin Marietta Maintenance Planner and        106
14        Administrative Manager Job Descriptions
15   23   Martin Marietta Memo from Jason Crowther dated 107
          January 25, 2016
16
     24   Martin Marietta Supervisor's Report of Incidence 107
17        dated January 21, 2016
18   25   Martin Marietta Texas Cement Attendance Standards 116
19   26   Memo from Eric Wilson to Neal Davis dated June 118
          11, 2013
20
     27   Memo from Eric Wilson to Neal Davis dated      119
21        November 19, 2013
22   28   Correspondence from Neal Davis to Jill Raab with 133
          No Date
23
     29   Excerpt from Martin Marietta New Employee       145
24        Resource Guide
25
```

Page 5

```
 1            EXHIBITS (continued)
 2  EXHIBIT        DESCRIPTION                PAGE
 3   30   Martin Marietta Supervisor's Reports of Incidence  148
         for Carl Weatherford dated December 15, 2015 and
 4       June 30, 2016
 5   31   Plaintiff's Second Amended Objections and          161
         Responses to Defendant Martin Marietta Materials,
 6       Inc.'s First Set of Interrogatories
 7   32   Performance Appraisal of Neal Davis dated 4-20-15  173
 8   33   Medical Record for Neal Davis from Mansfield       181
         Urgent Care
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 6

1         P R O C E E D I N G S
2         (Exhibit Nos. 1 through 4 were marked.)
3         (All parties present have hereby waived the
4   necessity of the reading of the statements by the
5   deposition officer as required by Rule 30(b)(5).)
6              NEAL DAVIS,
7   having been first duly sworn, testified as follows:
8              EXAMINATION
9   BY MR. BIRRER:
10      Q.   Mr. Davis, my name is Mike Birrer, and I'm here
11  today with Chelsea Glover.  We are both attorneys
12  representing Martin Marietta in this lawsuit.
13          And so if you could, state your name for the
14  record.
15      A.   **Neal Davis.**
16      Q.   And what is your current address?
17      A.   **1533 Quintessa Avenue, Kennedale, Texas 76060.**
18      Q.   And do you understand that you are under oath
19  so that you have to tell the truth just like you're
20  sitting before a judge and a jury?
21      A.   **I will, yes, sir.**
22      Q.   And also, a deposition is not a normal
23  conversation.  So if you could, try to wait until I
24  completely finish talking before you try to start
25  answering.  We'll both mess up on that so I'll

Page 7

1   understand, but just try to give me a pause to finish
2   before you answer.  Okay?
3       A.   **Okay.**
4       Q.   And if I ask you a question that needs a yes or
5   no answer, if you could say yes or no rather than nod
6   your head or saying uh-huh or huh-uh, that will help out
7   the court reporter who's here with us today.  All right?
8       A.   **Okay.**
9       Q.   And if you don't understand a question, will
10  you let me know that?
11      A.   **Yes.**
12      Q.   And if you go ahead and answer, we'll all
13  assume that you understand the question and are answering
14  it.  Okay?
15      A.   **Okay.**
16      Q.   Do you have any restrictions on your ability to
17  give full and complete answers today?
18      A.   **No, I do not.**
19      Q.   Other than the lawsuit we're here about today,
20  have you ever been in any other lawsuits?
21      A.   **None.**
22      Q.   Have you ever filed a lawsuit other than this
23  lawsuit?
24      A.   **No.  No, other than a case -- what do call them**
25  **things they send through the mail or something like -- I**

Page 8

1   **don't do nothing with them, but a case action suit.  Like**
2   **phone, stuff like that.**
3       Q.   Class action lawsuits?
4       A.   **Class action lawsuits, yeah.**
5       Q.   Okay.  So you personally have only filed the
6   present lawsuit that we're in?
7       A.   **Yes.**
8       Q.   Other than the EEOC charge you filed in this
9   case, have you ever filed a charge with a government
10  agency?
11      A.   **No.**
12      Q.   Have you ever been arrested?
13      A.   **Once.**
14      Q.   And what was that for?
15      A.   **It was back in July 2013.  It's supposed to**
16  **have been -- I caught my wife -- well, I got arrested for**
17  **assault and battery.**
18      Q.   And was that domestic abuse?
19      A.   **Domestic.**
20      Q.   And were you convicted?
21      A.   **No.**
22      Q.   What was the resolution of the charge?
23      A.   **It was dismissed.**
24      Q.   Are you still married?
25      A.   **No.**

Page 45

1  to the lab, greased, make sure all the machinery was
2  greased and oiled.  And if the processing guy had to take
3  a break or something like that, I'd fill in to watch the
4  mills.
5      Q.   And what did the mills create?
6      A.   When I was over there, they did -- I don't know
7  if they're still doing it, but we did cement.
8      Q.   And then after that, you became a storeroom
9  attendant?
10     A.   That's correct.
11     Q.   And what were job responsibilities -- strike
12  that.  Let me -- look at Exhibit 4 in front of you.  Is
13  Exhibit 4 a true and correct copy of your job description
14  as a storeroom attendant?
15     A.   Correct.
16     Q.   Does Exhibit 4 provide an accurate recitation
17  of what your job duties were as storeroom attendant?
18     A.   Correct.
19     Q.   Did you have any other responsibilities or
20  duties that aren't reflected in Exhibit 4?
21     A.   Yes.
22     Q.   What were those?
23     A.   A whole bunch of them.  Well, that's wrong.
24  I'm sorry.  The other responsibilities that if needed, I
25  help out in other areas.

Page 46

1      Q.   Okay.  But so Exhibit 4, though, is a good --
2  if I were to look at Exhibit 4, this gives me a good
3  understanding of what you did as storeroom attendant.  Is
4  that correct?
5      A.   Correct.
6      Q.   Are you a member of any professional
7  organizations?
8      A.   No.
9      Q.   In the private sector, have you ever served in
10  a human resources position?
11     A.   Not in the private sector, no.
12     Q.   Have you ever been a member of any professional
13  organizations related to human resources?
14     A.   No.
15     Q.   Have you ever been a member of any professional
16  organizations related to planning?
17     A.   To planning?  No.
18          MR. BHATTI:  Can I take a quick break?
19          MR. BIRRER:  Sure.  Absolutely.
20          (Break was taken from 10:28 to 10:36 a.m.)
21          (Exhibit Nos. 5 through 12 were marked.)
22     Q.   (BY MR. BIRRER) Mr. Davis, I'm going to hand you
23  what has been marked as Deposition Exhibit 5.  And so
24  when you were at Martin Marietta, you got check stubs
25  when you got a paycheck.  Correct?

Page 47

1      A.   Correct.
2      Q.   And Deposition Exhibit 5, is this a true and
3  correct copy of your check stub dated December 31, 2015?
4      A.   Correct.
5      Q.   And so on the check stubs, they had where they
6  would say how much regular pay you received for a pay
7  period, how much overtime pay you received, and then it
8  would add it up in a year-to-date column.  Correct?
9      A.   Correct.
10     Q.   And so at the end of 2015, you had earned
11  regular pay of $31,576.42.  Correct?
12     A.   Correct.
13     Q.   And in 2015 at Martin Marietta, you earned
14  overtime pay of 23,023.47.  Correct?
15     A.   Correct.
16     Q.   So it would be fair to say that while working
17  at Martin Marietta, not only did you make overtime, but
18  you earned a substantial amount of overtime.  Correct?
19     A.   Correct.
20     Q.   If you could look at Exhibit 6.
21     A.   (Witness complies.)
22     Q.   Is Exhibit 6 a true and correct copy of your
23  paycheck stub for January 29, 2016?
24     A.   Correct.
25     Q.   And so you were terminated prior to January 29,

Page 48

1  2016.  Correct?
2      A.   Correct.
3      Q.   And so during 2016, your time in 2016 at Martin
4  Marietta, you earned $2,404.90 in regular pay.  Is that
5  correct?
6      A.   Correct.
7      Q.   And you earned $1,386.71 in overtime pay.
8  Correct?
9      A.   Correct.
10     Q.   So for instance, it looks like in your last pay
11  period, you had 40 regular hours and 11 hours and 45
12  minutes in overtime.  Correct?
13     A.   Correct.
14     Q.   And I'm going to go slightly out of order, but
15  I'll come back to these in a second.  I'm going to skip
16  Exhibit 7 and 8 for now and go to Exhibit 9.
17          Do you know who Billy Wiggins is?
18     A.   Yes.
19     Q.   Who is Billy Wiggins?
20     A.   He's in maintenance.  He's a maintenance
21  employee or were during the time frame.
22     Q.   And Exhibit 9, this is a true and correct copy
23  of one of, I guess, Martin Marietta's payroll adjustment
24  forms.  Is that correct?
25     A.   I assume.  First time I've seen this.



Page 49

1    Q.   Pardon?

2    A.   I said I assume it is.  It's the first time

3  I've seen this type of pay adjustment.

4    Q.   It's your testimony under oath that you've

5  never seen a pay adjustment form like the one that's

6  reflected in Exhibit 9?

7    A.   That's correct.

8         MR. BIRRER:  Could you show Mr. Davis

9  Exhibit 7?

10    Q.   (BY MR. BIRRER) Is Deposition Exhibit 7 a true

11  and correct copy of a Martin Marietta payroll adjustment

12  form that was signed by you?

13    A.   That's correct.  I did sign it.

14    Q.   So you have seen a payroll adjustment form.

15  Correct?

16    A.   Correct.

17    Q.   And not only have you seen a Martin Marietta

18  payroll adjustment form, you've signed it in order to

19  have changes made to your payroll.  Correct?

20    A.   That's correct.

21         MR. BIRRER:  Could you show Mr. Davis

22  Exhibit 8?

23    Q.   (BY MR. BIRRER) Is Deposition Exhibit 8 a true

24  and correct copy of a printout of your time card for the

25  period of February 9, 2015, to February 15, 2015?

Page 50

1    A.   Correct.

2    Q.   And so when you compare Exhibit 7 and

3  Exhibit 8, that shows that based on Exhibit 7 when you

4  filled out a payroll adjustment form, there would be

5  changes made to your time card.  Correct?

6    A.   Correct.

7    Q.   And so Martin Marietta had a process in place

8  to adjust -- to make corrections or make adjustments when

9  something wasn't properly reflected in somebody's time

10  card.  Correct?

11    A.   Correct.

12    Q.   And the process was that you would get a

13  payroll adjustment form.  It would be filled out and then

14  that would lead to your time card being adjusted.

15  Correct?

16    A.   Correct.

17    Q.   And then if you turn back to Exhibit No. 9.

18    A.   (Witness complies.)

19    Q.   Exhibit No. 9 is an example where Martin

20  Marietta made a payroll adjustment because somebody

21  worked during the lunch hour and it was not reflected on

22  their time card.  Correct?

23    A.   Correct.

24    Q.   Did you ever complete or submit a payroll

25  adjustment form related to alleged unpaid lunch periods?

Page 51

1    A.   Not as I recall.

2    Q.   Why is that?

3    A.   I don't recall submitting a form for that.

4    Q.   You just don't have any recollection of

5  submitting it or no recollection of why you wouldn't have

6  submitted a form.  Correct?

7    A.   Correct.

8    Q.   I mean, I knew the forms exhibited because

9  you signed one.  Correct?

10    A.   Correct.

11    Q.   If you could look at Exhibit 10.

12    A.   (Witness complies.)

13    Q.   Now, is Exhibit 10 a true and correct copy of

14  your time detail showing punch-in and punch-out and other

15  items from December 2014 to January 2016.  Is that

16  correct?

17    A.   Correct.

18    Q.   And so you can see there's a column that gives

19  the date on the far left side, and then on the right side

20  it shows total amount of hours.  Correct?  Do you see

21  that?

22    A.   Correct.

23    Q.   For instance, on December 8, 2014, you worked

24  -- you worked or your payroll reflected 10 hours and, I

25  believe, 47 minutes of time?

Page 52

1    A.   Correct.

2    Q.   Hold on a second.  Let me just ask a quick

3  question.

4         And so if we look through Exhibit 10, in

5  virtually every single day you worked at Martin Marietta,

6  you received overtime.  Correct?

7    A.   Correct.

8    Q.   And you can't point me to a single time period

9  ever when you submitted a payroll adjustment form where

10  you told human resources, "Hey, there's a mistake on my

11  punch-in, punch-out."  Correct?

12    A.   Correct.

13    Q.   And you don't have any document or email or

14  text message or note anywhere where you tried to give

15  that information that "Hey, there's a mistake on my time

16  card" where you informed human resources that there was

17  any sort of issue or mistake with your time card.

18  Correct?

19    A.   That's correct.

20    Q.   Except, I guess, for Deposition Exhibit 7.

21  Correct?

22    A.   Correct.

23    Q.   And in Deposition Exhibit 7, let me just make

24  sure I understand what they're doing.  In Deposition

25  Exhibit 7, you had received -- you had taken vacation

LEXITAS

Page 53

1 because you were ill.  Is that right?
**2    A.   Correct.**
3    Q.   And then Martin Marietta said, "Hey, we can pay
4 you through our short-term disability plan and you don't
5 have to take vacation."  Correct?
**6    A.   Correct.**
7    Q.   So Exhibit 7 is an example of Martin Marietta
8 helping you in giving you additional money and resources.
9 Correct?
**10    A.   Correct.**
11    Q.   And then if we look at Deposition Exhibit 9,
12 that's an example of Martin Marietta making a correction
13 to Billy Wiggins' payroll, giving him additional money.
14 Correct?
**15    A.   Correct.**
16    Q.   And what they're doing is they're saying, "Hey,
17 you worked through lunch these two days.  We're going to
18 pay you for that."  Correct?
**19    A.   Correct.**
20    Q.   While you were at Martin Marietta, in almost
21 every single paycheck you were paid overtime.  Is that
22 right?
**23    A.   Correct.**
24         (Exhibit Nos. 13 through 15 were marked.)
25    Q.   I'm going to hand your attorney pre-marked

Page 54

1 Deposition Exhibits 13 through 15.  If you could get
2 Exhibit 13.
**3    A.   (Witness complies.)**
4    Q.   That is a true and correct copy of your pay
5 stub for 12/31/2015.  Correct?
**6    A.   Correct.**
7    Q.   And it shows 16 hours of holiday pay and 24
8 hours of vacation pay.  Correct?
**9    A.   Correct.**
10    Q.   Now I want you -- I'm going to compare these to
11 Exhibit 10, which is the time detail report that you
12 looked at.  So I need you to pull up Exhibit 10 and turn
13 to Bates page -- that's the numbers on the bottom
14 right-hand corner.  I want you to turn on Exhibit 10 to
15 Bates page 153.
**16    A.   (Witness complies.)**
17    Q.   Are you there?
**18    A.   Yes.**
19    Q.   Okay.  And then do you see for the period going
20 from 12/20 to 12/27, it shows 3 days of vacation, 8 hours
21 per day, which adds up to 24 hours, and 2 days of
22 holiday, 8 hours per day, which adds up to 16 hours.
23 Correct?
**24    A.   Correct.**
25    Q.   And so the time detail in Exhibit 10, when you

Page 55

1 look at that, it corresponds to the detail on your
2 paycheck stub, which is Exhibit 13.  Correct?
**3    A.   Correct.**
4    Q.   So in other words, the time detailing reflected
5 in Exhibit 10, that actually matches up and shows how
6 much you got paid in your paycheck stubs.  Correct?
**7    A.   Correct.**
8    Q.   Let's look at Exhibit 14.  Exhibit 14, this is
9 a true and correct copy of your check stub for the 7-day
10 period ending on January 18, 2015.  Correct?
**11    A.   Correct.**
12    Q.   And it shows 40 hours of regular pay and 19.88
13 hours of overtime pay.  Correct?
**14    A.   Correct.**
15    Q.   And let's look back at the time detail, which
16 is Exhibit 10, and turn to Bates page 138.  And I want
17 you to look at the time period of January 12 through
18 January 17.
**19    A.   Okay.**
20    Q.   Are you there?
**21    A.   Yes.**
22    Q.   And you add up the hours and you get 59 hours
23 and 53 minutes.  Correct?  And you add them up, you can
24 see the total amount on the left-hand column?
**25    A.   Correct.**

Page 56

1    Q.   Just to make sure the record is clear, so on
2 the time -- on the time detail, which is Exhibit 10,
3 there's a column called Total Hours, and that's just the
4 total hours for a workday.  Correct?
**5    A.   Correct.**
6    Q.   Okay.  And what I was saying is when you add up
7 the total hours for each day in the period of 1/12 to
8 1/17, if you add up those hours, it gets you to 59 hours
9 and 53 minutes?
10         MR. BHATTI:  Objection, form.
11    Q.   (BY MR. BIRRER) Is that correct?
**12    A.   I can't really recall that.  They ain't added**
**13 them all up.**
14    Q.   Say that again.
**15    A.   I can't really recall the amount because it's**
**16 not -- I don't see where they add up at.**
17    Q.   Well, they're not -- you have to add it up
18 yourself.
**19    A.   Okay.**
20    Q.   And that's in minutes.  So it's January 12
21 through January 17.
**22    A.   Okay.**
23    Q.   So when you add those up, that's 59 hours and
24 53 minutes.  Correct?
25         MR. BHATTI:  Objection, form.



Page 57

1    Q.    (BY MR. BIRRER) Is that correct?
2    **A.    Okay.**
3    Q.    I guess let me just kind of cut to the chase.
4    Would you agree with me that the time detail that is
5    Exhibit 10 corresponds to the paycheck stubs which, for
6    instance, is Exhibit 14?
7           MR. BHATTI:    Objection, form.
8    **A.    If I add it up, I assume.**
9    Q.    (BY MR. BIRRER) Okay.  Let's turn to Exhibit 15.
10   **A.    (Witness complies.)**
11   Q.    Is Exhibit 15 a true and correct copy of your
12   check stub for the 7-day period ending on February 8,
13   2015?
14   **A.    Okay.**
15   Q.    Is that a yes?
16   **A.    Yes.**
17   Q.    And this reflects that during that pay period,
18   you worked 40 hours of regular pay and 15.27 hours of
19   overtime pay.  Correct?
20   **A.    Correct.**
21   Q.    And I won't make you do the math, but I will
22   represent to you that if we look at the time detail at
23   Bates page 139 -- are you there?
24   **A.    Yes.**
25   Q.    -- you can see where they have the dates of

Page 58

1    2/2/2015 through 2/7/2015.  Correct?
2    **A.    Correct.**
3    Q.    And so I will represent to you that when we add
4    those times up of total amount worked, they match
5    Exhibit 15.  So does that indicate to you that the hours
6    -- the clock-in hours equal what you were getting paid?
7    **A.    If they match, I would say it's correct.**
8    Q.    You don't have any reason and you're not
9    claiming that anyone ever shorted you in clocking in and
10   clocking out.  Correct?
11   **A.    Correct.  Clocking in and clocking out.**
12   Q.    Okay.  And we were talking earlier about
13   payroll adjustment forms.  Did you ever fill out or
14   complete a payroll adjustment form related to working
15   outside of the time you clocked in or clocked out?
16   **A.    No.**
17   Q.    Walk me through the process of the
18   clock-in/clock-out process at Martin Marietta.
19   **A.    It's a kiosk.  You come in and put your**
20   **fingerprint on the kiosk.  And if it works, you go to**
21   **work.  And you do the same thing when you break for lunch**
22   **or exit.**
23   Q.    And so if you were just taking a 30-minute
24   lunch, you didn't have to clock in or clock out; it
25   automatically deducted the 30-minute lunch.  Correct?

Page 59

1    **A.    That's incorrect.**
2    Q.    Pardon?
3    **A.    That's incorrect.**
4    Q.    You had to clock out?
5    **A.    You had to clock out unless it's the outage.**
6    Q.    Unless it was what?
7    **A.    Outage.  If it was an outage, you didn't have**
8    to do it.  They automatically adjusted for the outage.
9    Q.    What is an outage?
10   **A.    Outage is a -- it's a program when you work 12**
11   **hours, everyone go in and work 12 hours, you automatic**
12   **-- because of the lunch period span, everybody didn't**
13   **take lunch at the same time frame.  So they deducted your**
14   **lunch -- no, they paid for your lunch because a lot of**
15   **time you eat on the move.  Any other time frame you take**
16   **a lunch break, you have to clock out.**
17   Q.    Who is Karen McDonald?
18   **A.    Karen McDonald -- I don't know what her title**
19   **is now, but during the time frame she was the human**
20   **resource manager or office manager.**
21   Q.    You understand that you are requesting
22   additional overtime in this lawsuit.  Correct?
23   **A.    Correct.**
24   Q.    Do you have any documents that identify the
25   dates on which you worked alleged unpaid overtime?

Page 60

1    **A.    No.**
2    Q.    Do you have any documents that identify the pay
3    periods on which you worked alleged unpaid overtime?
4    **A.    No.**
5    Q.    Do you have any handwritten notes that identify
6    when you worked alleged unpaid overtime?
7    **A.    No.**
8    Q.    Did you maintain any calendars or personal
9    records identifying dates you allegedly worked during all
10   or part of your lunch half hour and were not paid?
11   **A.    No.**
12   Q.    Would you have to guess or speculate in order
13   to tell me the specific dates in which you weren't paid
14   for part of your lunch or weren't paid for part of your
15   workday?
16   **A.    Yes.  Exhibit 10 should show that -- it should**
17   **show here the clock-out time for lunch, and I don't see**
18   **it.**
19   Q.    So it's your testimony that every day you
20   clocked out for lunch and it's not showing up on
21   Exhibit 10?
22   **A.    When I went to lunch, I clocked out.  I'm**
23   **trying to see if it shows here some of them, I guess.**
24   Q.    So right now I'm just asking you about what
25   documents you have.



Page 61

1    A.   No, I don't have any.

2    Q.   So you're bringing a lawsuit for overtime pay.

3  Correct?

4    A.   Correct.

5    Q.   And you have no document that will tell me or

6  the court the dates that you allegedly were not fully

7  paid for every hour you worked.  Correct?

8    A.   Correct.

9    Q.   And you don't have any documents that would

10  show the court or a jury or explain that on this date I

11  worked this many extra minutes or hours.  Correct?

12    A.   Other than Exhibit 10 that you have presented.

13    Q.   And what does Exhibit 10 show?

14    A.   Exhibit 10 shows the clock-in and clock-out.

15    Q.   Right.

16    A.   And you take lunch, it should show a clock-out

17  -- it should show a punch when you clock in, a punch when

18  you clock out for lunch, a punch when you clocked back in

19  for lunch, and a punch when you depart.

20    Q.   Okay.  So what I'm asking you is do you have

21  any testimony or any exhibit document that you can say on

22  this particular day I'm owed money that I wasn't paid?

23    A.   No.

24    Q.   There is nothing you can point to or show me

25  that says on this particular date, I'm owed 20 more

Page 62

1  minutes or two more hours or five more hours?

2    A.   No.

3    Q.   And so in order for myself or a judge or a jury

4  to calculate how much allegedly is owed to you for

5  overtime, we would have to do a little guessing and

6  speculating.  Correct?

7    A.   Correct.

8    Q.   And at no time when you were at Martin Marietta

9  did you submit a payroll adjustment form or call the

10  ethics hotline or submit anything in writing indicating

11  that there was anything wrong with a paycheck.  Correct?

12    A.   Repeat that one more time.

13    Q.   Sure.  Let me just -- I just realized that what

14  I said may not be correct.

15      So if you look at Exhibit 7, Exhibit 7 is a

16  written document that you signed where it was decided we

17  need to make some adjustment to payroll for Mr. Davis.

18  Correct?

19    A.   Correct.

20    Q.   And what I'm asking is, is there any document

21  -- and we've asked for these and I haven't seen any from

22  you.  So what I'm asking is, is there any document

23  anywhere other than Exhibit 7 --

24    A.   No.

25    Q.   Let me finish -- where you asked anyone to make

Page 63

1  any change on your payroll?

2    A.   To answer that question, no, I have no

3  document.  However --

4    Q.   Let me ask the questions.

5      So there is no document other than Exhibit 7

6  that reflects any request by you to make a change on your

7  payroll.  Correct?

8    A.   Correct.

9    Q.   Did you ever ask anyone to make a change on

10  your payroll?

11    A.   Yes.

12    Q.   Who did you ask?

13    A.   Eric Wilson.

14    Q.   Anyone else?

15    A.   No.

16    Q.   Is there any document that would show that you

17  made that request to Eric Wilson?

18    A.   No.

19    Q.   And tell me the date that you made the request

20  to Eric Wilson.

21    A.   I can't recall the date, but several different

22  times, different pay periods and stuff that just go to

23  Eric Wilson.  He'd said, "I'll take care of it."  And it

24  just kept malingering and never got done.

25    Q.   Okay.  So --

Page 64

1    A.   This --

2    Q.   If you'll let me ask the questions.

3      So how many times did you speak verbally with

4  Eric Wilson about your paycheck?

5    A.   I can't recall how many times, but I would say

6  several.

7    Q.   So two or three?

8    A.   More.

9    Q.   How many?

10    A.   To be safe -- I don't want to lie about

11  anything, but it was several times.  To put a number on

12  how many time frame that I did it, I'd be just

13  throwing an answer out there.

14    Q.   Okay.  So what -- do you have any range of

15  dates that you recall talking to Eric Wilson?

16    A.   Again, 2016 to now, I can't recall dates or the

17  time or how many times it was.  I just can remember it

18  was several.

19    Q.   And do you remember what you and Mr. Wilson

20  spoke about?

21    A.   That basically the time frame saying he'd take

22  care of it.

23    Q.   Tell me, what do you recall telling Eric

24  Wilson?

25    A.   I recall telling him that my pay was not



Page 65

1  correct.

2     Q.   Which paycheck was that?

3     A.   I don't know the answer which paycheck it was,

4  what pay period because again, 2016, I can't remember

5  those time frames.

6     Q.   Okay.  So sitting here today, you don't have

7  any ability -- you don't have any documentation showing

8  which paycheck you had a dispute with and you don't have

9  any personal recollection of which paycheck you had a

10  dispute with.  Correct?

11     A.   That's correct.

12     Q.   And when you said you spoke with Eric Wilson,

13  was anyone present during these conversations?

14     A.   I can't recall.

15     Q.   And Eric is the only person that you had

16  conversations with regarding alleged unpaid overtime.

17  Correct?

18     A.   Correct.

19        MR. BIRRER:  Can we take a quick break?

20        MR. BHATTI:  Sure.

21        (Break was taken from 11:14 to 11:22 a.m.)

22     Q.   (BY MR. BIRRER) Mr. Davis, I'm going to have

23  your attorney hand you premarked Deposition Exhibit 11.

24  Is Deposition Exhibit 11 a true and correct copy of your

25  charge of discrimination?

Page 66

1     A.   Correct.

2     Q.   And is that your signature where you declared

3  under penalty of perjury that it was correct?

4     A.   That's correct.

5     Q.   And today, sitting here today, do you declare

6  under penalty of perjury that Exhibit 11 is correct?

7     A.   That's correct.

8     Q.   In fact, look at paragraph 1B.  You have

9  already testified under oath who the people were who

10  discharged you on January 22, 2016, and your testimony

11  today is different from your sworn information in

12  Exhibit 11.  Correct?

13     A.   That's correct.

14     Q.   So where did you violate your oath, in

15  Exhibit 11 or today?

16     A.   I didn't violate my oath.  Jason Crowther was

17  the -- Bridgette and Eric was in the room doing it.

18  Jason Crowther was the one that I spoke was in charge of

19  the storeroom.  So I put the head guy there, Jason

20  Crowther.  Everything has to go through him for the

21  termination.

22     Q.   So when you say "On or about January 22, 2016,

23  I was discharged by Jason Crowther," you didn't mean to

24  say that Jason Crowther was actually the person who

25  discharged you?

Page 67

1     A.   Yes.

2     Q.   Is that correct?

3     A.   Correct.  I didn't mean to say that Jason

4  Crowther was the guy that done it, but he was the guy

5  over charge of the storeroom.

6     Q.   You've already testified under oath that you

7  don't know who was responsible for terminating you.

8  Correct?

9     A.   Correct.

10     Q.   So why did you put Jason Crowther's name in

11  Exhibit 11?

12     A.   I put Jason Crowther there, again, because he

13  was the overall responsible party of the storeroom, and

14  Eric Wilson fall under Jason Crowther.

15     Q.   So just to make sure I have this correct, Jason

16  Crowther wasn't actually the one who discharged you on

17  January 22, 2016, and you don't know if Jason Crowther

18  was the person who made the decision to discharge you.

19  Correct?

20     A.   Correct.

21     Q.   Please look at Deposition Exhibit 12.

22     A.   (Witness complies.)

23     Q.   If you can turn to Bates page EEOC 46, is that

24  your signature on page EEOC 46 on Deposition Exhibit 12?

25     A.   Correct.

Page 68

1     Q.   And so you didn't actually sign a charge of

2  discrimination, which is Deposition Exhibit 11, you

3  didn't sign a charge of discrimination until January 13

4  of 2017?

5     A.   I can't recall the date when I signed it.

6     Q.   In fact, you actually wrote the date to the

7  left of your signature on the first page of Deposition

8  Exhibit 11.  Correct?

9     A.   Correct.

10     Q.   And so you signed your charge of discrimination

11  on January 13, 2017.  Correct?

12     A.   Correct.

13     Q.   So you signed your charge of discrimination

14  almost a year after you were terminated?

15     A.   That's not --

16     Q.   Pardon?

17     A.   You said a year after?

18     Q.   Right.  When were you terminated?  I'm looking

19  at Exhibit 11.

20     A.   Which one?

21     Q.   Not 12.  11.

22     A.   Okay.  I'm sorry.  Correct.

23     Q.   Why did you wait so long to sign your charge of

24  discrimination?

25     A.   From my recollection, I thought I did

Page 85

1    A.   Seven minutes -- that you're not late until

2    after seven minutes of you clocking in.

3    Q.   And that's just something somebody told you?

4    A.   No, that was in a Martin Marietta handout that

5    they had from -- when they came out to -- when they came

6    out, part of the HR briefing, they had handbooks.  It's a

7    portion of the handbook saying that you're not -- you're

8    not late until seven minutes after the hour.

9    Q.   Have you given a copy of that to your attorney?

10        THE WITNESS:  I think I gave you a copy of

11   that.

12   Q.   But you think there is a document in your

13   possession that says that?

14   A.   Yeah.  Martin should have it.  It's in their

15   handbook.

16   Q.   What's the name of the handbook you're talking

17   about?  The Code of Business Conduct?

18   A.   I can't remember exactly what the name of it

19   is.  They had a handbook that had all the rules, the do's

20   and don'ts, and it had the seven-minute rule also in that

21   book.  I don't know the exact name of the book.

22   Q.   Do you remember what the color of the first

23   page looked like or any other description?

24   A.   No.

25   Q.   Okay.

Page 86

1         (Exhibit No. 17 was marked.)

2    Q.   I'm going to hand you what's been marked as

3    Deposition Exhibit 17.

4         So at Martin Marietta, they had a Code of

5    Ethical Business Conduct.  Is that correct?

6    A.   Correct.

7    Q.   And I'll represent to you that Exhibit 17 is an

8    excerpt from the code that you produced in this case.

9    And in multiple places in the Code of Ethical Business

10   Conduct, you were provided with contact information for

11   an ethics hotline.  Correct?

12   A.   Correct.

13   Q.   So, for instance, on the bottom left-hand

14   corner of Bates page 114, it shows the telephone number,

15   address, and web site for the ethics hotline.  Correct?

16   A.   Correct.

17   Q.   And then that information is also provided on

18   the bottom right-hand corner of Bates page 115.  Correct?

19   A.   Correct.

20   Q.   And then if you turn to the back, there's a

21   whole page devoted to the ethics hotline.  Correct?

22   A.   Correct.

23   Q.   And you understood that Martin Marietta was

24   giving you a web site, a 24-hour, 7-day-a-week telephone

25   number, and an address that you could call or write or

Page 87

1    get on the internet and access if you had any complaints

2    or concerns about anything.  Correct?

3    A.   Correct.

4    Q.   And you never called the ethics hotline about

5    any discrimination.  Correct?

6    A.   Correct.

7    Q.   And you never called the ethics hotline about

8    you allegedly not getting any pay or overtime that you

9    were owed.  Correct?

10   A.   Correct.

11   Q.   I'm going to ask you just a few more questions,

12   we'll take a roughly 30-minute break for lunch, and then

13   we'll hopefully get this finished up.

14        So in paragraph 24 of your first amended

15   complaint, you contend that in or about May 2015, you

16   applied for the position of human resources manager.  Is

17   this accurate, the date?

18   A.   That's about right.

19   Q.   Okay.  Human resources manager, is that the

20   same as administrative manager?

21   A.   Yes.

22   Q.   So when you say "human resources manager," if

23   there's a job description for administrative manager,

24   that's the same position?

25   A.   Same position.  I may have the title different.

Page 88

1    Q.   Okay.

2         (Exhibit Nos. 18 through 20 were marked.)

3    Q.   I want you to look at Exhibit 18 for me.

4    A.   (Witness complies.)

5    Q.   Is Exhibit 18 a true and correct copy of the

6    administrative manager job position that you were

7    applying for in 2015?

8    A.   Correct.

9    Q.   And so it's accurate to say that Bridgette

10   Hurst was hired as the administrative manager when you

11   applied for the job also?  Correct?

12   A.   Yes.

13   Q.   And you knew Ms. Hurst before 2015.  Right?

14   A.   That's correct.

15   Q.   How did you know Ms. Hurst?

16   A.   Ms. Hurst held this position and she quit.

17   That's how I knew her.

18   Q.   So prior to 2015, Bridgette Hurst actually

19   filled the job position of administrative manager at the

20   Martin Marietta cement facility in Midlothian, Texas.

21   Correct?

22   A.   That's correct.

23   Q.   And Ms. Hurst was pretty widely considered to

24   be a good and fair employee when she served as the

25   administrative manager.  Correct?



Page 89

1    A.    Correct.

2    Q.    And people at the Midlothian facility when
3  Bridgette Hurst initially served as administrative
4  manager generally liked her and respected her.  Correct?

5    A.    Correct.

6    Q.    You had no problems with Ms. Hurst when she
7  served in the administrative manager role previously.
8  Correct?

9    A.    Correct.

10    Q.    And Ms. Hurst actually applied for the position
11  of administrative manager in 2015.  Right?

12    A.    Correct.

13    Q.    And she was selected over you.  Correct?

14    A.    Correct.

15    Q.    So Ms. Hurst was selected to fill a position
16  that she had already successfully filled.  Correct?

17    A.    Correct.

18    Q.    And it would be reasonable for an employer to
19  pick Ms. Hurst over you.  Correct?

20         MR. BHATTI:  Objection, form.

21    A.    I do not agree with that.  The reason I do not
22  agree with that is because Ms. Hurst -- she did work
23  there and she quit.  Mr. Hurst quit.  And based on when
24  they put the job back out there and with the
25  qualification they had in here, based on the

Page 90

1  qualification, my qualification equaled her qualification
2  or better because she had a two-year degree in human
3  resource.  I had a four-year degree.

4         The other thing is that I also did prior stuff
5  in the military.  I served as the -- I was a recruiter
6  with the Army.  Also I was the senior human resource guy
7  of three stations.  And by me not having been afforded
8  the opportunity of that, I think my resume basically --
9  comparing resume with resume, I believe my resume was
10  stronger than hers.

11    Q.    (BY MR. BIRRER) And you weren't making the
12  decision.  Correct?

13    A.    No.

14    Q.    Okay.  So setting aside resumes, would it be
15  fair to say that Martin Marietta didn't have to look at a
16  resume to know whether Bridgette Hurst could successfully
17  perform the job because she had already performed the
18  job.  Correct?

19    A.    That's correct.

20    Q.    So they knew how Bridgette Hurst would fulfill
21  the role.  Correct?

22    A.    Correct.

23    Q.    You were an hourly employee working in the
24  warehouse.  Correct?

25    A.    Correct.

Page 91

1    Q.    Whereas Bridgette Hurst had already performed
2  the human resources role.  Correct?

3    A.    Correct.

4    Q.    So I just want to make sure.  So you were
5  trying to go from being an hourly warehouse employee to
6  being the HR person overseeing the Midlothian facility.
7  Correct?

8    A.    Correct.

9    Q.    And so you would have then become -- would you
10  have on an organizational chart then become Eric's
11  superior in the organization?

12    A.    No, that chain doesn't work that way.  It's got
13  a different chain.  Bridgette has nothing over Eric.
14  She's not in his link.

15    Q.    Okay.  So you applying for the position of HR
16  manager or administrative manager, that's different from
17  when Jeff Simmons went from maintenance employee to
18  maintenance supervisor, which was just going up a step.
19  Correct?  You were actually going to a whole different
20  department?

21    A.    Correct.

22    Q.    You wanted to become management not just
23  following the regular line of progression up a step, but
24  you were going to go into a different department?  You
25  were wanting to go into a different department as

Page 92

1  management.  Correct?

2    A.    Correct.

3    Q.    Okay.  And do you know who made the decision to
4  hire Bridgette over you?

5    A.    Yes.

6    Q.    Who?

7    A.    That's the plant manager.  His name was
8  Mr. Walsh.  Randy Walsh.  And to comment on that
9  situation, I asked, "Had I been a white female with the
10  qualifications I have, would I have got that job?"  I
11  believe I would.

12    Q.    You believe you would have?

13    A.    I believe I would have.

14    Q.    Okay.  But did you ever talk to Randy Walsh
15  about why he picked Ms. Hurst over you?

16    A.    There was a whole bitch -- excuse my language.
17  There was a whole bunch of controversy over that
18  situation and how -- because a lot of the supervisors
19  believed that she shouldn't have been rehired because of
20  the way she quit.

21    Q.    That wasn't my question.  My question is, did
22  you speak with the plant manager about why he picked
23  Bridgette Hurst?

24    A.    No.

25    Q.    Did you speak with anyone in the human



Page 97

1   Q.   -- brand of recruiting system?

2        Pardon?

3   **A.   My answer was that the BirdDog recruiting**

4   **system and the client recruiting system of the Army is**

5   **the same one.  Just a different name.**

6   Q.   So you're saying that it's the exact same

7   software?

8   **A.   No, not the same software.  The recruiting**

9   **system, the client information system.**

10  Q.   BirdDog is a vendor, a name brand.  Correct?

11  **A.   Correct.**

12  Q.   Like there's a Ford is a name brand of a car.

13  Correct?

14  **A.   Correct.**

15  Q.   So Ford manufactures cars.  Correct?

16  **A.   Correct.**

17  Q.   Mercedes also manufactures a car.  They both

18  manufacture cars, but they're different cars.  Correct?

19  **A.   Correct.**

20  Q.   They have different options and different ways

21  you can work the cars.  Correct?

22  **A.   Correct.**

23  Q.   I guess what I'm asking is BirdDog recruiting

24  system, that is a type of recruiting software and system.

25  Correct?

Page 98

1   **A.   Correct.**

2   Q.   And the Army had what you're saying is a

3   similar type; not the same, but similar?

4   **A.   Correct.**

5   Q.   Okay.  And so you did not have any experience

6   on the BirdDog recruiting system.  Correct?

7   **A.   Correct.**

8   Q.   And at the time you applied for the

9   administrative manager position, you had absolutely no HR

10  experience in the private sector.  Correct?

11  **A.   Correct.**

12  Q.   At the time you applied, had you ever performed

13  pre-employment applicant processing for Martin Marietta?

14  **A.   No.**

15  Q.   But Bridgette had, hadn't she?

16  **A.   Yes.**

17  Q.   At the time you applied for the administrative

18  manager position, did you have any experience performing

19  payroll-related functions for a private employer?

20  **A.   No.**

21  Q.   But Bridgette had that experience.  Correct?

22  **A.   Yes.**

23  Q.   At the time you applied for the administrative

24  manager position, were you a notary public?

25  **A.   No.**

Page 99

1   Q.   Bridgette was a notary public, wasn't she?

2   **A.   I do not know the answer to that.**

3   Q.   At the time you applied for the administrative

4   manager position, did you have any professional

5   experience doing private event planning?

6   **A.   Can you repeat that one?**

7   Q.   Sure.  When you applied for the position of

8   administrative manager, did you have any experience in

9   planning events?

10  **A.   Yes.**

11  Q.   What was that?

12  **A.   When I was in the Army, I did all kinds of**

13  **planning events.**

14  Q.   So in the private sector, besides the Army?

15  **A.   Private sector, no.**

16  Q.   What community programs have you participated

17  in in Midlothian?

18  **A.   None.**

19  Q.   Do you have any recollection of what was said

20  during the interview with the plant manager and Terry

21  Doyle?

22  **A.   I can't recall.**

23  Q.   Okay.  You don't have any memory of that.

24  Correct?

25  **A.   Uh-huh.**

Page 100

1   Q.   Is that yes?

2   **A.   Yes.**

3   Q.   You just remember being interviewed, but you

4   can't remember the specifics.  Correct?

5   **A.   Correct.**

6   Q.   Did you ever talk to Terry Doyle about the

7   reason why you didn't get the position?

8   **A.   I can't recall that I talked to Terry, no.**

9   Q.   Since leaving Martin Marietta, have you ever

10  held an HR position?

11  **A.   No.**

12  Q.   Since leaving Martin Marietta, have you ever

13  applied for an HR position?

14  **A.   Yes.**

15  Q.   And where was that?

16  **A.   The list is too long for me to -- I mean, when**

17  **I left Martin Marietta, I was unemployed.**

18  Q.   Right.

19  **A.   And I applied for a lot of HR positions.  The**

20  **first job that came available...**

21  Q.   Would it be fair to say that you applied up to

22  20 HR positions after you left Martin Marietta?

23  **A.   That would be fair.**

24  Q.   And 20 different employers rejected you for an

25  HR position.  Is that fair?



Page 101

1    A.   I can't say that's fair because -- I don't
2    think that's a fair answer.
3    Q.   Why not?
4    A.   Because I don't know the exact number that I
5    applied for an HR position.  I recall that I went on
6    three interviews with HR.  I don't recall that 20.
7    Q.   Okay.  So you applied for a number of HR
8    positions.  You got three interviews.  And each position
9    that you interviewed for, you were rejected as a
10   candidate for an HR position.  Correct?
11   A.   I guess that's -- okay.
12   Q.   Is that correct?
13   A.   Yeah.
14        MR. BIRRER:  All right.  We will break for
15   lunch.
16        (Break was taken from 12:18 to 1:07 p.m.)
17        MR. BIRRER:  Okay.  If you could give him
18   a copy of Exhibit 19.
19   Q.   (BY MR. BIRRER)  Now, Mr. Davis, I'll represent
20   to you that Exhibit 19 is a copy of Bridgette Hurst's
21   resume.  Have you ever seen Ms. Hurst's resume before?
22   A.   Yes.
23   Q.   Where did you -- when did you first see her
24   resume?
25   A.   I seen it back in I want to say 2015.  I was

Page 102

1    going to school.  Basically just trying to prime for
2    position jobs, and she showed me a copy of her resume.
3    Q.   Okay.  So I see what you're saying.  So in 2015
4    when Ms. Hurst was already back acting as administrative
5    manager?
6    A.   No.  Well, maybe -- it was prior to before she
7    leaving.  Before she left.
8    Q.   Okay.  Got it.  And so before Ms. Hurst left
9    the first time that she served as administrative manager,
10   she showed you her resume so that you could see here is a
11   good way to structure your resume?
12   A.   Correct.
13   Q.   Okay.  And what job were you applying for when
14   Ms. Hurst showed you how she had her resume structured?
15   A.   I wasn't applying for a job during the time
16   frame. I was getting ready to graduate and stuff like
17   that.  Basically I just wanted to see how she put her
18   data in.
19   Q.   I got it.  So at the time you were about to
20   graduate from University of Phoenix with an HR degree,
21   you went and talked to Ms. Hurst because she was already
22   an HR professional.  Correct?
23   A.   Correct.
24   Q.   And so because you were thinking about applying
25   for HR jobs, you thought "Well, I should talk to an HR

Page 103

1    professional to see how he or she has done their resume.
2    Correct?
3    A.   Correct.
4    Q.   And so you went to Ms. Hurst and said, "Hey,
5    can I take a look at your resume," and she showed you
6    something that was close to what is Exhibit 19.  Correct?
7    A.   Correct.
8    Q.   Okay.  All right.  Can you look at Exhibit 20?
9    A.   (Witness complies.)
10   Q.   Now, is Exhibit 20 a true and correct copy of
11   the lunch pay policy for the Texas Cement Midlothian
12   facility?
13   A.   I'm not aware of this document.
14   Q.   Does that accurately reflect the policy for
15   people that are shift workers and non-shift workers?
16   A.   Yes.
17   Q.   Okay.  And so the Kronos pay rules, which is
18   the second page of Exhibit 20, have you seen the Kronos
19   pay rules before?
20   A.   No.
21   Q.   Okay.  And Kronos is the time system that's
22   used.  Is that correct?
23   A.   That's correct.
24   Q.   Okay.  And so what is "shift work"?  I don't
25   know what that means.

Page 104

1    A.   Shift work is basically when you're working --
2    we have three different shifts Monday through Thursday.
3    And basically it's broken down over a 24-hour period.
4    They broke it down, like, eight hours.  One crew will be
5    on for eight, another crew will come on, then etc.
6    Q.   I got it.  So those are the people that are
7    actually out there crunching the rock?
8    A.   Correct.
9    Q.   Okay.  And so in the warehouse, you weren't --
10   I mean, I'm not using -- I'm sure there's a better term
11   for it, but you weren't involved in the rock crushing
12   aspect of the job.  Correct?
13   A.   Correct.
14   Q.   So you weren't, quote, unquote, a shift worker?
15   A.   Correct.
16   Q.   Okay.  And so on Exhibit 20 where it states --
17   you talked about this -- you spoke with me about this
18   earlier, but it says "In the event of an outage," and
19   then it goes on.  Do you see that in the third paragraph?
20   A.   Yes.
21   Q.   So Exhibit 20, this is your understanding of --
22   A.   Yes.
23   Q.   -- the lunch rules.  Correct?
24   A.   Correct.
25   Q.   And then I don't understand the third



Page 105

1   paragraph.  So could you explain that to me?
2      **A.    In the event?**
3      Q.    I don't understand what an "outage" is.  I
4   don't understand what that means.
5      **A.    An outage is basically when the plant goes down**
6   **for repairs.  When it goes down, we want to try to repair**
7   **everything and anything that's possible that's going to**
8   **break in the future or that's already broke, to get it**
9   **fixed.**
10     Q.    And so in an outage, basically the -- there is
11  no rock getting pulled out of the ground, there is no
12  cement getting made.  Correct?
13     **A.    Correct.**
14     Q.    So during an outage, everybody essentially gets
15  paid even if it's an automatic deduction for the lunch
16  half hour; everybody gets paid during an outage.
17  Correct?
18     **A.    That's correct.**
19     Q.    And so if you look back at Exhibit -- I want to
20  say it's 7.  Is that Mr. Wiggins'?  Do you have that in
21  front of you?
22     **A.    No, that's my payroll adjustment.**
23     Q.    Look at Exhibit 9.
24     **A.    Okay.  Got it.**
25     Q.    What is Exhibit 9?

Page 106

1      **A.    Exhibit 9 is the Billy Wiggins 30-minute**
2   **deduction for lunch.**
3      Q.    Right.  And so Exhibit 9, if I were to look at
4   Exhibit 9 and then look at the third paragraph of
5   Exhibit 20, that's an example of during an outage they
6   went ahead and made an automatic 30-minute lunch
7   deduction, and they were reversing that in Exhibit 9.
8   Correct?
9      **A.    That's correct.**
10     Q.    So in Exhibit 9, what they're doing in
11  Exhibit 9 matches up with the payroll lunch policies that
12  are reflected in Exhibit 20.  Correct?
13     **A.    Correct.**
14     Q.    Okay.
15         (Exhibit Nos. 21 and 22 were marked.)
16     Q.    I'm going to hand you what's been marked as
17  Exhibit 21.  And Exhibit 21, is that a true and correct
18  copy of the manager position that you wanted to -- that
19  you applied for?
20     **A.    Correct.**
21     Q.    And then if you could get Exhibit 22 from your
22  attorney.
23     **A.    (Witness complies.)**
24     Q.    And Exhibit 22, that's a document that you
25  produced to us.  This is where you printed out the

Page 107

1   planner job position.  Correct?
2      **A.    Correct.**
3      Q.    I guess if you -- there's actually two things.
4   If you keep going to the last three pages of Exhibit 22,
5   that's the administrative manager position.  Correct?
6      **A.    Correct.**
7      Q.    And that's the position we talked about before
8   the lunch break.  Right?
9      **A.    That's correct.**
10         (Exhibit Nos. 23 and 24 were marked.)
11     Q.    I'm going to have your attorney hand you what's
12  been marked as Deposition Exhibit 23.  Have you seen
13  Exhibit 23 before?
14     **A.    No.**
15     Q.    So would you disagree with the statement that
16  LeAnn Kirkpatrick received the promotion on January 25,
17  2016?
18     **A.    What date was I terminated?**
19     Q.    Well, if you --
20     **A.    I'm trying to look at the date -- between the**
21  **date I was terminated and the date she got the position.**
22     Q.    If your attorney could hand you Exhibit 24.
23  Have you seen Exhibit 24 before?
24     **A.    No.**
25     Q.    Pardon?

Page 108

1      **A.    No.**
2      Q.    Okay.  Does that indicate to you when the
3   decision was made to terminate you?
4      **A.    January 21 is the date.  Her promotion date is**
5   **incorrect.  I want to go on the record and state that she**
6   **got the job the morning -- she got the job the morning I**
7   **was terminated, and it was the same date.  It wasn't the**
8   **25th.**
9      Q.    Let's just back up for a second.  So Exhibit 23
10  you've never seen before today.  Correct?
11     **A.    That's correct.**
12     Q.    And Exhibit 24 you've never seen before today.
13  Correct?
14     **A.    That's correct.**
15     Q.    But it's your testimony that the day you were
16  terminated, LeAnn Kirkpatrick received a promotion to
17  maintenance planner.  Correct?
18     **A.    Correct.**
19     Q.    And who told you that LeAnn Kirkpatrick
20  received a promotion on the day you were terminated?
21     **A.    It actually came from her herself, from LeAnn**
22  **Kilpatrick.**
23     Q.    Kirkpatrick?
24     **A.    Yeah.  The morning of, before they even**
25  **terminated me, she was outside and -- she was outside**

Page 109

1  talking and people giving her high fives.  I said,
2  "What's going on with you?"  She said, "I got the planner
3  job" prior to my leaving.  Same day.
4      Q.   Okay.  So she was just celebrating the fact
5  that she got the promotion?
6      A.   Correct.
7      Q.   Did she say anything negative or improper to
8  you at that time?
9      A.   No.
10     Q.   Has LeAnn Kirkpatrick ever said anything
11 improper to you?
12     A.   No.
13     Q.   LeAnn Kirkpatrick, would it surprise you that
14 she had excellent performance reviews?
15     A.   No, it wouldn't surprise me.
16     Q.   And when you said that, you had a slight edge
17 to your voice.  Is there --
18     A.   The reason I say it wouldn't surprise me is
19 based on the people she's with.  Based on boyfriend,
20 supervisor, and real close with Jason Crowther, she
21 should get an excellent every time she gets one.
22     Q.   Well, let me just say, you've accused LeAnn
23 Kirkpatrick of having a sexual relationship with somebody
24 she worked with.  Is that correct?
25     A.   That's correct.

Page 110

1      Q.   How do you have personal knowledge that LeAnn
2  Kirkpatrick was having a sexual relationship with anyone?
3      A.   Facebook.
4      Q.   So you have --
5      A.   Facebook pictures that she posted on her
6  Facebook showing them all lovey dovey.  "This is my new
7  boo."  That's indicating that they're having a
8  relationship.
9      Q.   But I thought you had indicated that they were
10 both married to somebody else at the time?
11     A.   Yes, they were.
12     Q.   Okay.  So it's your testimony under oath that
13 at the time they were both married to somebody else, that
14 they were publicly posting Facebook pictures with one
15 another?
16     A.   That is correct.
17     Q.   Okay.  And from that, you concluded they were
18 having a sexual relationship from whatever you saw on
19 Facebook?
20     A.   Yes.
21     Q.   And Danny was not LeAnn's supervisor.  Correct?
22     A.   Correct.
23     Q.   And Danny wasn't in LeAnn's chain of command.
24 Correct?
25     A.   Correct.

Page 111

1      Q.   So what was your personal impression of LeAnn
2  Kirkpatrick?
3      A.   I decline to talk about that.
4      Q.   Say it again.
5      A.   I don't want to talk about -- you said what's
6  my personal thing with her?
7      Q.   Personal impression, yeah.
8      A.   Personally, my impression of her, I think she
9  was pretty good at administration secretary.  She did
10 what she -- she kept people in line of the secretary
11 part.  Other than that, that's the only time we speak
12 unless I come over there to talk with the planner.  When
13 I go talk to the planner about ordering parts, etc.,
14 that's the only time I really even seen her.
15     Q.   So she worked in the same office as the
16 planner?
17     A.   Yes, next door.
18     Q.   Okay.  Was there -- do you have any other
19 thoughts or information about LeAnn Kirkpatrick that
20 would lead you to think anything other than that she's an
21 excellent employee?
22     A.   To say that she's an excellent employee, I
23 can't answer that.  Again, I'm not with her on a
24 day-by-day to see what she do.  I don't want to say
25 anything negative toward her or praise her for her work

Page 112

1  because I don't know exactly what she -- as a secretary,
2  what she did for the assistant plant manager.  I don't
3  know.
4      Q.   So under oath, you would say that under oath,
5  you do not have sufficient information to judge what
6  LeAnn Kirkpatrick did at Martin Marietta or how she did
7  it at Martin Marietta.  Correct?
8      A.   No.  Under oath, I know what she did, but how
9  well she did her job, I don't know.
10     Q.   What were LeAnn Kirkpatrick's job duties?
11     A.   She was assistant -- she was basically like a
12 secretary for the assistant plant manager.
13     Q.   What were the job duties of the assistant, if
14 you know?
15     A.   Just basically to -- I don't know verbatim, but
16 I do know she kept them in line about meeting, the way to
17 draw up plans, type memos, stuff like that.  Basic
18 secretary duties.
19     Q.   Have you ever seen the job description for
20 LeAnn Kirkpatrick's prior position?
21     A.   No.
22     Q.   Have you ever performed the job position that
23 LeAnn Kirkpatrick filled?
24     A.   I never looked at her job position.
25     Q.   Pardon?

Page 113

1    A.   No, I never looked at her job position.  Don't
2  know if I did or not.
3    Q.   You never looked at the written job
4  description.  Correct?
5    A.   Yes.
6    Q.   That's correct.  And you never actually
7  performed any of the job functions that LeAnn Kirkpatrick
8  performed.  Correct?
9    A.   I'm not saying that.  I haven't seen it.
10   Q.   Maybe you did; you just don't know?
11   A.   Correct.
12   Q.   Okay.  So as far as you know, maybe you and
13  LeAnn Kirkpatrick did the exact same thing; you don't
14  know because you've never seen her job description.
15  Correct?
16   A.   No.  She didn't -- me and LeAnn Kirkpatrick did
17  not do the same things.  A lot of the job in the planner
18  role that I know that she did not do because the only two
19  person that does those job in the role here are the
20  people that are in the logistics side of the house, which
21  is me, Mike, Eric, and the planners.  We all correlate
22  and talk together pretty much on a daily basis when stuff
23  go --
24   Q.   Right.
25   A.   LeAnn never was in that -- she's never in that

Page 114

1  role.
2           MR. BIRRER:  Move to strike as
3  nonresponsive.
4    Q.   (BY MR. BIRRER) If you would just listen to my
5  question.
6        So you sitting here today, under oath, under
7  penalty of perjury, you can't say exactly what LeAnn
8  Kirkpatrick did or did not do before she was promoted to
9  the planner position.  Correct?
10   A.   Correct.
11   Q.   And sitting here today, under oath, you don't
12  have any personal knowledge on whether LeAnn took on
13  special assignments, did anything extra; you just don't
14  have any knowledge one way or the other.  Correct?
15   A.   Correct.
16   Q.   And sitting here today, you don't have any
17  personal knowledge on whether LeAnn Kirkpatrick was an
18  excellent employee or a mid-level employee or a bad
19  employee; you just don't have any personal knowledge.
20  Correct?
21   A.   That's correct.
22   Q.   So you, sitting here today, have no basis to
23  evaluate LeAnn Kirkpatrick as a Martin Marietta employee.
24  Correct?
25   A.   Correct.

Page 115

1    Q.   Do you have any reason to think that
2  Ms. Kirkpatrick had attendance issues?
3    A.   Yes.
4    Q.   What's that based on?
5    A.   Based on seeing the time frame she come to work
6  late, coming up the road.
7    Q.   You didn't know when she was supposed to start,
8  did you?
9    A.   Well, they all had certain hours to work, and
10  sometimes when you go they'll say, "Take this over to
11  LeAnn," and she's not there.
12   Q.   That wasn't my question.
13       My question was, you don't know when LeAnn was
14  supposed to start work on any specific day.  Correct?
15   A.   I answered the question.
16   Q.   Under oath, do you have personal knowledge --
17   A.   Under oath --
18   Q.   -- of any day at all when LeAnn Kirkpatrick --
19   A.   No.
20   Q.   -- was supposed to start work?
21   A.   No.
22   Q.   And you also don't have any personal knowledge
23  of conversations that LeAnn Kirkpatrick may have had with
24  her supervisor about when she was supposed to start work.
25  Correct?

Page 116

1    A.   Correct.
2        (Exhibit No. 25 was marked.)
3    Q.   I'm going to hand you what's been marked as
4  Deposition Exhibit 25.  Is Deposition Exhibit 25 a true
5  and correct copy of the attendance standards for Texas
6  Cement, Martin Marietta?
7    A.   Correct.
8    Q.   And Texas Cement, is that what the Midlothian
9  facility was called?
10   A.   Prior to Martin Marietta taking over, Texas
11  Industries.
12   Q.   It was called Texas Cement?
13   A.   Texas Industries.
14   Q.   I'm just looking at this.  If you look at
15  Exhibit 25, do you see at the top left-hand corner it
16  says "Martin Marietta"?
17   A.   Uh-huh.
18   Q.   And then at the top it says "Texas Cement
19  Attendance Standards."  Do you see that?
20   A.   Oh, yes.
21   Q.   And then if you look at Exhibit 20, that said
22  "Texas Cement Lunch Pay."  Do you see that?
23   A.   Yes.
24   Q.   So whenever there was a document outlining the
25  policies and procedures for the Midlothian facility like

Page 117

1   in Exhibit 20 and like in Exhibit 25, that would be
2   labeled "Texas Cement."  Correct?
3   **A.   Correct.**
4   Q.   And so in both Exhibit 20 and in Exhibit 25,
5   those are examples of Martin Marietta policies that
6   applied at Texas Cement.  Correct?
7   **A.   Correct.**
8   Q.   Okay.  And so under Martin Marietta attendance
9   policy, two tardies equal one absence.  Correct?
10  **A.   Correct.**
11  Q.   So two unexcused tardies equals two unexcused
12  absences.  Correct?
13  **A.   Correct.**
14  Q.   Twelve tardies equals six absences.  Correct?
15  **A.   Correct.**
16  Q.   So if you let Martin Marietta know in advance
17  that you're going to be late, that is a reported tardy.
18  Is that accurate?
19  **A.   No, sir.**
20  Q.   Okay.  If you let Martin Marietta know you were
21  going to be late, were you marked tardy?
22  **A.   No.**
23  Q.   Okay.  So if you just show up late, that's
24  reported as a tardy?
25  **A.   Correct.**

Page 118

1   Q.   So we've established that 12 tardies equal six
2   absences.  And so if you turn to the second page of the
3   attendance policy, at the bottom, if there are six
4   absences during any 12-month period after the first three
5   months of employment, that equals termination for failure
6   to meet attendance standards.  Correct?
7   **A.   Correct.**
8   Q.   And you were aware of these rules that are set
9   forth in Exhibit 25?
10  **A.   Correct.**
11  Q.   As a storeroom attendant, your assigned time to
12  report to work was at or before 6:00 a.m.  Correct?
13  **A.   Correct.**
14  Q.   And if you clocked in at any point after
15  6:00 a.m., the Kronos time system marked you as tardy.
16  Correct?
17  **A.   Correct.**
18  Q.   And you knew that.  Right?
19  **A.   Yes.**
20       (Exhibit Nos. 26 and 27 were marked.)
21  Q.   If you could look at Exhibit 26.
22  **A.   (Witness complies.)**
23  Q.   Deposition Exhibit 26, is this a true and
24  correct copy of a written attendance warning that you
25  received on June 11, 2013?

Page 119

1   **A.   No.  I seen this once before.  The bottom down**
2   **there, the Neal Davis signature, that's not my signature.**
3   **I addressed that to my attorney once before.  How this**
4   **come about, the date and time, this is not my signature**
5   **and I didn't receive this.  So how this got done, it's a**
6   **forgery.**
7   Q.   Is that Eric Wilson's signature?
8   **A.   I can't really say it's his signature, but**
9   **that's definitely not mine.**
10  Q.   And so do you remember having a verbal
11  conversation with somebody in June of 2013 regarding
12  attendance?
13  **A.   Absolutely not.**
14  Q.   Were you at work on June 11, 2013?
15  **A.   I can't recall I was at work that day.**
16  Q.   We don't need to guess.  Let's look at the time
17  detail.  That doesn't go to 2013, so that's not going to
18  help us.
19       So you just don't recall if you were at work in
20  June of 2013?
21  **A.   I don't recall.  I just don't recall.**
22  Q.   Can you look at Exhibit 27?
23  **A.   (Witness complies.)**
24  Q.   Is Exhibit 27 a true and correct copy of a
25  final warning you received on November 19, 2013?

Page 120

1   **A.   Yes, this is correct.**
2   Q.   Okay.  And in fact, this is your handwriting on
3   it.  Correct?
4   **A.   Yes, it is.**
5   Q.   And when did you write all of this stuff by
6   hand on this document?
7   **A.   During the time, '13, was Lucy Tovar.  She was**
8   **my manager during that time frame, and she called me up**
9   **here.  She had sent it down to me and she told me to make**
10  **corrections.  "Make corrections as you see it."  So**
11  **that's what I did written on the form.**
12  Q.   But there's a note -- on Exhibit 27 on the
13  first page in the bottom right-hand corner, it looks like
14  there's a note you dated 1/22/16.  Do you see that?
15  **A.   Yep.  Yes, sir.**
16  Q.   Is that the date when you signed all this other
17  stuff?
18  **A.   No, no, no, no.  1/22/16 -- the stuff I did --**
19  **this one, Lucy Tovar was here in 2013.  And this stuff**
20  **that she had written up on January 22, 2016, she had been**
21  **gone for almost four years.  No, three years.**
22  Q.   Right.  I think --
23  **A.   She left 2013.**
24  Q.   Follow me here.  So I believe if you look at
25  Exhibit 27, it is dated November 19, 2013.  Correct?

Page 133

1    A.    No, because I'm pretty sure I would have raised
2    concern with 29.
3    Q.    So during --
4    A.    I'd ask to see it.  That's just me.
5    Q.    During the verbal warning on June 11, 2013, you
6    do recall them telling you that in a period of time you
7    had too many tardies on your record and they were
8    cautioning you.  Correct?
9    A.    Correct.
10          (Exhibit No. 28 was marked.)
11    Q.    I'm going to hand you what's been marked as
12   Deposition Exhibit 28.  I will represent to you that that
13   is a document that you have produced in this litigation.
14          What is Exhibit 28?
15    A.    It's something I sent to Jill Raab.
16    Q.    But in fact, this doesn't -- I mean, this is
17   not an email; this is just something printed off.  There
18   is nothing indicating that this is an mail that got sent,
19   is there?
20    A.    No.
21    Q.    So do you have any recollection whether 28 was
22   sent or not sent?
23    A.    I don't recall if it was sent.
24    Q.    But you're the one who prepared Exhibit 28.
25   Correct?

Page 134

1    A.    It appears to be it came off my computer, and I
2    leave my door open.
3    Q.    And Exhibit 28 -- so you don't know whether it
4    was sent or not, but what it's talking about is the final
5    warning you received.  Correct?
6    A.    Correct.
7    Q.    Now, in this document, you're telling -- you
8    may have sent it or not, but you're telling Jill Raab
9    that "On June 3, 2013, I, Neal Davis, was given a verbal
10   reminder on my past attendance standards."  Correct?
11    A.    Correct.
12    Q.    That's you writing that to one of the heads of
13   HR.  Right?  Is that right?
14    A.    Correct.
15    Q.    Isn't it important to tell the truth to the
16   head of HR?
17    A.    Correct.
18    Q.    Wouldn't you have written Exhibit 28 so that it
19   was truthful?
20    A.    Correct.
21    Q.    You didn't want to give false information to
22   the head of HR, did you?
23    A.    No.
24    Q.    So the information you provided in Exhibit 28,
25   which was created around the time that you received the

Page 135

1    final warning, that is truthful information reflected in
2    Exhibit 28?  Is that your testimony?
3    A.    I' assuming it's correct.
4    Q.    Right.  So what you wrote and state is true is
5    that on June 3, 2013, you received a verbal reminder from
6    Lucy Tovar and Eric Wilson on your past attendance
7    issues.  Correct?
8    A.    Correct.
9    Q.    And then you told Jill Raab, where you were
10   trying to be as truthful as possible, knowing this was
11   going to a senior person in HR, you wrote out "On
12   June 11, 2013, I was given a written reminder of the same
13   incident."  Correct?
14    A.    Correct.
15    Q.    Get Exhibit 26 out.
16    A.    Okay.
17    Q.    Exhibit 26 is a written warning from Eric
18   Wilson dated June 11, 2013.  Correct?
19    A.    Correct.
20    Q.    You wrote Jill Raab that on June 11, 2013, you
21   were given a written reminder about the same incident
22   that you were talked to about on June 3.  Correct?
23    A.    Correct.
24    Q.    And so when I look at Exhibit 26, it's saying
25   that you received a verbal warning on June 3, 2013,

Page 136

1    regarding excessive tardiness.  Correct?
2    A.    Correct.
3    Q.    And then Exhibit 26 is where they gave you a
4    written reminder of the same incident.  Correct?
5    A.    You lost me.
6    Q.    Sure.  Let's see if we can get you back on
7    track.
8          So you wrote to one of the top people in human
9    resources a document where you were trying to be as
10   truthful as possible, and that is Exhibit 28.  Correct?
11    A.    Correct.
12    Q.    And in Exhibit 28, you are stating to HR that
13   on June 3, 2013, you, Neal Davis, received a verbal
14   reminder from Lucy Tovar and Eric Wilson "on my past
15   attendance standards."  Correct?
16    A.    Correct.
17    Q.    That's truthful.  Right?
18    A.    That's truthful.
19    Q.    And then you went on to say "On June 11, 2013,
20   I was given a written reminder for the same incident."
21   That's truthful.  Right?  Were you telling the truth to
22   Jill Raab or not in Exhibit 28?
23    A.    Well, first of all, I'll just say I don't
24   recall writing Jill Raab and sending an email to her.  I
25   don't recall that.



Page 137

1    Q.   Okay.  This is --

2    A.   Now, I know she got my name up there, but, hey,
3  I do not recall -- some of the stuff in this statement is
4  true, but sending a letter out like this, I don't recall
5  this.  I don't know where this come from.

6    Q.   This document comes from you.  Not from me.  Do
7  you see that Bates number in the bottom right-hand corner
8  where it says Davis 29?

9    A.   Yes.

10   Q.   This is a document that your attorney provided
11  to us.  So this document came from you.

12   A.   Okay.

13   Q.   So this is a document that you prepared for
14  Jill Raab.  Correct?

15   A.   I'm assuming so if I gave it to my attorney,
16  but I just don't recall it.

17   Q.   Okay.  And what this document is saying that
18  you gave to your attorney and that you wrote to Jill Raab
19  is that on June 11, 2013, you were given a written
20  reminder of the same incident that you got a verbal
21  reminder for on June 3.  Correct?

22   A.   Correct.

23   Q.   And if I look at Exhibit 28 and I look at
24  Exhibit 26, these match up.  Correct?

25   A.   Yes.

Page 138

1    Q.   And so you did get Exhibit 26, didn't you?

2    A.   Yes.  Well, according to this and this, did I
3  receive it?  But what my thing is, I'm saying that is not
4  my signature.

5    Q.   Okay.  Let's set that aside for now.  So
6  whether that's your signature or not, now it's your
7  testimony that you did get a copy of Exhibit 26; you just
8  don't believe you signed it?

9    A.   I don't recall.  I don't recall the -- to be
10  honest with you, looking at this, too -- by looking at
11  this that say I did, this could be more accurate than
12  this paperwork over here.  Exhibit 28 could be more
13  accurate than 26.

14   Q.   Well, 28 is something you wrote.

15   A.   So going with it, I'm saying yes.

16   Q.   Okay.  28 is something you wrote.  Correct?

17   A.   I assume so.

18   Q.   It comes out of your computer.  Right?

19   A.   Yes, but I handed my computer over to them.
20  That computer, "Davis, Neal," is that an office computer
21  or was it my personal computer?  So when I hand my
22  computer over to them, they have my computer.

23   Q.   Well, "them" is your attorney.

24   A.   Well, I'm saying that I could have possibly did
25  this.  I just don't recall it.  I'm not saying I didn't.

Page 139

1  I'm saying I just don't recall doing it.

2    Q.   Okay.  So looking at Exhibit 28, which you
3  produced and which came from your computer, that
4  indicates that, in fact, you were given a written warning
5  on June 11, 2013.  Correct?

6    A.   Correct.

7    Q.   And that also indicates that you were given a
8  verbal warning on June 3, 2013.  Correct?

9    A.   Correct.

10   Q.   And so your earlier testimony where you were so
11  adamant that you did not get a verbal warning on June 3
12  and that you didn't get a written warning on June 11,
13  that might be an error.  Correct?

14        MR. BHATTI:  Objection, form.

15   A.   Could be an error.

16   Q.   (BY MR. BIRRER) Could what?

17   A.   I said it's possible it could be an error on
18  that one.  I just don't recall Exhibit 26.

19   Q.   So now you're saying you don't recall
20  Exhibit 26, but when you look at Exhibit 28, that
21  indicates that you did, in fact, get Exhibit 26.
22  Correct?

23   A.   But --

24   Q.   Is that correct?

25   A.   No, that's not correct.  I'm saying that

Page 140

1  Exhibit 26 was not handed to me.  What I'm saying is if
2  this is what I gave -- if I typed this up and gave it to
3  them, I did not get this Exhibit 26 from Eric Wilson
4  dated June 11.  That's what I'm saying.  Everything else
5  probably be true.  Probably this go along with this.  I
6  didn't receive that.

7    Q.   Okay.  Do you have any other written reminder
8  of attendance dated June 11, 2013, other than Exhibit 26?

9    A.   No.

10   Q.   So when you were telling Jill Raab that on
11  June 11, 2013, you were given a written reminder, what
12  document were you referring to?

13   A.   I really don't know how to answer that one.  If
14  we go to Exhibit 28 and say I did this, I just don't
15  recall it.  We're talking about -- we're going back to --
16  I don't know what date this thing here was on.  Probably
17  2016.  If I gave it to my personal lawyer, so it had to
18  be 2016.  And it's 2020.

19   Q.   We've already established that -- you've
20  already testified that Exhibit 28 was created in response
21  to the final warning?

22   A.   Correct.

23   Q.   That's testimony you've already given?

24   Q.   That's correct.

25   Q.   And that was in November of 2015.  Correct?



Page 145

1   Q.   Okay.  And so then if you haven't seen it, I'm
2   not going to ask you questions from it.
3   **So when you were at Martin Marietta, there were**
4   **a number of occasions when you would clock in after**
5   **6:00 a.m.  Correct?**
6   **A.   Correct.**
7   **Q.   And you understood that any time you clocked in**
8   **after 6:00 a.m., that would show up -- so you were**
9   **supposed to clock in on or before 6:00 a.m.  Right?**
10  **A.   Correct.**
11  Q.   If you clocked in after 6:00 a.m., that was
12  going to show up as a tardy.  Correct?
13  **A.   Well, my understanding is that if you clock in**
14  **after -- anything after seven minutes after the hour**
15  **you're supposed to be there is that tardy.**
16  Q.   Where is that in the attendance policy?
17  **A.   It's in that Martin Marietta handbook.  They're**
18  **showing you the old TXI version.  I need to pull it.**
19  **It's in the Martin Marietta thing.**
20      (Exhibit No. 29 was marked.)
21  Q.   I'm going to have your attorney hand you what's
22  been marked as Exhibit 29, which is an excerpt from the
23  Martin Marietta New Employee Resource Guide.  And it's
24  got the cover page and the table of contents, and then
25  I've copied all of the policies concerning pay.

Page 146

1       If you can -- is there anything in there that
2   says that you can clock in seven minutes late?
3       MR. BHATTI:  Objection, form.
4   **A.   I don't see anything here, but, per se, the**
5   **book -- when they came on onboarding, they put it out to**
6   **everybody that came out, and it's in that book that they**
7   **passed out to us.  I can produce that book.  I know it's**
8   **in there.  It's not saying that -- it's saying the**
9   **employees -- verbatim, my memory, it said the employee is**
10  **not considered late until seven minutes after the hour.**
11  Q.   (BY MR. BIRRER) All right.  So let's just switch
12  gears for a second.
13      In the written warnings you received from your
14  supervisor, he said you needed to get there on or before
15  6:00 a.m.  Correct?
16  **A.   Correct.**
17  Q.   Your supervisor, when they were warning you
18  verbally, in writing, gave you a final warning, they
19  never said you could show up seven minutes late.
20  Correct?
21  **A.   Correct.**
22  Q.   And in all those handwritten notes that you put
23  on your final warning, there is nothing on there that
24  indicates that, "Hey, it's all right for me to clock in
25  six minutes late; I can't get found tardy for that"?

Page 147

1   There's nowhere that says that, is there?
2   **A.   No.**
3   Q.   I hate to go back to this one, but the Jill
4   Raab document, did you create that in response to getting
5   terminated or in response to the final warning?
6   **A.   I don't recall.  Honestly, I don't.**
7   Q.   So it could have been -- it could have been --
8   I see.  So the final written warning you received was on
9   November 19, 2013.  Correct?
10  **A.   Correct.  Wait a minute.  Yeah.  Correct.**
11  Q.   Okay.  So you -- the email to Jill could have
12  been created in response to the final warning or it could
13  have been created in response to the termination; you
14  just don't remember.  Right?
15  **A.   That's correct.**
16  Q.   We've already talked about who was present at
17  your termination meeting and what was said during the
18  termination meeting.  Correct?
19  **A.   Correct.**
20  Q.   Can you find in your stack of documents the
21  intake questionnaire that your attorney sent to the EEOC?
22  I think it was Exhibit 12.
23  **A.   Got it.**
24  Q.   Are you there?
25  **A.   Yes.**

Page 148

1   Q.   Okay.  So on Bates page EEOC 44 on Exhibit 12,
2   they asked you to name somebody who had a same or similar
3   situation as you but was treated better than you.  Do you
4   see that?
5   **A.   Which number?**
6   Q.   It's on Bates page EEOC 44 and then it's
7   numbered paragraph 8.
8   **A.   Okay.**
9   Q.   And then it says "Of the persons in the same or
10  similar situation as you, who was treated better than
11  you?"
12  **A.   Yes.**
13  Q.   And you've got Carl Weatherford?
14  **A.   Yes.**
15  Q.   And then you say he was maintenance personnel.
16  You say "He was late under company policy and not
17  reprimanded or terminated"?
18  **A.   Yes.  I remember him.**
19      (Exhibit No. 30 was marked.)
20  Q.   I'll have your attorney hand you what's been
21  marked as Deposition Exhibit 30.
22  **A.   Okay.**
23  Q.   So Deposition Exhibit 30 I will represent to
24  you are two reports of incidents that were provided to
25  Carl Weatherford.  Have you seen these before?

Page 149

1  A.  No.

2  Q.  Did you -- you were working at Martin Marietta

3 on December 15, 2015.  Correct?

4  A.  That's correct.

5  Q.  Did you know that Carl Weatherford was

6 suspended from his employment based on attendance issues

7 on December 15, 2015?

8  A.  No.

9  Q.  So that's just -- so when you said to the EEOC

10 that Carl had never been reprimanded, you just got that

11 one wrong.  Right?  That's just lack of knowledge?

12  A.  I can't say I got it wrong.  I didn't know on

13 this date.  What I was getting at with Carl, when Carl

14 first started he was late three or four times out of the

15 week.  Come in -- waking up drunk, coming in -- well,

16 that's hearsay.  But basically his attendance was late

17 all the time.

18  Q.  Let's --

19  A.  Blow me out of the water.

20  Q.  Let me ask the question again.

21   So when you or your attorney completed the EEOC

22 Intake Questionnaire form which is Exhibit 12, you stated

23 that he was late under company policy and not

24 reprimanded.  Correct?

25  A.  Correct.

Page 150

1  Q.  And when we look at Exhibit 30, that shows --

2 if you had known about Exhibit 30, you would know that

3 what you told the EEOC was not accurate.  Right?  You

4 just didn't know about Exhibit 30.  Is that your

5 testimony?

6  A.  Correct.  Didn't know about 30.  I was speaking

7 on prior to December '15.

8  Q.  You don't say that in Exhibit 12, do you?

9  A.  No.

10  Q.  On March 31, 2016, you provided information to

11 the EEOC indicating that Carl Weatherford had never been

12 reprimanded for attendance issues.  Correct?

13  A.  Correct.

14  Q.  And that's not accurate.  Correct?

15  A.  Based on my knowledge during the time I wrote

16 the EEOC, based on my knowledge and dealing with

17 lateness, I thought that was accurate during that time.

18  Q.  Right.  But now you know it's not accurate.

19  Correct?

20  A.  Correct.

21  Q.  So Carl Weatherford actually got suspended

22 based on attendance while you were still an employee at

23 Martin Marietta.  Correct?

24  A.  Correct.

25  Q.  And then if you turn to the second page of

Page 151

1 Exhibit 30, that indicates that Carl Weatherford was

2 terminated based on attendance.  Correct?

3  A.  Correct.  How'd he last to June?

4  Q.  So if you can just answer my question without

5 the extra --

6  A.  I'm sorry.  The date took me.  I'm sorry.

7  Q.  So you would agree with me that Carl

8 Weatherford's employment was actually terminated in June

9 of 2016 based on attendance.  Correct?

10  A.  Correct.

11  Q.  I just want to make sure.  Do you know who his

12 supervisor was who signed this document on the first page

13 of Exhibit 30?

14  A.  No.

15  Q.  So did you and Mr. Weatherford have different

16 supervisors?

17  A.  Yes.

18  Q.  And it looks like Mr. Weatherford was also

19 given a verbal warning in September of 2015.  Correct?

20  A.  Correct.

21  Q.  So Mr. Weatherford -- it looks like he started

22 his employment around September of 2015.  Correct?

23  A.  Correct.

24  Q.  So in less than a year, Mr. Weatherford got a

25 verbal warning, a suspension, and was fired.  Correct?

Page 152

1  A.  Correct.

2  Q.  All based on attendance.  Correct?

3  A.  Correct.

4  Q.  As an hourly employee, did you have the ability

5 to review other employees' attendance records?

6  A.  No.

7  Q.  Did you have the ability to review your own

8 attendance records?

9  A.  Weekly.  I can go back a week in Kronos.

10 That's about the only thing I know that we have.

11  Q.  So you could look in Kronos to see if it was

12 marking you as tardy?

13  A.  Within that pay period.

14  Q.  And if you thought it was wrong, you could fill

15 out one of the payroll adjustment forms or you could

16 contact somebody in HR.  Correct?

17  A.  I didn't know I could do that.

18  Q.  Well, did you know -- you knew you could always

19 call the ethics hotline for anything.  Correct?

20  A.  I know I had permission to call that.  Not

21 basically anything, but I'm from the military.  Usually

22 when I change command and let them know.

23  Q.  So you didn't want to use the ethics hotline?

24  A.  I used the last time I changed command.

25  Q.  Okay.  So there's no indication that you ever



Page 153

1  told -- that you ever disputed a tardy that you received.
2  Correct?
3      A.    The one when the machine was broken.  Other
4  than that, no.
5      Q.    Say that again.
6      A.    This time frame when the machine had -- for the
7  Kronos basically had stopped working and it will show a
8  period of time frame you could be at the clock trying to
9  clock in and it won't let you.  Those I went to the
10  supervisor.  "Hey, I'm trying to clock in and this thing
11  won't let me."
12      Q.    On the time detail that we looked at earlier,
13  there are some instances where it says that it allowed
14  you to correct your clock-in time.  Correct?
15      A.    The supervisor could.
16      Q.    Right.  And that actually is reflected on the
17  time detail, Exhibit 10.  Correct?
18      A.    Correct.
19      Q.    So when you would go to your supervisor and
20  say, "Hey, there's a mistake," your supervisor would
21  correct your tardy in Kronos.  Correct?
22      A.    Correct.
23      Q.    And in fact, if you pull out Exhibit 10.
24      A.    Okay.
25      Q.    Are you there?

Page 154

1      A.    All right.
2      Q.    For instance, on Bates page 141, on April 13,
3  it looks like you clocked in five minutes late, but
4  underneath that there was a note that your supervisor put
5  in saying "Train Blocking Entrance."  Correct?
6      A.    Correct.
7      Q.    So that's an example of where you went to your
8  supervisor and said, "I did show up late.  There's a
9  reason."  And he would input information or have
10  information input into Kronos explaining it.  Correct?
11      A.    Correct.
12      Q.    Similarly on Bates page 144.  Are you there?
13      A.    Yes.
14      Q.    On June 10, you clocked in at 6:01, which was
15  slightly after 6:00 a.m., and your supervisor put a note
16  down saying "PC Punch Failure, Excused."  Correct?
17      A.    Correct.
18      Q.    That's an example of you were tardy, but your
19  supervisor wrote something in there explaining why you
20  were tardy.  Correct?
21      A.    Correct.
22      Q.    Was there ever an occasion when you asked your
23  supervisor to write a note excusing a tardy where you
24  understood him not to do that or not to agree to do that?
25      A.    Maybe on two occasions.  I know he said he was

Page 155

1  going to get around to it, but he never did.
2      Q.    Okay.  And do you remember when those two
3  occasions were?
4      A.    I can't recall the exact date, but I do
5  remember that it was -- how I know he didn't do it,
6  because the pay period -- it was docked on the pay
7  period.
8      Q.    Okay.  But you just don't remember the date
9  that was?
10      A.    Correct.
11      Q.    And if you look at the punch-out times on
12  Exhibit 10, you clocked out well past eight hours just
13  repeatedly.  Correct?
14      A.    Correct.
15      Q.    So if you were working -- you waited until all
16  your work was done before you clocked out.  Correct?
17      A.    Correct.  Pretty much.
18      Q.    So for instance, on May 28, 2015, that's
19  indicates you clocked out at 6:28 p.m.  Right?  That's on
20  page 143.
21      A.    Yes.  I see what you're talking about.
22      Q.    And that when you go over, it indicates that
23  you got credit for 11 hours and 58 minutes of time on
24  that day.  Correct?
25      A.    Correct.

Page 156

1      Q.    And on the day before that, you got 11 hours
2  and 53 minutes of time.  Correct?
3      A.    Correct.
4      Q.    And assuming you were working your regular work
5  week, every hour over eight was going to be overtime.
6  Correct?
7      A.    Correct.
8      Q.    Is that correct?
9      A.    That's correct.
10      Q.    So if you turn to Bates page 144.
11      A.    (Witness complies.)
12      Q.    Are you there?
13      A.    Yes.
14      Q.    There were seven days in which you clocked in
15  and billed more than 10 hours on a workday.  Correct?
16      MR. BHATTI:  Objection, form.
17      A.    Correct.
18      Q.    (BY MR. BIRRER) Turn to Bates page 145.
19      A.    (Witness complies.)
20      Q.    Are you there?
21      A.    Yes.
22      Q.    It looks like there are 16 days in which you
23  clocked in and clocked out.  Is that right?
24      MR. BHATTI:  Objection, form.
25      A.    Correct.

Page 161

1    Q.   You just don't remember?

**2    A.   Yeah.  Yes, I do remember now.**

3    Q.   Okay.

**4    A.   Looking over the document here, there's**

**5  something I'd like to go back to on Exhibit 10.**

6    Q.   Let's hold on and let me ask you some questions

7  first.

**8    A.   Okay.**

9          (Exhibit No. 31 was marked.)

10    Q.   I'm going to show you what's been marked as

11  Deposition Exhibit 31.  Is Deposition Exhibit 31 a true

12  and correct copy of your Second Amended Objections and

13  Responses to Interrogatories?

**14    A.   Correct.**

15    Q.   Pardon?

**16    A.   Yes.**

17    Q.   And you verified these.  Correct?

**18    A.   Yes.**

19    Q.   Is that your signature on the back page where

20  you verified that these were --

**21    A.   Yes.**

22    Q.   -- verified these answers on March 7 of 2020?

**23    A.   Yes.**

24    Q.   And so in Interrogatory No. 1, you were called

25  upon to explain your claim that you didn't get paid

Page 162

1  overtime that was owed to you.  Correct?

**2    A.   Correct.**

3    Q.   And so the points that you made -- in the first

4  sentence you said "He was required to work such time for

5  unload, offload and inventory duties that he was told

6  must be done before he went home."  Correct?

**7    A.   Correct.**

8    Q.   And so that's at the end of the day.  Correct?

**9    A.   Correct.**

10    Q.   So the two points that you raised in

11  Interrogatory No. 1 is that you claim that you had to

12  work beyond your eight hours at the end of the day.

13  Correct?

**14    A.   Correct.**

15    Q.   And you also claim that your lunch was short or

16  denied.  Correct?

**17    A.   Correct.**

18    Q.   And that's the only things that you had

19  indicated support your FLSA claim.  Correct?

**20    A.   True.**

21    Q.   And in the first sentence of your interrogatory

22  you say "To the best of plaintiff's recollection, he

23  worked more than 40 hours in a week on a regular

24  consistent basis without being paid overtime"?

**25    A.   Correct.**

Page 163

1    Q.   That's not correct, is it?

**2    A.   Yes, it is.**

3    Q.   You got paid overtime every week.  Correct?

**4    A.   I worked -- that's the reason I said I want to**

**5  go back to Exhibit 10.**

6    Q.   I want you to answer my questions.

7          So you were paid overtime almost every week.

8  Correct?

**9    A.   Almost, correct.**

10    Q.   In fact, we went through where there were --

11  that one thing that we looked at where there were

12  multiple days where you worked over ten hours in a day.

13  Correct?

**14    A.   Correct.**

15    Q.   And you agreed with me that when you worked

16  over eight hours, you got paid the overtime.  Correct?

**17    A.   That's the part I say I want to go back to.**

**18  Because even though I worked and clocked out, I was**

**19  called back to -- "Hey, I need you to stay over to**

**20  offload a truck.  We got a person that's called in."**

**21  That's the time I'm complaining about I wasn't paid for.**

22    Q.   So let me press pause then.  So what you're

23  saying is that you would -- like after 12 hours or 10

24  hours or 11 hours, on occasion you would either go the

25  two-minute walk away from the warehouse or the

Page 164

1  five-minute walk away from the warehouse, clock out, and

2  then somebody would ask you to come back?

**3    A.   Right.  Or I'd be going out the gate and I'd**

**4  get a phone call saying "Hey, can you come back?"  I'd**

**5  just go back.**

6    Q.   And sitting here today, you cannot identify

7  even one date on the calendar when that happened.

8  Correct?

**9    A.   Rephrase that question again.**

10    Q.   Sure.  You're claiming that you got asked to

11  come back and work after you clocked out.  Correct?

**12    A.   Uh-huh.**

13    Q.   Is that yes?

**14    A.   Yes.**

15    Q.   And sitting here right now, under oath, you

16  cannot tell me or the judge or the jury a single day when

17  that actually happened?

**18    A.   Truthfully, no, I cannot tell you exactly what**

**19  day that happened.**

20    Q.   That's all I'm asking.

**21    A.   Correct.**

22    Q.   Okay.  And you don't -- you don't have a

23  calendar, a note, a diary, a Facebook post, anything in

24  writing or anything in your memory that would let you say

25  here are the 14 days in which they asked me to come back

Page 165

```
1   to work after I clocked out; you just have no idea.
2   Correct?
3        A.   Correct.
4             MR. BHATTI:  Objection, form.
5        Q.   (BY MR. BIRRER) And that would be pure
6   speculation on your part if you were to try to figure
7   that out right now.  Correct?
8        A.   Unless we call in a witness.
9        Q.   I'm asking you.
10       A.   I'm saying to verify what I'm saying, we can
11  call in a witness and they can verify it.
12       Q.   You're my witness.  So what I'm asking you is,
13  sitting here today, do you have any basis whatsoever to
14  say these are the specific days that I was asked to come
15  back to work?
16       A.   No.
17       Q.   And sitting here today, do you have any basis
18  to say "I had to come back to work for one hour, for 12
19  hours, for 10 hours, for three hours and 45 minutes"?  Do
20  you have any basis to put a time amount to any time you
21  were asked to come back to work?
22       A.   No.
23       Q.   Okay.  So the two things that you are seeking
24  in your FLSA claim is, one, when you claimed you were
25  asked to come back to work.  We just talked about that.
```

Page 166

```
1   Correct?
2        A.   Correct.
3        Q.   And two, where you said that during your
4   regular half hour lunch period, you were told "Go out
5   there and do some work"?
6        A.   Correct.
7        Q.   Anything else?
8        A.   No.
9        Q.   And when you were saying, "I want to look at
10  the time detail," we did look at that Exhibit 10 time
11  detail.  Correct?
12       A.   Correct.
13       Q.   Several times.  Correct?
14       A.   Correct.
15       Q.   And what that exhibit showed us is that there
16  were a number of occasions where you went to your
17  supervisor and said -- and you had looked at your time
18  detail and you said there was something wrong, and your
19  supervisor went in and fixed it.  Right?  Where it would
20  show that you were tardy and the supervisor would go in,
21  type something into the Kronos system, and it would show
22  up corrected.  Right?
23       A.   That's when I was telling you about time frames
24  that he didn't do it that I told him about.  I won't see
25  it until I get my paycheck, that he didn't fix it.
```

Page 167

```
1        Q.   Right.  I think you said there were twice that
2   that happened.
3        A.   I said numerous occasions.  Not just twice.
4        Q.   Well, the record will --
5        A.   I'm saying that when my work -- there had been
6   occasions -- and you can call Eric -- call him up and ask
7   him yourself.  There's been occasions that he asked me,
8   "Hey, I need you to stay for inventory" or "I need you to
9   stay to -- I've got a truck coming in."  "When is it
10  going to be here?"  "They say 45 minutes."  So I wait.
11  Truck get there.  I offload it, whatever time that be.
12  That happened on numerous occasions.  Not just that one
13  particular day.  That's what I was talking about.
14       Q.   We don't know what day.  Right?
15       A.   Say again.
16       Q.   We don't know a day.  Correct?
17       A.   Day of the month, year, I can't get that, but
18  it happened a lot.
19       Q.   Did anyone prevent you from clocking back in?
20       A.   No.
21       Q.   Did you ask to clock back in?
22       A.   Well, during that rule when you clock out --
23       Q.   That's not my question.
24       A.   No.  That wasn't the procedure.
25       Q.   That wasn't my question either.  I said did
```

Page 168

```
1   anybody prevent you from clocking back in?
2        A.   No.
3        Q.   All you had to do was stick your finger on the
4   Kronos machine.  Correct?
5        A.   That wasn't the procedure.
6        Q.   That's not my question.  All you would have to
7   do to clock back in is stick your finger on the Kronos
8   machine.  Correct?
9        A.   Correct.
10       Q.   So if somebody asked you to come back, all you
11  would have to do is walk to the Kronos machine, put your
12  finger on it, and it would show you clocking in.
13  Correct?
14       A.   Correct.
15       Q.   And when you got done, all you had to do was
16  stick your finger on the Kronos machine and it would have
17  clocked you out.  Correct?
18       A.   Correct.
19       Q.   And nobody ever told you you couldn't do that.
20  Correct?
21       A.   No one never told me I couldn't do it, but the
22  general rule was that once you clocked out --
23       Q.   What rule?
24       A.   -- you do not clock back in.  You don't double
25  clock in because you'll screw up Kronos.  Kronos will
```

Lexitas

Page 201

1    Q.   Okay.  And at the time of your termination,
2    based on the number of attendances as they counted them,
3    you had more than six absences in a 12-month period.
4    Correct?
5    A.   Correct.
6    Q.   So what I'm asking you is, setting Carl
7    Weatherford to the side for a second, is there anybody
8    else or any other information that you're pointing to to
9    say that I got treated differently under the attendance
10   policy.  And maybe it's just Carl Weatherford, which
11   that's fine.
12   A.   Well, based on looking at that Carl Weatherford
13   guy, just going back to him.  I'm pressing that.  If you
14   look at some of the records you showed us in the exhibit,
15   that guy was late, like, 39 minutes, 50 minutes, two
16   hours, two and a half hours.  He still kept his job.
17        Then you look at under my attendance, you look
18   at two minutes, three minutes, stuff like that.  And to
19   me, I was like this -- the apples to apples was not
20   there.
21        Then like I told Eric during that time frame --
22   Eric is the supervisor.  I'm sorry.  Like I told my
23   supervisor during that time frame, "Look, you know
24   they're going after me because they're trying to get
25   LeAnn this position."  He said, "I agree.  I agree.  They

Page 202

1    need to remove you to give her the position."  And that's
2    verbatim.  I'm not just making it up.  It's not hearsay,
3    whatever.  They did to me the discrimination race thing
4    and it just eats me up even today.  Even though this
5    happened January 2016.  It still bothers me when I go
6    back and think of the way they had to do it.
7        Twenty-nine times being late.  Look here.
8    You're 29 times late, you should have been gone a long
9    time ago.  Now, who holds -- the other thing that gets
10   me, who holds a record on an individual for that many
11   years?  Usually they roll off and you start at -- hey,
12   you know, a year going forward.  You don't go back to
13   2013 and pull up 29 times.
14   Q.   All right.
15   A.   So that's based off -- let me finish.  Based on
16   your performance.  I must have been doing a good job.
17   They kept me that long to the time frame to LeAnn with
18   the position, me going back to the plant supervisor --
19   assistant plant supervisor and asking, "Hey, when are you
20   going to post it?  When are you going to post the job?"
21   They got tired of hearing it.
22        So the only way to say, hey, so we don't have
23   no flack, we're going to -- another thing that I disagree
24   with.  They promote her the morning of.  Get me out of
25   the way first.  Don't let me know about it.  Get me out

Page 203

1    of the way.  But the letter say the 25th.  They want to
2    do what they want to do.  They did it.
3        And man, I'm sorry.  My PTSD is kicking in --
4    Q.   That's all right.
5    A.   -- and I go back to the thing about --
6    Q.   That's all right.
7        MR. BIRRER:  I'm going to move to strike
8    as nonresponsive.
9    A.   -- the totally unfair situation of what they
10   did and by a male versus a female on a job.  To me, it
11   don't make a difference what color, creed, who you are,
12   or sex.  That shouldn't make a difference.  But to them,
13   it did.  Today, it still do.
14        MR. BIRRER:  I'm going to move to strike
15   as nonresponsive.
16   A.   It does.
17        MR. BIRRER:  Okay.  I'm going to move to
18   strike as nonresponsive.
19   Q.   (BY MR. BIRRER) All I'm asking is at first you
20   indicated Carl Weatherford, so you've talked about Carl
21   Weatherford.  Is there any other person besides Carl
22   Weatherford that you are contending that Martin Marietta
23   applied its attendance policy to in a better or more
24   favorable way than they applied it to you?  We've talked
25   about Carl.  No need to talk about him anymore today.

Page 204

1    A.   Okay.  No.
2    Q.   So Carl Weatherford is the sole person that
3    you're saying got treated more advantageously than you
4    did?
5    A.   Correct.
6    Q.   So the three people that interviewed you for
7    planner were Terry Doyle, the plant manager, and then you
8    said Karen McDonald was in the room?
9    A.   For what position?
10   Q.   For the planner position.
11   A.   No.  That was for the administration position,
12   the administration manager position.  The planner
13   position, the interview was with Jason Crowther and the
14   other planner.  John McCutcheon.
15   Q.   What's his name?
16   A.   John McCutcheon.  McCutcheon.
17   Q.   John?
18   A.   John McCutcheon.
19   Q.   I previously asked you if Jason Crowther had
20   ever made any comments or acted in any way where you
21   thought he was indicating that he was acting in a
22   discriminatory fashion, and you testified, no, you didn't
23   know anything for John Crowther.  Correct?
24   A.   John Crowther?  John McCutcheon?
25   Q.   Excuse me.  Jason Crowther.  Let me ask that

Page 205

1  question again.

2       I previously asked you about Jason Crowther,

3  about whether or not he had made any comments that you

4  thought were discriminatory, and you testified he had

5  not.  Do you recall that?

6  **A.   Well, I said I don't recall at this moment that**

7  **he did anything.  In 2016 (inaudible).**

8  Q.   You're going to have to speak more clearly for

9  the court reporter.

10  **A.   I said I don't recall Jason Crowther doing**

11  **anything.**

12  Q.   Okay.  So you don't have any recollection of

13  Jason Crowther saying anything that you took to be

14  discriminatory on the basis of race or sex.  Correct?

15  **A.   At this moment, I can't recall.**

16  Q.   Okay.  And then on John McCutcheon, do you have

17  any recollection of John McCutcheon ever saying anything

18  or doing anything that you believe was discriminatory

19  based upon race or sex?

20  **A.   Absolutely not.**

21  Q.   And it was John and Jason who were in the

22  interview when you were applying for planner?

23  **A.   Correct.**

24  Q.   Was anyone else in the room?

25  **A.   That was the only two I can recall that was in**

Page 206

1  **the room.**

2  Q.   Okay.

3  **A.   No.**

4       MR. BIRRER:  I'll pass the witness.

5       MR. BHATTI:  I will reserve my questions

6  for the time of trial.

7       (Deposition concluded at 4:11 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 207

1            CHANGES AND SIGNATURE

2  WITNESS:  NEAL DAVIS

3  DEPOSITION DATE:  AUGUST 7, 2020

4  PAGE LINE  CHANGE              REASON

5  _____

6  _____

7  _____

8  _____

9  _____

10  _____

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  _____

25  _____

Page 208

1     I, NEAL DAVIS, have read the foregoing deposition

2  and hereby affix my signature that same is true and

3  correct, except as noted above.

4

5          _____

6          NEAL DAVIS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 209

```
 1              IN THE UNITED STATES DISTRICT COURT

                FOR THE NORTHERN DISTRICT OF TEXAS

 2                        DALLAS DIVISION

 3   NEAL DAVIS,                    )

           Plaintiff,              )

 4                                  )

     vs.                            )  CASE NO. 3:16-CV-01312-L

 5                                  )

     MARTIN MARIETTA                )

 6   MATERIALS, INC.,              )

           Defendant.              )

 7

 8

 9              REPORTER'S CERTIFICATION

10               ORAL DEPOSITION OF

11                   NEAL DAVIS

12               AUGUST 7, 2020

13

14       I, Susan Flanagan, a Certified Shorthand Reporter in

15   and for the State of Texas, hereby certify to the

16   following:

17       That the witness, NEAL DAVIS, was duly sworn by the

18   officer and that the transcript of the oral deposition is

19   a true record of the testimony given by the witness;

20       I further certify that pursuant to FRCP Rule

21   30(f)(1), that the signature of the deponent:

22       __X__ was requested by the deponent or a party

23   before the completion of the deposition and is to be

24   returned within 30 days from date of receipt of the

25   transcript.  If returned, the attached Changes and
```

Page 210

```
 1   Signature Page contains any changes and the reason

 2   therefore:

 3       _____ was not requested by the deponent or a party

 4   before the completion of the deposition.

 5       I further certify that I am neither counsel for,

 6   related to, nor employed by any of the parties or

 7   attorneys in the action in which this proceeding was

 8   taken.  Further, I am not a relative or employee of any

 9   attorney of record in this cause, nor am I financially or

10   otherwise interested in the outcome of the action.

11       Certified to by me on this 24th day of August, 2020.

12

13

14

15

           Susan Flanagan, Texas CSR

16           CSR No. 5817

             Certification Expires: 4/30/21

17           Lexitas Firm Registration No. 459 - Dallas

             6500 Greenville Avenue, Suite 445

18           Dallas, Texas 75206

             (214) 373-4977

19

20

21

22

23

24

25
```

04/07/16
R07186

| | | |
|---|---|---|
| | 725641 | Route: 99998 |
| Martin Marietta Materials, Inc. | DAVIS, NEAL | Check No: 2821011 |
| 2710 Wycliff Road | 1717 WILD DEER WAY | Check Date: 12/31/15 |
| Raleigh NC 27607 | ARLINGTON,    TX    76002 | Period End: 12/27/15 |
| | 781-1546 | |

| Period Earnings | | Hours | Rate | Amount | Year to Date | Description | Period Amount | Year to Date |
|---|---|---|---|---|---|---|---|---|
| Regular 1 | | | | | | 31,576.42 Gross Wages | 708.00 | 62,416.44 |
| Overtime 1.5 | | | | | | 23,023.47 Federal Income Tax | 1.76 | 2,790.62 |
| Call-In 1.5 | | | | | | 106.20 Federal FICA Withheld | 43.91 | 3,734.86 |
| Holiday | | 16.00 | 17.700 | 283.20 | | 1,537.20 Federal Medicare Withheld | 10.26 | 873.47 |
| S&A 60% FMLA | | | | | | 742.61 HDen-Stnd | 0.00 | 385.84 |
| Suppl Bonus | | | | | | 1,217.70 HVision | 0.00 | 183.56 |
| Plant Incent | | | | | | 77.46 HLife-EE-1.5 | 0.00 | 139.10 |
| VacH-Cur Yr | | 24.00 | 17.700 | 424.80 | | 1,691.04 HLTD-50% | 0.00 | 132.82 |
| VacH-PriorYr | | | | | | 825.12 SIP1 Loan | 60.00 | 3,120.00 |
| VacH Payout | | | | | | 141.60 SIP-PreTax | 0.00 | 1,968.32 |
| HLife-Impute | | | | .21 | | 9.31 SIP Roth | 0.00 | 799.91 |
| TuitionReimb | | | | | | 1,477.62 TXI Cr Un | 54.80 | 2,849.60 |
| | | | | | | Shoes | 0.00 | 4.90 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Gross Pay | 708.00 | | Total Deductions | 170.73 | Net Pay | 537.27 |



MM0317

*Martin Marietta*

PAYROLL ADJUSTMENT TO PAY

| | |
|---|---|
| DATE: | 2/20/2015 |
| EMPLOYEE NAME: | Neal Davis |
| EMPLOYEE NUMBER: | 725641 |
| PLANT LOCATION: | Midlothian |
| EMPLOYEE BASE RATE: | $16.5700 |

REASON: Entered time as vacation but need to change to illness unpaid. Out longer than expected and applying for STD and will save the vacation time.

| HISTORICAL DATE | PAY CODE DESCRIPTION | HOURS | PAY RATE | TIME IN | TIME OUT | TOTAL HRS/$$$ |
|---|---|---|---|---|---|---|
| 2/12/15 | VacHrly-Curr Yr | -8.00 | 16.5700 | | | $ (132.56) |
| 2/13/15 | VacHrly-Curr Yr | -8.00 | 16.5700 | | | $ (132.56) |
| 2/12/15 | Illness Unpaid | 8.00 | 0.0000 | | | $ - |
| 2/13/15 | Illness Unpaid | 8.00 | 0.0000 | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |
| | | | | | | $ - |

Total      0.00      $ (265.12)

PREPARED BY: *Karen McDonald*    DATE: 2/20/15
Signature (Administrative Manager)

AUTHORIZED BY: X *Eric M Wilson*    DATE: 2/26/15
Signature (Supervisor)

*E.Ric Wilson*
Print Name

\*\*Note: If employee has been over paid, please obtain employee's signature below

I authorize the adjustment amount shown above to be deducted from my next regular check.

X _____     2/25/15
Employee Signature      Date

PAYROLL USE ONLY:

AMOUNT: $ _____ - PAY DATE: _____

KEYED: _____ DATE KEYED: _____

EXHIBIT
8/7/20
Davis
PENGAD 800-631-6989

MM0030

App. 030

## TIMECARD
### DAVIS, NEAL 2/09/2015-2/15/2015



| Date | Pay Code | Amount | In | Transfer | Out | In | Transfer | Out | Shift | Daily | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon 2/09 | Illness Unpaid | 7:44 | | | | | | | | | |
| Mon 2/09 | | | 5:55AM | | 6:16AM | | | | 0:16 | 8:00 | 8:00 |
| Tue 2/10 | | | 5:45AM | | 3:30PM | | | | 9:00 | 9:00 | 17:00 |
| Wed 2/11 | | | 6:03AM | | 5:03PM | | | | 10:30 | 10:30 | 27:30 |
| Thu 2/12 | VacHrly-Curr Yr | 8:00 | 6:00AM | | | | | | | 8:00 | 35:30 |
| Fri 2/13 | VacHrly-Curr Yr | 8:00 | 6:00AM | corre. | | | | | | 8:00 | 43:30 |
| Sat 2/14 | | | | | | | | | | | 43:30 |
| Sun 2/15 | | | | | | | | | | | 43:30 |

*Correcting to illness unpaid*

### Totals

| Account | Pay Code | Amount |
|---|---|---|
| 00100/20-61/T26/-/363/54732/870 | Unscheduled Prem. | 3:33 |
| 00100/20-61/T26/-/363/54732/870 | REG | 16:13 |
| 00100/20-61/T26/-/363/54732/870 | Total Hours Worked | 19:46 |
| 00100/20-61/T26/-/363/54732/870 | Total Non Worked ... | 23:44 |
| 00100/20-61/T26/-/363/54732/870 | Total Wages | 35:46 |
| 00100/20-61/T26/-/363/54732/870 | Total Hours Paid | 35:46 |
| 00100/20-61/T26/-/363/54732/870 | VacHrly-Curr Yr | 16:00 |

### Schedule

| Date | Start Time | End Time | Pay Code | Amount |
|---|---|---|---|---|
| Mon 2/09 | 6:00AM | 2:30PM | | |
| Tue 2/10 | 6:00AM | 2:30PM | | |
| Wed 2/11 | 6:00AM | 2:30PM | | |
| Thu 2/12 | | | VacHrly-Curr Yr | 8:00 |
| Fri 2/13 | | | VacHrly-Curr Yr | 8:00 |
| Sat 2/14 | | | | |
| Sun 2/15 | | | | |



PENGAD 800-631-6989

Davis   EXHIBIT   8/7/20

MM0031

### *TEXAS INDUSTRIES, INC.*

### PAYROLL ADJUSTMENT TO PAY

| | |
|---|---|
| **DATE:** | 7/30/2015 |
| **EMPLOYEE NAME:** | **Billy Wiggins** |
| **EMPLOYEE NUMBER:** | 725332 |
| **PLANT LOCATION:** | Midlothian |
| **EMPLOYEE BASE RATE:** | $30.8200 |

**REASON:** 30 minute lunch deduction was not removed. Employee is paid for lunch during an outage.

| HISTORICAL DATE | PAY CODE DESCRIPTION | HOURS | PAY RATE | TIME IN | TIME OUT | TOTAL HRS/$$$ | |
|---|---|---|---|---|---|---|---|
| 7/20/15 | REG | 0.50 | 30.8200 | 5:45am | 4:58pm | $ | 15.41 |
| 7/21/15 | REG | 0.50 | 30.8200 | 5:45am | 4:30pm | $ | 15.41 |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |
| | | | | | | $ | - |

| **Total** | **1.00** | | | | | **$** | **30.82** |
|---|---|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| **PREPARED BY:** | _____ | DATE: | 7/30/2015 |
| | Signature (Administrative Supervisor) | | |
| **AUTHORIZED BY:** | _____ | DATE: | _____ |
| | Signature (Supervisor) | | |
| | Aaron Toles | | |
| | Print Name | | |

**\*\*Note: If employee has been over paid, please obtain employee's signature below**

I authorize the adjustment amount shown above to be deducted from my next regular check.

| _____ | _____ |
|---|---|
| Employee Signature | Date |

**PAYROLL USE ONLY:**

| | | | |
|---|---|---|---|
| AMOUNT: | $            - | PAY DATE: | _____ |
| KEYED: | _____ | DATE KEYED: | _____ |

PENGAD 800-631-6989   **EXHIBIT** 8/7/20
9
Davis

MM0410

**Time Detail**

| | |
|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 |
| Query: | Previously Selected Employee(s) |
| Actual/Adjusted: | Show hours credited to this period only. |

| | |
|---|---|
| Data Up to Date: | 5/3/2016 12:55:10 PM |
| Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | marshshm |
| Insert Page Break After Each Employee: | No |

| Employee: | DAVIS, NEAL | ID: | 725641 | Time Zone: | Central |
|---|---|---|---|---|---|
| Status: | Terminated | Status Date: 1/22/2016 | | Pay Rule: | CMT-TX Plant Non Shift Weekly |

**Primary Account**

| | Start | End |
|---|---|---|
| 00100/20-61/T26/-/363/54732/90 | 12/11/2006 | 12/1/2014 |
| 00100/20-61/T26/-/363/54732/890 | 12/1/2014 | 1/26/2015 |
| 00100/20-61/T26/-/363/54732/870 | 1/26/2015 | 3/23/2015 |
| 00100/20-61/T26/-/0/54732/99 | 3/23/2015 | 3/30/2015 |
| 00100/20-61/T26/-/363/54732/899 | 3/30/2015 | 6/29/2015 |
| 00100/20-61/T26/-/363/54731/899 | 6/29/2015 | 11/2/2015 |
| 00002/20-61/T26/-/363/54731/899 | 11/2/2015 | Forever |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 12/8/2014 | | 5:47:00 AM | | 5:17:00 PM | | | | | | 10:47 | 10:47 |
| | | | | | LV | | | | | | |
| 12/9/2014 | | 5:51:00 AM | | 4:05:00 PM | | | | | | 9:35 | 20:22 |
| | | | | | LV | | | | | | |
| 12/10/2014 | | 5:55:00 AM | | 4:45:00 PM | | | | | | 10:15 | 30:37 |
| | | | | | LV | | | | | | |
| 12/11/2014 | | 5:58:00 AM | | 4:01:00 PM | | | | | | 9:31 | 40:08 |
| | | | | | LV | | | | | | |
| 12/12/2014 | | 5:48:00 AM | | 4:05:00 PM | | | | | | 9:35 | 49:43 |
| | | | | | LV | | | | | | |
| 12/15/2014 | | 5:59:00 AM | | 3:32:00 PM | | | | | | 9:02 | 58:45 |
| | | | | | LV | | | | | | |
| 12/16/2014 | | 5:57:00 AM | | 3:36:00 PM | | | | | | 9:06 | 67:51 |
| | | | | | LV | | | | | | |
| 12/17/2014 | | 6:00:00 AM | | 3:42:00 PM | | | | | | 9:12 | 77:03 |
| | | | | | LV | | | | | | |
| 12/18/2014 | | 6:00:00 AM | | 3:38:00 PM | | | | | | 9:08 | 86:11 |
| | | | | | LV | | | | | | |
| 12/19/2014 | | 5:57:00 AM | | 3:30:00 PM | | | | | | 9:00 | 95:11 |
| | | | | | LV | | | | | | |
| 12/22/2014 | | 6:00:00 AM | | 3:30:00 PM | | | | | | 9:00 | 104:11 |
| | | | | | LV | | | | | | |
| 12/23/2014 | 6:00 AM | VacHrly-Curr Yr | | | | | 8:00 | | | | 112:11 |
| 12/24/2014 | 6:00 AM | VacHrly-Curr Yr | | | | | 8:00 | | | | 120:11 |
| 12/25/2014 | 6:00 AM | Holiday | | | | | 8:00 | | | | 128:11 |
| 12/26/2014 | 6:00 AM | Holiday | | | | | 8:00 | | | | 136:11 |
| 12/29/2014 | 6:00 AM | VacHrly-Curr Yr | | | | | 8:00 | | | | 144:11 |

EXHIBIT 8/7/20

PENGAD 800-631-6989

Davis

Page 1

MM0137

## Time Detail

| | |
|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 |
| Query: | Previously Selected Employee(s) |
| Actual/Adjusted: | Show hours credited to this period only. |

| | |
|---|---|
| Data Up to Date: | 5/3/2016 12:55:10 PM |
| Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | marshshm |
| Insert Page Break After Each Employee: | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 12/30/2014 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 152:11 |
| 12/31/2014 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 160:11 |
| 1/1/2015 6:00 AM | | Holiday | | | | | 8:00 | | | | 168:11 |
| 1/2/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 176:11 |
| 1/5/2015 | | 5:59:00 AM | | 3:45:00 PM | | | | | | 9:15 | 185:26 |
| | | | | | LV | | | | | | |
| 1/6/2015 | | 5:47:00 AM | | 5:45:00 PM | | | | | | 11:15 | 196:41 |
| | | | | | LV | | | | | | |
| 1/7/2015 | | 5:49:00 AM | | 3:48:00 PM | | | | | | 9:18 | 205:59 |
| | | | | | LV | | | | | | |
| 1/8/2015 | | 5:59:00 AM | | 4:47:00 PM | | | | | | 10:17 | 216:16 |
| | | | | | LV | | | | | | |
| 1/9/2015 | | 5:54:00 AM | | 3:32:00 PM | | | | | | 9:02 | 225:18 |
| | | | | | LV | | | | | | |
| 1/12/2015 | | 5:58:00 AM | | 3:35:00 PM | | | | | | 9:05 | 234:23 |
| | | | | | LV | | | | | | |
| 1/13/2015 | | 5:59:00 AM | | 5:06:00 PM | | | | | | 10:36 | 244:59 |
| | | | | | LV | | | | | | |
| 1/14/2015 | | 6:00:00 AM | | 3:46:00 PM | | | | | | 9:16 | 254:15 |
| | | | | | LV | | | | | | |
| 1/15/2015 | | 5:59:00 AM | | 4:35:00 PM | | | | | | 10:05 | 264:20 |
| | | | | | LV | | | | | | |
| 1/16/2015 | | 6:00:00 AM | | 5:00:00 PM | | | | | | 10:30 | 274:50 |
| | | | | | LV | | | | | | |
| 1/17/2015 | | 5:03:00 AM | | 3:54:00 PM | | | | | | 10:21 | 285:11 |
| | | | US | | | | | | | | |
| | | I: Excused | | | | | | | | | |
| 1/19/2015 | | 5:47:00 AM | | 4:10:00 PM | | | | | | 9:40 | 294:51 |
| | | | | | LV | | | | | | |
| 1/20/2015 | | 5:59:00 AM | | 5:22:00 PM | | | | | | 10:52 | 305:43 |
| | | | | | LV | | | | | | |
| 1/21/2015 | | 5:59:00 AM | | 4:33:00 PM | | | | | | 10:03 | 315:46 |
| | | | | | LV | | | | | | |
| 1/22/2015 | | 6:01:00 AM | | 3:51:00 PM | | | | | | 9:20 | 325:06 |
| | | | LV | | LV | | | | | | |
| 1/23/2015 | | 5:55:00 AM | | 3:40:00 PM | | | | | | 9:10 | 334:16 |
| | | | | | LV | | | | | | |
| 1/24/2015 | | 3:47:00 AM | | 11:04:00 AM | | | | | | 6:47 | 341:03 |

MM0138

## Time Detail

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | | Data Up to Date: | | 5/3/2016 12:55:10 PM | | |
| Query: | Previously Selected Employee(s) | | | | | | Executed on: | | 5/03/2016 12:55PM GMT-04:00 | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | | Printed for: | | marshshm | | |
| | | | | | | | Insert Page Break After Each Employee: | | | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| | | | US | | | | | | | | |
| | | I: Excused | | | | | | | | | |
| 1/26/2015 | | 6:00:00 AM | | 3:39:00 PM | | | | | | 9:09 | 350:12 |
| | | | | | LV | | | | | | |
| | | I: Clock - PC Punch Failure | | | | | | | | | |
| 1/27/2015 | | 5:50:00 AM | | 4:31:00 PM | | | | | | 10:01 | 360:13 |
| | | | | | LV | | | | | | |
| 1/28/2015 | | 5:45:00 AM | | 4:40:00 PM | | | | | | 10:10 | 370:23 |
| | | | | | LV | | | | | | |
| 1/29/2015 | | 5:58:00 AM | | 4:31:00 PM | | | | | | 10:01 | 380:24 |
| | | | | | LV | | | | | | |
| 1/30/2015 | | 5:57:00 AM | | 4:01:00 PM | | | | | | 9:31 | 389:55 |
| | | | | | LV | | | | | | |
| 2/2/2015 | | 5:57:00 AM | | 3:37:00 PM | | | | | | 9:07 | 399:02 |
| | | | | | LV | | | | | | |
| 2/3/2015 | | 5:59:00 AM | | 3:37:00 PM | | | | | | 9:07 | 408:09 |
| | | | | | LV | | | | | | |
| 2/4/2015 | | 5:55:00 AM | | 3:32:00 PM | | | | | | 9:02 | 417:11 |
| | | | | | LV | | | | | | |
| 2/5/2015 | | 5:59:00 AM | | 5:00:00 PM | | | | | | 10:30 | 427:41 |
| | | | | | LV | | | | | | |
| 2/6/2015 | | 5:45:00 AM | | 4:17:00 PM | | | | | | 9:47 | 437:28 |
| | | | | | LV | | | | | | |
| 2/7/2015 | | 3:17:00 AM | | 11:30:00 AM | | | | | | 7:43 | 445:11 |
| | | | US | | | | | | | | |
| | | I: Other | | | | | | | | | |
| 2/9/2015 | | 5:55:00 AM | | 6:16:00 AM | | | | | | 0:16 | 445:27 |
| | | | | | EV, SE | | | | | | |
| | | O: Doctor | | | | | | | | | |
| 2/9/2015 12:00 AM | Illness Unpaid | | | | | | 7:44 | | | | 453:11 |
| 2/10/2015 | | 5:45:00 AM | | 3:30:00 PM | | | | | | 9:00 | 462:11 |
| | | | | | LV | | | | | | |
| 2/11/2015 | | 6:03:00 AM | | 5:03:00 PM | | | | | | 10:30 | 472:41 |
| | | | LV | | LV | | | | | | |
| | | I: Excused | | | | | | | | | |
| 2/12/2015 6:00 AM | VacHrly-Curr Yr | | | | | | 0:00 | | | | 472:41 |
| 2/12/2015 12:00 AM | Illness Unpaid | | | | | | 8:00 | | | | 480:41 |
| 2/13/2015 6:00 AM | VacHrly-Curr Yr | | | | | | 0:00 | | | | 480:41 |

MM0139

**Time Detail**

| | | |
|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | |
| Query: | Previously Selected Employee(s) | |
| Actual/Adjusted: | Show hours credited to this period only. | |

| | |
|---|---|
| Data Up to Date: | 5/3/2016 12:55:10 PM |
| Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | marshshm |
| Insert Page Break After Each Employee: | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 2/13/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 488:41 |
| 2/16/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 496:41 |
| 2/17/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 504:41 |
| 2/18/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 512:41 |
| 2/19/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 520:41 |
| 2/20/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 528:41 |
| 2/23/2015 | 12:00 AM | Illness Unpaid | | | | | 8:00 | | | | 536:41 |
| 2/24/2015 | | 6:00:00 AM | | 2:32:00 PM | | | | | | 8:00 | 544:41 |
| 2/25/2015 | | 5:59:00 AM | | 5:30:00 PM | | | | | | 11:00 | 555:41 |
| | | | | | LV | | | | | | |
| 2/26/2015 | | 6:04:00 AM | | 4:31:00 PM | | | | | | 9:57 | 565:38 |
| | | | LV | | LV | | | | | | |
| 2/27/2015 | | 5:55:00 AM | | 3:38:00 PM | | | | | | 9:08 | 574:46 |
| | | | | | LV | | | | | | |
| 3/2/2015 | | 5:57:00 AM | | 4:36:00 PM | | | | | | 10:06 | 584:52 |
| | | | | | LV | | | | | | |
| 3/3/2015 | | 6:30:00 AM | | 4:06:00 PM | | | | | | 9:06 | 593:58 |
| | | | LV | | LV | | | | | | |
| | | I: Excused | | | | | | | | | |
| 3/4/2015 | | 6:06:00 AM | | 5:36:00 PM | | | | | | 11:00 | 604:58 |
| | | | LV | | LV | | | | | | |
| 3/5/2015 | | 5:44:00 AM | | 5:00:00 PM | | | | | | 10:46 | 615:44 |
| | | | EV | | LV | | | | | | |
| 3/6/2015 | | 6:00:00 AM | | 4:02:00 PM | | | | | | 9:32 | 625:16 |
| | | | | | LV | | | | | | |
| 3/9/2015 | | 5:59:00 AM | | 4:49:00 PM | | | | | | 10:45 | 636:01 |
| 3/10/2015 | | 6:00:00 AM | | 5:32:00 PM | | | | | | 11:30 | 647:31 |
| 3/11/2015 | | 5:57:00 AM | | 5:31:00 PM | | | | | | 11:30 | 659:01 |
| 3/12/2015 | | 6:03:00 AM | | 6:07:00 PM | | | | | | 12:00 | 671:01 |
| 3/13/2015 | | 5:57:00 AM | | 4:42:00 PM | | | | | | 10:45 | 681:46 |
| 3/16/2015 | | 5:51:00 AM | | 4:50:00 PM | | | | | | 11:00 | 692:46 |
| 3/17/2015 | | 5:52:00 AM | | 5:16:00 PM | | | | | | 11:30 | 704:16 |
| 3/18/2015 | | 6:01:00 AM | | 6:00:00 PM | | | | | | 12:00 | 716:16 |
| 3/19/2015 | | 5:53:00 AM | | 5:08:00 PM | | | | | | 11:15 | 727:31 |
| 3/20/2015 | | 5:53:00 AM | | 4:43:00 PM | | | | | | 10:45 | 738:16 |
| 3/23/2015 | | 5:45:00 AM | | 5:46:00 PM | | | | | | 11:16 | 749:32 |
| | | | | | LV | | | | | | |
| 3/23/2015 | 6:00 AM | Hours Worked | | | | | 12:00 | | | | 761:02 |

## Time Detail

| Time Period: | 12/01/2014 - 1/31/2016 |
|---|---|
| Query: | Previously Selected Employee(s) |
| Actual/Adjusted: | Show hours credited to this period only. |

| Data Up to Date: | 5/3/2016 12:55:10 PM |
|---|---|
| Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | marshshm |
| Insert Page Break After Each Employee: | No |

| Date/Time | | Apply To | In Punch | In Exc | Out Punch | Out Exc | | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | | Comment | | | Xfr: Work Rule | | | | | | | |
| 3/24/2015 | 6:00 AM | Hours Worked | | | | | | | 10:00 | | | | 770:32 |
| 3/25/2015 | 6:00 AM | Hours Worked | | | | | | | 11:15 | | | | 781:17 |
| 3/26/2015 | 6:00 AM | Hours Worked | | | | | | | 11:00 | | | | 791:47 |
| 3/27/2015 | 6:00 AM | Hours Worked | | | | | | | 11:00 | | | | 802:17 |
| 3/30/2015 | | | 6:00:00 AM | | 4:30:00 PM | | | | | | | 10:00 | 812:17 |
| | | | | | | LV | | | | | | | |
| | | | O: Excused | | | | | | | | | | |
| 3/31/2015 | | | 6:00:00 AM | | 5:00:00 PM | | | | | | | 10:30 | 822:47 |
| | | | | | | LV | | | | | | | |
| | | | O: Excused | | | | | | | | | | |
| 4/1/2015 | | | 5:42:00 AM | | 4:53:00 PM | | | | | | | 10:41 | 833:28 |
| | | | | EV | | LV | | | | | | | |
| 4/2/2015 | 6:00 AM | VacHrly-Curr Yr | | | | | | | 8:00 | | | | 841:28 |
| 4/3/2015 | 6:00 AM | Holiday | | | | | | | 8:00 | | | | 849:28 |
| 4/6/2015 | | | 6:39:00 AM | | 4:13:00 PM | | | | | | | 9:04 | 858:32 |
| | | | | LV | | LV | | | | | | | |
| 4/7/2015 | | | 5:20:00 AM | | 5:20:00 PM | | | | | | | 11:30 | 870:02 |
| | | | | EV | | LV | | | | | | | |
| 4/8/2015 | | | 5:47:00 AM | | 6:15:00 PM | | | | | | | 11:45 | 881:47 |
| | | | | | | LV | | | | | | | |
| 4/9/2015 | | | 5:34:00 AM | | 7:46:00 PM | | | | | | | 13:42 | 895:29 |
| | | | | EV | | LV | | | | | | | |
| 4/10/2015 | | | 5:30:00 AM | | 5:04:00 PM | | | | | | | 11:04 | 906:33 |
| | | | | EV | | LV | | | | | | | |
| 4/11/2015 | | | 5:41:00 AM | | 4:50:00 PM | | | | | | | 10:39 | 917:12 |
| | | | | US | | | | | | | | | |
| 4/13/2015 | | | 6:05:00 AM | | 4:40:00 PM | | | | | | | 10:05 | 927:17 |
| | | | | LV | | LV | | | | | | | |
| | | | I: Train Blocking Entrance | | | | | | | | | | |
| 4/14/2015 | | | 5:59:00 AM | | 5:04:00 PM | | | | | | | 10:34 | 937:51 |
| | | | | | | LV | | | | | | | |
| 4/15/2015 | | | 5:59:00 AM | | 3:08:00 PM | | | | | | | 8:38 | 946:29 |
| | | | | | | LV | | | | | | | |
| 4/16/2015 | | | 6:00:00 AM | | 4:34:00 PM | | | | | | | 10:04 | 956:33 |
| | | | | | | LV | | | | | | | |
| 4/17/2015 | | | 5:58:00 AM | | 4:32:00 PM | | | | | | | 10:02 | 966:35 |
| | | | | | | LV | | | | | | | |
| 4/18/2015 | | | 4:49:00 AM | | 1:50:00 PM | | | | | | | 8:31 | 975:06 |

MM0141

App. 037

## Time Detail

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | | Data Up to Date: | | 5/3/2016 12:55:10 PM | | |
| Query: | Previously Selected Employee(s) | | | | | | Executed on: | | 5/03/2016 12:55PM GMT-04:00 | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | | Printed for: | | marshshm | | |
| | | | | | | | Insert Page Break After Each Employee: | | | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 4/20/2015 | | 6:00:00 AM | US | 3:37:00 PM | | | | | | 9:07 | 984:13 |
| 4/21/2015 | | 6:00:00 AM | | 4:30:00 PM | LV | | | | | 10:00 | 994:13 |
| 4/22/2015 | | 6:01:00 AM | | 6:02:00 PM | LV | | | | | 11:31 | 1005:44 |
| 4/23/2015 | | 5:54:00 AM | LV | 12:26:00 PM | LV | | | | | 6:26 | 1012:10 |
| 4/23/2015 | | 12:47:00 PM | | 5:52:00 PM | | | | | | 5:05 | 1017:15 |
| 4/24/2015 | | 6:00:00 AM | | 4:06:00 PM | LV | | | | | 9:36 | 1026:51 |
| 4/27/2015 | | 5:57:00 AM | | 4:38:00 PM | LV | | | | | 10:08 | 1036:59 |
| 4/28/2015 | | 5:58:00 AM | | 4:01:00 PM | LV | | | | | 9:31 | 1046:30 |
| 4/29/2015 | | 5:58:00 AM | | 5:31:00 PM | LV | | | | | 11:01 | 1057:31 |
| 4/30/2015 | | 6:00:00 AM | | 4:36:00 PM | LV | | | | | 10:06 | 1067:37 |
| 5/1/2015 | | 6:02:00 AM | | 1:02:00 PM | LV | | | | | 7:00 | 1074:37 |
| 5/1/2015 | | 1:29:00 PM | LV | 4:04:00 PM | | | | | | 2:35 | 1077:12 |
| 5/4/2015 | | 6:01:00 AM | | 4:46:00 PM | LV | | | | | 10:15 | 1087:27 |
| 5/5/2015 | | 6:00:00 AM | LV | 5:31:00 PM | LV | | | | | 11:01 | 1098:28 |
| 5/6/2015 | | 6:01:00 AM | | 11:37:00 AM | LV | | | | | 5:36 | 1104:04 |
| 5/6/2015 | | 11:58:00 AM | LV | 3:33:00 PM | | | | | | 3:35 | 1107:39 |
| 5/7/2015 | | 5:59:00 AM | | 5:45:00 PM | LV | | | | | 11:15 | 1118:54 |
| 5/8/2015 | | 5:26:00 AM | | 5:32:00 PM | LV | | | | | 11:36 | 1130:30 |
| 5/11/2015 | | 5:58:00 AM | EV | 4:40:00 PM | LV | | | | | 10:10 | 1140:40 |

MM0142

App. 038

**Time Detail**

| | | | | | | Data Up to Date: | | 5/3/2016 12:55:10 PM |
|---|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | Executed on: | | 5/03/2016 12:55PM GMT-04:00 |
| Query: | Previously Selected Employee(s) | | | | | Printed for: | | marshshm |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | Insert Page Break After Each Employee: | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 5/12/2015 | | 6:00:00 AM | | 3:34:00 PM | LV | | | | | 9:04 | 1149:44 |
| 5/13/2015 | | 5:58:00 AM | | 3:38:00 PM | LV | | | | | 9:08 | 1158:52 |
| 5/14/2015 | | 6:02:00 AM | | 3:37:00 PM | LV | | | | | 9:05 | 1167:57 |
| 5/15/2015 | | 5:56:00 AM | LV | 12:16:00 PM | LV | | | | | 6:16 | 1174:13 |
| 5/15/2015 | | 12:29:00 PM | | 3:42:00 PM | | | | | | 3:13 | 1177:26 |
| 5/18/2015 | | 5:49:00 AM | | 4:03:00 PM | LV | | | | | 9:33 | 1186:59 |
| 5/19/2015 | | 5:54:00 AM | | 5:31:00 PM | LV | | | | | 11:01 | 1198:00 |
| 5/20/2015 | | 6:00:00 AM | | 3:40:00 PM | LV | | | | | 9:10 | 1207:10 |
| 5/21/2015 | | 6:00:00 AM | | 3:15:00 PM | LV | | | | | 8:45 | 1215:55 |
| 5/22/2015 | | 5:55:00 AM | | 3:30:00 PM | LV | | | | | 9:00 | 1224:55 |
| 5/23/2015 | | 4:00:00 AM | US | 12:30:00 PM | LV | | | | | 8:00 | 1232:55 |
| | | I: Excused | | | | | | | | | |
| 5/25/2015   12:00 AM | Holiday | | | | | | 8:00 | | | | 1240:55 |
| 5/26/2015   12:00 AM | VacHrly-Curr Yr | | | | | | 8:00 | | | | 1248:55 |
| | | Comment | | | | | | | | | |
| 5/27/2015 | | 5:54:00 AM | | 6:23:00 PM | LV | | | | | 11:53 | 1260:48 |
| 5/28/2015 | | 5:58:00 AM | | 6:28:00 PM | LV | | | | | 11:58 | 1272:46 |
| 5/29/2015 | | 5:55:00 AM | | 6:19:00 PM | LV | | | | | 11:49 | 1284:35 |
| 6/1/2015 | | 6:00:00 AM | | 4:26:00 PM | LV | | | | | 9:56 | 1294:31 |
| 6/2/2015 | | 5:58:00 AM | | 3:48:00 PM | LV | | | | | 9:18 | 1303:49 |
| 6/3/2015 | | 6:01:00 AM | | 5:15:00 PM | | | | | | 10:44 | 1314:33 |

MM0143

# Time Detail

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | | 12/01/2014 - 1/31/2016 | | | | | | | | Data Up to Date: | 5/3/2016 12:55:10 PM |
| Query: | | Previously Selected Employee(s) | | | | | | | | Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Actual/Adjusted: | | Show hours credited to this period only. | | | | | | | | Printed for: | marshshm |
| | | | | | | | | | | Insert Page Break After Each Employee: | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | | |
| | | | LV | | LV | | | | | | | |
| 6/4/2015 | | 5:54:00 AM | | 3:32:00 PM | | | | | | | 9:02 | 1323:35 |
| | | | | | LV | | | | | | | |
| 6/5/2015 | | 6:02:00 AM | | 11:32:00 AM | | | | | | | 5:30 | 1329:05 |
| | | | LV | | | | | | | | | |
| 6/5/2015 | | 11:49:00 AM | | 3:46:00 PM | | | | | | | 3:57 | 1333:02 |
| | | | | | LV | | | | | | | |
| 6/8/2015 | | 6:00:00 AM | | 5:11:00 PM | | | | | | | 10:41 | 1343:43 |
| | | | | | LV | | | | | | | |
| | | I: Clock Not Available | | | | | | | | | | |
| | | I: Excused | | | | | | | | | | |
| 6/9/2015 | | 5:56:00 AM | | 4:08:00 PM | | | | | | | 9:38 | 1353:21 |
| | | | | | LV | | | | | | | |
| 6/10/2015 | | 6:01:00 AM | | 5:05:00 PM | | | | | | | 10:34 | 1363:55 |
| | | | LV | | LV | | | | | | | |
| | | I: Clock - PC Punch Failure | | | | | | | | | | |
| | | I: Excused | | | | | | | | | | |
| 6/11/2015 | | 5:43:00 AM | | 5:32:00 PM | | | | | | | 11:19 | 1375:14 |
| | | | EV | | LV | | | | | | | |
| 6/12/2015 | | 6:00:00 AM | | 4:43:00 PM | | | | | | | 10:13 | 1385:27 |
| | | | | | LV | | | | | | | |
| 6/13/2015 | | 5:41:00 AM | | 2:48:00 PM | | | | | | | 8:37 | 1394:04 |
| | | | US | | | | | | | | | |
| 6/15/2015 | | 5:57:00 AM | | 5:22:00 PM | | | | | | | 10:52 | 1404:56 |
| | | | | | LV | | | | | | | |
| 6/16/2015 | | 5:58:00 AM | | 4:50:00 PM | | | | | | | 10:20 | 1415:16 |
| | | | | | LV | | | | | | | |
| 6/17/2015 | | 5:53:00 AM | | 4:00:00 PM | | | | | | | 9:30 | 1424:46 |
| | | | | | LV | | | | | | | |
| | | I: Power Faliure | | | | | | | | | | |
| 6/18/2015 | | 6:00:00 AM | | 5:20:00 PM | | | | | | | 10:50 | 1435:36 |
| | | | | | LV | | | | | | | |
| 6/19/2015 | | 6:00:00 AM | | 4:09:00 PM | | | | | | | 9:39 | 1445:15 |
| | | | | | LV | | | | | | | |
| 6/20/2015 | | 4:45:00 AM | | 1:05:00 PM | | | | | | | 7:50 | 1453:05 |
| | | | US | | | | | | | | | |
| | | I: Excused | | | | | | | | | | |
| 6/22/2015 | | 5:53:00 AM | | 4:02:00 PM | | | | | | | 9:32 | 1462:37 |

MM0144

## Time Detail

| | | | | | | Data Up to Date: | 5/3/2016 12:55:10 PM |
|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Query: | Previously Selected Employee(s) | | | | | Printed for: | marshshm |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | Insert Page Break After Each Employee: | No |

| Date/Time | | Apply To | In Punch | In Exc | Out Punch | Out Exc | | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | | Comment | | | Xfr: Work Rule | | | | | | | |
| 6/23/2015 | | | 5:57:00 AM | | 3:47:00 PM | LV | | | | | | 9:17 | 1471:54 |
| 6/24/2015 | | | 6:00:00 AM | | 4:36:00 PM | LV | | | | | | 10:06 | 1482:00 |
| 6/25/2015 | | | 6:01:00 AM | | 12:09:00 PM | LV | | | | | | 6:08 | 1488:08 |
| 6/25/2015 | | | 12:30:00 PM | LV | 6:05:00 PM | | | | | | | 5:35 | 1493:43 |
| 6/26/2015 | | | 5:54:00 AM | | 4:04:00 PM | LV | | | | | | 9:34 | 1503:17 |
| 6/29/2015 | | | 5:51:00 AM | | 5:00:00 PM | LV | | | | | | 10:30 | 1513:47 |
| 6/30/2015 | | | 6:02:00 AM | | 5:36:00 PM | LV | | | | | | 11:04 | 1524:51 |
| 7/1/2015 | | | 5:48:00 AM | LV | 4:06:00 PM | LV | | | | | | 9:36 | 1534:27 |
| 7/2/2015 | 12:00 AM | VacHrly-Curr Yr | | | | LV | | | 8:00 | | | | 1542:27 |
| | | Other | | | | | | | | | | | |
| 7/3/2015 | 12:00 AM | Independence Day | | | | | | | 8:00 | | | | 1550:27 |
| 7/6/2015 | | | 6:00:00 AM | | 5:21:00 PM | | | | | | | 10:51 | 1561:18 |
| 7/7/2015 | | | 6:00:00 AM | | 5:01:00 PM | LV | | | | | | 10:31 | 1571:49 |
| 7/8/2015 | | | 5:59:00 AM | | 4:37:00 PM | LV | | | | | | 10:07 | 1581:56 |
| 7/9/2015 | | | 5:58:00 AM | | 4:37:00 PM | LV | | | | | | 10:07 | 1592:03 |
| 7/10/2015 | | | 6:00:00 AM | | 3:35:00 PM | LV | | | | | | 9:05 | 1601:08 |
| 7/13/2015 | 12:00 AM | VacHrly-Curr Yr | | | | LV | | | 8:00 | | | | 1609:08 |
| | | Other | | | | | | | | | | | |
| 7/14/2015 | | | 5:57:00 AM | | 6:20:00 PM | | | | | | | 11:50 | 1620:58 |
| 7/15/2015 | | | 5:52:00 AM | | 6:35:00 PM | LV | | | | | | 12:05 | 1633:03 |
| 7/16/2015 | | | 6:02:00 AM | | 6:02:00 PM | LV | | | | | | 11:30 | 1644:33 |

MM0145

## Time Detail

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | | 12/01/2014 - 1/31/2016 | | | | | Executed on: | | | 5/3/2016 12:55PM GMT-04:00 | |
| Query: | | Previously Selected Employee(s) | | | | | Printed for: | | | marshshm | |
| Actual/Adjusted: | | Show hours credited to this period only. | | | | | Insert Page Break After Each Employee: | | | | No |

Data Up to Date: 5/3/2016 12:55:10 PM

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| | | | LV | | LV | | | | | | |
| 7/17/2015 | | 4:21:00 AM | | 3:06:00 PM | | | | | | 10:15 | 1654:48 |
| | | | EV | | LV | | | | | | |
| 7/20/2015 | | 5:59:00 AM | | 5:30:00 PM | | | | | | 11:00 | 1665:48 |
| | | | | | LV | | | | | | |
| 7/21/2015 | | 6:00:00 AM | | 4:53:00 PM | | | | | | 10:23 | 1676:11 |
| | | | | | LV | | | | | | |
| 7/22/2015 | | 6:00:00 AM | | 4:20:00 PM | | | | | | 9:50 | 1686:01 |
| | | | | | LV | | | | | | |
| 7/23/2015 | | 6:00:00 AM | | 4:31:00 PM | | | | | | 10:01 | 1696:02 |
| | | | | | LV | | | | | | |
| 7/24/2015 | | 6:00:00 AM | | 4:01:00 PM | | | | | | 9:31 | 1705:33 |
| | | | | | LV | | | | | | |
| 7/27/2015 | | 5:58:00 AM | | 3:34:00 PM | | | | | | 9:04 | 1714:37 |
| | | | | | LV | | | | | | |
| 7/28/2015 | | 11:53:00 AM | | 6:00:00 PM | | | | | | 5:37 | 1720:14 |
| | | | US | | | | | | | | |
| | | I: Doctor | | | | | | | | | |
| 7/29/2015 | | 5:58:00 AM | | 4:32:00 PM | | | | | | 10:02 | 1730:16 |
| | | | | | LV | | | | | | |
| 7/30/2015 | | 6:00:00 AM | | 3:47:00 PM | | | | | | 9:17 | 1739:33 |
| | | | | | LV | | | | | | |
| 7/31/2015 | | 6:01:00 AM | | 3:41:00 PM | | | | | | 9:10 | 1748:43 |
| | | | LV | | LV | | | | | | |
| 8/3/2015 | | 6:00:00 AM | | 4:01:00 PM | | | | | | 9:31 | 1758:14 |
| | | | | | LV | | | | | | |
| 8/4/2015 | | 5:48:00 AM | | 3:38:00 PM | | | | | | 9:08 | 1767:22 |
| | | | | | LV | | | | | | |
| 8/5/2015 | | 6:00:00 AM | | 5:43:00 PM | | | | | | 11:13 | 1778:35 |
| | | | | | LV | | | | | | |
| 8/6/2015 | | 6:00:00 AM | | 6:21:00 PM | | | | | | 11:51 | 1790:26 |
| | | | | | LV | | | | | | |
| 8/7/2015  12:00 AM | VacHrly-Curr Yr | | | | | | 8:00 | | | | 1798:26 |
| 8/10/2015 | | 5:58:00 AM | | 6:02:00 PM | | | | | | 11:32 | 1809:58 |
| | | | | | LV | | | | | | |
| | | O: 0ther | | | | | | | | | |
| 8/11/2015 | | 6:00:00 AM | | 6:40:00 PM | | | | | | 12:10 | 1822:08 |

MM0146

| Time Detail | | | | | | | Data Up to Date: | | 5/3/2016 12:55:10 PM | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | | 12/01/2014 - 1/31/2016 | | | | | Executed on: | | 5/03/2016 12:55PM GMT-04:00 | | |
| Query: | | Previously Selected Employee(s) | | | | | Printed for: | | marshshm | | |
| Actual/Adjusted: | | Show hours credited to this period only. | | | | | Insert Page Break After Each Employee: | | | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | | |
| | | | | | LV | | | | | | | |
| 8/12/2015 | | O: Other 5:53:00 AM | | 6:40:00 PM | | | | | | | 12:10 | 1834:18 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/13/2015 | | 6:00:00 AM | | 6:21:00 PM | | | | | | | 11:51 | 1846:09 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/14/2015 | | 6:01:00 AM | | 6:05:00 PM | | | | | | | 11:34 | 1857:43 |
| | | | LV | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/15/2015 | | 5:40:00 AM | | 3:00:00 PM | | | | | | | 8:50 | 1866:33 |
| | | | US | | | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/17/2015 | | 5:54:00 AM | | 6:18:00 PM | | | | | | | 11:48 | 1878:21 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/18/2015 | | 5:55:00 AM | | 6:02:00 PM | | | | | | | 11:32 | 1889:53 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/19/2015 | | 5:57:00 AM | | 6:13:00 PM | | | | | | | 11:43 | 1901:36 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/20/2015 | | 6:00:00 AM | | 6:15:00 PM | | | | | | | 11:45 | 1913:21 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/21/2015 | | 5:59:00 AM | | 6:03:00 PM | | | | | | | 11:33 | 1924:54 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/24/2015 | | 5:48:00 AM | | 6:07:00 PM | | | | | | | 11:37 | 1936:31 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/25/2015 | | 6:00:00 AM | | 6:18:00 PM | | | | | | | 11:48 | 1948:19 |
| | | | | | LV | | | | | | | |
| | | O: Other | | | | | | | | | | |
| 8/26/2015 | | 5:54:00 AM | | 7:05:00 PM | | | | | | | 12:35 | 1960:54 |

MM0147

**Time Detail**

| Time Period: | 12/01/2014 - 1/31/2016 |
| Query: | Previously Selected Employee(s) |
| Actual/Adjusted: | Show hours credited to this period only. |

| Data Up to Date: | 5/3/2016 12:55:10 PM |
| Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | marshshm |
| Insert Page Break After Each Employee: | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| | | | | | LV | | | | | | |
| 8/27/2015 | | O: Other 5:58:00 AM | | 6:32:00 PM | | | | | | 12:02 | 1972:56 |
| | | | | | LV | | | | | | |
| 8/28/2015 | | O: Other 5:54:00 AM | | 6:15:00 PM | | | | | | 11:45 | 1984:41 |
| | | | | | LV | | | | | | |
| 8/29/2015 | | O: Other 5:47:00 AM | US | 5:20:00 PM | | | | | | 11:03 | 1995:44 |
| | | O: Other | | | | | | | | | |
| 8/31/2015 | | 5:58:00 AM | | 6:47:00 PM | | | | | | 12:17 | 2008:01 |
| | | | | | LV | | | | | | |
| 9/1/2015 | | 6:00:00 AM | | 7:01:00 PM | | | | | | 12:31 | 2020:32 |
| | | | | | LV | | | | | | |
| 9/2/2015 | | 6:00:00 AM | | 6:07:00 PM | | | | | | 11:37 | 2032:09 |
| | | | | | LV | | | | | | |
| 9/3/2015 | | 5:53:00 AM | | 5:08:00 PM | | | | | | 10:38 | 2042:47 |
| | | | | | LV | | | | | | |
| 9/4/2015 | | 6:00:00 AM | | 7:14:00 PM | | | | | | 12:44 | 2055:31 |
| | | | | | LV | | | | | | |
| 9/7/2015  12:00 AM | Labor Day | | | | | | 8:00 | | | | 2063:31 |
| 9/8/2015  12:00 AM | VacHrly-Curr Yr | | | | | | 8:00 | | | | 2071:31 |
| | | Other | | | | | | | | | |
| 9/9/2015 | | 5:52:00 AM | | 6:21:00 PM | | | | | | 11:51 | 2083:22 |
| | | | | | LV | | | | | | |
| 9/10/2015 | | 6:00:00 AM | | 6:11:00 PM | | | | | | 11:41 | 2095:03 |
| | | | | | LV | | | | | | |
| 9/11/2015 | | 6:00:00 AM | | 6:15:00 PM | | | | | | 11:45 | 2106:48 |
| | | | | | LV | | | | | | |
| 9/14/2015 | | 5:44:00 AM | EV | 7:03:00 PM | | | | | | 12:49 | 2119:37 |
| | | | | | LV | | | | | | |
| 9/15/2015 | | 5:58:00 AM | | 6:03:00 PM | | | | | | 11:33 | 2131:10 |
| | | | | | LV | | | | | | |
| 9/16/2015 | | 5:50:00 AM | | 6:03:00 PM | | | | | | 11:33 | 2142:43 |
| | | | | | LV | | | | | | |
| 9/17/2015 | | 5:57:00 AM | | 6:11:00 PM | | | | | | 11:41 | 2154:24 |

## Time Detail

| | | |
|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | |
| Query: | Previously Selected Employee(s) | |
| Actual/Adjusted: | Show hours credited to this period only. | |

| | | |
|---|---|---|
| Data Up to Date: | 5/3/2016 12:55:10 PM | |
| Executed on: | 5/03/2016 12:55PM GMT-04:00 | |
| Printed for: | marshshm | |
| Insert Page Break After Each Employee: | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 9/18/2015 | | 5:52:00 AM | | 6:06:00 PM | LV | | | | | 11:36 | 2166:00 |
| 9/21/2015 | | 5:51:00 AM | | 8:05:00 PM | LV | | | | | 14:05 | 2180:05 |
| 9/22/2015 | | 5:46:00 AM | | 7:20:00 PM | LV CMT-TX Plant Shift | | | | | 13:20 | 2193:25 |
| 9/23/2015 | | 5:56:00 AM | | 7:11:00 PM | LV CMT-TX Plant Shift | | | | | 13:11 | 2206:36 |
| 9/24/2015 | | 5:59:00 AM | | 7:18:00 PM | LV CMT-TX Plant Shift | | | | | 13:18 | 2219:54 |
| 9/25/2015 | | 6:01:00 AM | LV | 7:34:00 PM | LV CMT-TX Plant Shift | | | | | 13:33 | 2233:27 |
| 9/26/2015 | | 6:05:00 AM | US | 7:50:00 PM | LV CMT-TX Plant Shift | | | | | 13:45 | 2247:12 |
| 9/27/2015 | | 5:39:00 AM | US | 7:30:00 PM | CMT-TX Plant Shift | | | | | 13:51 | 2261:03 |
| 9/28/2015 | | 5:56:00 AM | | 8:00:00 PM | CMT-TX Plant Shift | | | | | 14:00 | 2275:03 |
| 9/29/2015 | | 5:49:00 AM | | 7:16:00 PM | CD, LV | | | | | 13:16 | 2288:19 |
| 9/30/2015 | | 5:54:00 AM | | 7:43:00 PM | CD, LV | | | | | 13:43 | 2302:02 |
| 10/1/2015 | | 5:59:00 AM | | 7:44:00 PM | CD, LV | | | | | 13:44 | 2315:46 |
| 10/2/2015 | | 5:57:00 AM | | 8:01:00 PM | CD, LV | | | | | 14:01 | 2329:47 |
| 10/3/2015 | | 6:02:00 AM | LV | 6:10:00 PM | CD, LV | | | | | 12:08 | 2341:55 |
| 10/5/2015 | | 5:57:00 AM | | 6:01:00 PM | CD, LV LV | | | | | 12:01 | 2353:56 |

MM0149

App. 045

**Time Detail**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | | Data Up to Date: | | 5/3/2016 12:55:10 PM | | |
| Query: | Previously Selected Employee(s) | | | | | | Executed on: | | 5/03/2016 12:55PM GMT-04:00 | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | | Printed for: | | marshshm | | |
| | | | | | | | Insert Page Break After Each Employee: | | | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/6/2015 | | 5:55:00 AM | | 7:21:00 PM | | | | | | 13:21 | 2367:17 |
| | | | | | LV | | | | | | |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/7/2015 | | 5:57:00 AM | | 7:00:00 PM | | | | | | 13:00 | 2380:17 |
| | | | | | LV | | | | | | |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/8/2015 | | 5:56:00 AM | | 8:30:00 PM | | | | | | 14:30 | 2394:47 |
| | | | | | LV | | | | | | |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/9/2015 | | 6:00:00 AM | | 7:30:00 PM | | | | | | 13:30 | 2408:17 |
| | | | | | LV | | | | | | |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/10/2015 | | 5:58:00 AM | US | 6:03:00 PM | | | | | | 12:05 | 2420:22 |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/11/2015 | | 4:52:00 AM | US | 5:07:00 PM | | | | | | 12:15 | 2432:37 |
| | | | | | CMT-TX Plant Shift | | | | | | |
| 10/12/2015 | | 5:57:00 AM | | 6:10:00 PM | | | | | | 11:40 | 2444:17 |
| | | | | | LV | | | | | | |
| 10/13/2015 | | 6:00:00 AM | | 6:00:00 PM | | | | | | 11:30 | 2455:47 |
| | | | | | LV | | | | | | |
| 10/14/2015 | | 5:48:00 AM | | 7:03:00 PM | | | | | | 12:33 | 2468:20 |
| | | | | | LV | | | | | | |
| 10/15/2015 | | 6:00:00 AM | | 6:04:00 PM | | | | | | 11:34 | 2479:54 |
| | | | | | LV | | | | | | |
| 10/15/2015 | | 7:15:00 PM | US | 9:15:00 PM | | | | | | 4:00 | 2483:54 |
| | | | | | Call-In | | | | | | |
| 10/16/2015 | | 6:00:00 AM | | 5:10:00 PM | | | | | | 10:40 | 2494:34 |
| | | | | | LV | | | | | | |
| 10/19/2015 | | 5:59:00 AM | | 3:41:00 PM | | | | | | 9:11 | 2503:45 |
| | | | | | LV | | | | | | |
| 10/20/2015 | | 6:00:00 AM | | 3:35:00 PM | | | | | | 9:05 | 2512:50 |
| | | | | | LV | | | | | | |
| 10/21/2015 | | 6:00:00 AM | | 3:42:00 PM | | | | | | 9:12 | 2522:02 |
| | | | | | LV | | | | | | |

App. 046

## Time Detail

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | | Data Up to Date: | | 5/3/2016 12:55:10 PM | | |
| Query: | Previously Selected Employee(s) | | | | | | Executed on: | | 5/03/2016 12:55PM GMT-04:00 | | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | | Printed for: | marshshm | | | |
| | | | | | | | Insert Page Break After Each Employee: | | | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 10/22/2015 | | 6:00:00 AM | | 4:14:00 PM | | | | | | 9:44 | 2531:46 |
| | | | | | LV | | | | | | |
| 10/23/2015 | | 5:57:00 AM | | 4:08:00 PM | | | | | | 9:38 | 2541:24 |
| | | | | | LV | | | | | | |
| 10/26/2015 | | 6:00:00 AM | | 5:36:00 PM | | | | | | 11:06 | 2552:30 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 10/27/2015 | | 6:00:00 AM | | 6:38:00 PM | | | | | | 12:08 | 2564:38 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 10/28/2015 | | 5:59:00 AM | | 6:11:00 PM | | | | | | 11:41 | 2576:19 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 10/29/2015 | | 5:53:00 AM | | 6:41:00 PM | | | | | | 12:11 | 2588:30 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 10/30/2015 | | 5:56:00 AM | | 5:18:00 PM | | | | | | 10:48 | 2599:18 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 10/31/2015 | | 4:57:00 AM | | 2:45:00 PM | | | | | | 9:18 | 2608:36 |
| | | | US | | | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/2/2015 | | 5:58:00 AM | | 6:05:00 PM | | | | | | 11:35 | 2620:11 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/3/2015 | | 5:50:00 AM | | 6:00:00 PM | | | | | | 11:30 | 2631:41 |
| | | | | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/4/2015 | | 6:01:00 AM | | 6:00:00 PM | | | | | | 11:29 | 2643:10 |
| | | | LV | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/5/2015 | | 5:43:00 AM | | 6:11:00 PM | | | | | | 11:58 | 2655:08 |
| | | | EV | | LV | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/6/2015 | | 5:58:00 AM | | 6:09:00 PM | | | | | | 11:39 | 2666:47 |
| | | | | | LV | | | | | | |

MM0151

App. 047

## Time Detail

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | | | Data Up to Date: | | | 5/3/2016 12:55:10 PM | |
| Query: | Previously Selected Employee(s) | | | | | | Executed on: | | | 5/03/2016 12:55PM GMT-04:00 | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | | | Printed for: | | marshshm | | |
| | | | | | | | Insert Page Break After Each Employee: | | | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/7/2015 | | 4:08:00 AM | | 3:00:00 PM | | | | | | 10:22 | 2677:09 |
| | | | US | | | | | | | | |
| | | O: Other | | | | | | | | | |
| 11/9/2015 | | 5:54:00 AM | | 6:13:00 PM | | | | | | 11:43 | 2688:52 |
| | | | | | LV | | | | | | |
| 11/10/2015 | | 5:56:00 AM | | 6:00:00 PM | | | | | | 11:30 | 2700:22 |
| | | | | | LV | | | | | | |
| 11/11/2015 | | 5:58:00 AM | | 6:10:00 PM | | | | | | 11:40 | 2712:02 |
| | | | | | LV | | | | | | |
| 11/12/2015 | | 5:55:00 AM | | 6:03:00 PM | | | | | | 11:33 | 2723:35 |
| | | | | | LV | | | | | | |
| 11/13/2015 | | 5:58:00 AM | | 6:05:00 PM | | | | | | 11:35 | 2735:10 |
| | | | | | LV | | | | | | |
| 11/14/2015 | | 4:30:00 AM | | 12:31:00 PM | | | | | | 7:31 | 2742:41 |
| | | | US | | | | | | | | |
| 11/16/2015 | | 5:56:00 AM | | 6:03:00 PM | | | | | | 11:33 | 2754:14 |
| | | | | | LV | | | | | | |
| 11/17/2015 | | 5:59:00 AM | | 5:50:00 PM | | | | | | 11:20 | 2765:34 |
| | | | | | LV | | | | | | |
| 11/18/2015 | | 5:22:00 AM | | 6:00:00 PM | | | | | | 12:08 | 2777:42 |
| | | | EV | | LV | | | | | | |
| 11/19/2015 | | 6:00:00 AM | | 6:00:00 PM | | | | | | 11:30 | 2789:12 |
| | | | | | LV | | | | | | |
| 11/20/2015 | | 5:53:00 AM | | 6:00:00 PM | | | | | | 11:30 | 2800:42 |
| | | | | | LV | | | | | | |
| 11/23/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 2808:42 |
| 11/24/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 2816:42 |
| 11/25/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 2824:42 |
| 11/26/2015 12:00 AM | | Thanksgiving Day | | | | | 8:00 | | | | 2832:42 |
| 11/27/2015 12:00 AM | | Thanksgiving Friday | | | | | 8:00 | | | | 2840:42 |
| 11/30/2015 | | 5:40:00 AM | | 8:30:00 PM | | | | | | 14:20 | 2855:02 |
| | | | EV | | LV | | | | | | |
| 12/1/2015 | | 6:02:00 AM | | 6:16:00 PM | | | | | | 11:44 | 2866:46 |
| | | | LV | | LV | | | | | | |
| 12/2/2015 | | 5:52:00 AM | | 6:33:00 PM | | | | | | 12:03 | 2878:49 |
| | | | | | LV | | | | | | |
| 12/3/2015 | | 5:56:00 AM | | 5:17:00 PM | | | | | | 10:47 | 2889:36 |

MM0152

App. 048

## Time Detail

| | | |
|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | |
| Query: | Previously Selected Employee(s) | |
| Actual/Adjusted: | Show hours credited to this period only. | |

| | | |
|---|---|---|
| Data Up to Date: | | 5/3/2016 12:55:10 PM |
| Executed on: | | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | | marshshm |
| Insert Page Break After Each Employee: | | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 12/4/2015 | | 5:52:00 AM | | 6:00:00 PM | LV | | | | | 11:30 | 2901:06 |
| 12/5/2015 | | 5:22:00 AM | | 6:01:00 PM | LV | | | | | 12:09 | 2913:15 |
| 12/7/2015 | | 5:58:00 AM | US | 5:08:00 PM | | | | | | 10:38 | 2923:53 |
| 12/8/2015 | | 5:55:00 AM | | 6:00:00 PM | LV | | | | | 11:30 | 2935:23 |
| 12/9/2015 | | 5:56:00 AM | | 6:45:00 PM | LV | | | | | 12:15 | 2947:38 |
| 12/10/2015 | | 5:58:00 AM | | 7:05:00 PM | LV | | | | | 12:35 | 2960:13 |
| 12/11/2015 | | 5:55:00 AM | | 5:05:00 PM | LV | | | | | 10:35 | 2970:48 |
| 12/12/2015 | | 5:55:00 AM | US | 3:00:00 PM | LV | | | | | 8:35 | 2979:23 |
| 12/14/2015 | | 6:02:00 AM | LV | 6:35:00 PM | | | | | | 12:03 | 2991:26 |
| 12/15/2015 | | 5:58:00 AM | | 6:02:00 PM | LV | | | | | 11:32 | 3002:58 |
| 12/16/2015 | | 5:59:00 AM | | 6:21:00 PM | LV | | | | | 11:51 | 3014:49 |
| 12/17/2015 | | 5:59:00 AM | | 7:42:00 PM | LV | | | | | 13:12 | 3028:01 |
| 12/18/2015 | | 5:59:00 AM | | 7:45:00 PM | LV | | | | | 13:15 | 3041:16 |
| 12/19/2015 | | 5:26:00 AM | US | 2:37:00 PM | LV | | | | | 8:41 | 3049:57 |
| 12/21/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 3057:57 |
| 12/22/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 3065:57 |
| 12/23/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 3073:57 |
| 12/24/2015 12:00 AM | | Christmas Eve | | | | | 8:00 | | | | 3081:57 |
| 12/25/2015 12:00 AM | | Christmas Day | | | | | 8:00 | | | | 3089:57 |
| 12/28/2015 | | 5:56:00 AM | | 5:42:00 PM | LV | | | | | 11:12 | 3101:09 |
| 12/29/2015 | | 5:58:00 AM | | 6:05:00 PM | LV | | | | | 11:35 | 3112:44 |

MM0153

App. 049

## Time Detail

| | | |
|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | |
| Query: | Previously Selected Employee(s) | |
| Actual/Adjusted: | Show hours credited to this period only. | |

| | |
|---|---|
| Data Up to Date: | 5/3/2016 12:55:10 PM |
| Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Printed for: | marshshm |
| Insert Page Break After Each Employee: | No |

| Date/Time | Apply To | In Punch | In Exc | Out Punch | Out Exc | Override Amount | Adj/Ent Amount | Money Amount | Day Amount | Totaled Amount | Cum. Tot. Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Xfr/Move: Account | | Comment | | | Xfr: Work Rule | | | | | | |
| 12/30/2015 | | 5:56:00 AM | | 11:00:00 AM | | | | | | 4:34 | 3117:18 |
| | | | US | | | | | | | | |
| 12/30/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 3125:18 |
| 12/31/2015 6:00 AM | | VacHrly-Curr Yr | | | | | 8:00 | | | | 3133:18 |
| 1/1/2016 12:00 AM | New Year's | | | | | | 8:00 | | | | 3141:18 |
| 1/4/2016 | | 5:59:00 AM | | 4:40:00 PM | | | | | | 10:10 | 3151:28 |
| | | | | | LV | | | | | | |
| 1/5/2016 | | 5:58:00 AM | | 6:01:00 PM | | | | | | 11:31 | 3162:59 |
| | | | | | LV | | | | | | |
| 1/6/2016 | | 6:00:00 AM | | 6:40:00 PM | | | | | | 12:10 | 3175:09 |
| | | | | | LV | | | | | | |
| 1/7/2016 | | 6:05:00 AM | | 5:30:00 PM | | | | | | 10:55 | 3186:04 |
| | | | LV | | LV | | | | | | |
| 1/8/2016 | | 6:00:00 AM | | 5:10:00 PM | | | | | | 10:40 | 3196:44 |
| | | | | | LV | | | | | | |
| 1/11/2016 | | 5:50:00 AM | | 4:41:00 PM | | | | | | 10:11 | 3206:55 |
| | | | | | LV | | | | | | |
| 1/12/2016 | | 5:45:00 AM | | 6:00:00 PM | | | | | | 11:30 | 3218:25 |
| | | | | | LV | | | | | | |
| 1/13/2016 | | 6:00:00 AM | | 6:01:00 PM | | | | | | 11:31 | 3229:56 |
| | | | | | LV | | | | | | |
| | | I: Employee forgot to punch | | | | | | | | | |
| 1/14/2016 | | 5:50:00 AM | | 5:02:00 PM | | | | | | 10:32 | 3240:28 |
| | | | | | LV | | | | | | |
| 1/15/2016 | | 6:03:00 AM | | 4:41:00 PM | | | | | | 10:08 | 3250:36 |
| | | | LV | | LV | | | | | | |
| 1/18/2016 | | 5:59:00 AM | | 4:40:00 PM | | | | | | 10:10 | 3260:46 |
| | | | | | LV | | | | | | |
| 1/19/2016 | | 5:51:00 AM | | 5:21:00 PM | | | | | | 10:51 | 3271:37 |
| | | | | | LV | | | | | | |
| 1/20/2016 | | 5:19:00 AM | | 6:10:00 PM | | | | | | 12:21 | 3283:58 |
| | | | EV | | LV | | | | | | |
| 1/21/2016 | | 5:54:00 AM | | 4:35:00 PM | | | | | | 10:05 | 3294:03 |
| | | | | | LV | | | | | | |
| 1/22/2016 | | 5:47:00 AM | | 2:30:00 PM | | | | | | 8:00 | 3302:03 |
| | | O: Termination - Final Check- Hrs. Worked, Vac, Sick | | | | | | | | | |

| Labor Account Summary | Pay Code | Hours | Money | Days |
|---|---|---|---|---|

App. 050

**Time Detail**

| | | | | |
|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | Data Up to Date: | 5/3/2016 12:55:10 PM |
| Query: | Previously Selected Employee(s) | | Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Actual/Adjusted: | Show hours credited to this period only. | | Printed for: | marshshm |
| | | | Insert Page Break After Each Employee: | No |

**00002/20-61/T26/-/363/54731/899**

| | | |
|---|---|---|
| Holiday | 40:00 | |
| Overtime-Clocks | 213:40 | |
| PBSL-Total Wages-OT Calc | | $708.00 |
| REG | 375:47 | |
| Total Hours Paid | 693:27 | |
| Total Hours Worked | 589:27 | |
| Total Non Worked Hours | 104:00 | |
| Total Wages | 693:27 | |
| Unscheduled Prem 1.5 | 0:13 | |
| Unscheduled Prem Week OT | 213:27 | |
| VacHrly-Curr Yr | 64:00 | |

**00100/20-61/T26/-/0/54732/99**

| | | |
|---|---|---|
| Overtime | 8:00 | |
| Overtime Worked | 8:00 | |
| Overtime-Clocks | 24:01 | |
| PBSL-Total Wages-OT Calc | | $206.28 |
| REG | 40:00 | |
| Total Hours Paid | 64:01 | |
| Total Hours Worked | 64:01 | |
| Total Wages | 64:01 | |
| Unscheduled Prem Week OT | 16:01 | |

**00100/20-61/T26/-/363/54731/899**

| | | |
|---|---|---|
| Call-In | 4:00 | |
| Holiday | 16:00 | |
| Overtime | 54:27 | |
| Overtime Worked | 58:27 | |
| Overtime-Clocks | 389:25 | |
| PBSL-Total Wages-OT Calc | | $1,728.85 |
| REG | 663:54 | |
| Total Hours Paid | 1105:19 | |
| Total Hours Worked | 1057:19 | |
| Total Non Worked Hours | 48:00 | |
| Total Wages | 1105:19 | |
| Unscheduled Prem 1.5 | 8:06 | |
| Unscheduled Prem Week OT | 326:52 | |
| VacHrly-Curr Yr | 32:00 | |

## Time Detail

| | | | Data Up to Date: | 5/3/2016 12:55:10 PM |
|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | Executed on: | 5/03/2016 12:55PM GMT-04:00 |
| Query: | Previously Selected Employee(s) | | Printed for: | marshshm |
| Actual/Adjusted: | Show hours credited to this period only. | | Insert Page Break After Each Employee: | No |

**00100/20-61/T26/-/363/54732/870**

| | | |
|---|---|---|
| Illness Unpaid | 71:44 | |
| Overtime-Clocks | 44:56 | |
| REG | 280:33 | |
| Total Hours Paid | 325:29 | |
| Total Hours Worked | 325:29 | |
| Total Non Worked Hours | 71:44 | |
| Total Wages | 325:29 | |
| Unscheduled Prem 1.5 | 10:18 | |
| Unscheduled Prem Week OT | 34:38 | |

**00100/20-61/T26/-/363/54732/890**

| | | |
|---|---|---|
| Holiday | 24:00 | |
| Overtime-Clocks | 61:04 | |
| PBSL-Total Wages-OT Calc | | $412.56 |
| REG | 207:59 | |
| Total Hours Paid | 341:03 | |
| Total Hours Worked | 269:03 | |
| Total Non Worked Hours | 72:00 | |
| Total Wages | 341:03 | |
| Unscheduled Prem 1.5 | 0:01 | |
| Unscheduled Prem Week OT | 61:03 | |
| VacHrly-Curr Yr | 48:00 | |

**00100/20-61/T26/-/363/54732/899**

| | | |
|---|---|---|
| Holiday | 16:00 | |
| Overtime | 0:49 | |
| Overtime Worked | 0:49 | |
| Overtime-Clocks | 181:45 | |
| PBSL-Total Wages-OT Calc | | $296.20 |
| REG | 487:15 | |
| Total Hours Paid | 701:00 | |
| Total Hours Worked | 669:00 | |
| Total Non Worked Hours | 32:00 | |
| Total Wages | 701:00 | |
| Unscheduled Prem 1.5 | 0:45 | |
| Unscheduled Prem Week OT | 180:11 | |
| VacHrly-Curr Yr | 16:00 | |

MM0156

## Time Detail

| | | | | Data Up to Date: | 5/3/2016 12:55:10 PM | |
|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | Executed on: | 5/03/2016 12:55PM GMT-04:00 | |
| Query: | Previously Selected Employee(s) | | | Printed for: | marshshm | |
| Actual/Adjusted: | Show hours credited to this period only. | | | Insert Page Break After Each Employee: | | No |

| Employee: | DAVIS, NEAL | ID: | 725641 | Time Zone: | Central | | |
|---|---|---|---|---|---|---|---|

| Combined Pay Code Summary | Pay Code | Hours | Money | Days |
|---|---|---|---|---|
| | Overtime Worked | 67:16 | | |
| | Overtime-Clocks | 914:51 | | |
| | PBSL-Total Wages-OT Calc | | $3,351.89 | |
| | Total Hours Paid | 3230:19 | | |
| | Total Hours Worked | 2974:19 | | |
| | Total Non Worked Hours | 327:44 | | |
| | Total Wages | 3230:19 | | |
| Totals: | | 10904:04 | $3,351.89 | 0.00 |

| Pay Code Summary | Pay Code | Hours | Money | Days |
|---|---|---|---|---|
| | Call-In | 4:00 | | |
| | Holiday | 96:00 | | |
| | Illness Unpaid | 71:44 | | |
| | Overtime | 63:16 | | |
| | REG | 2055:28 | | |
| | Unscheduled Prem 1.5 | 19:23 | | |
| | Unscheduled Prem Week OT | 832:12 | | |
| | VacHrly-Curr Yr | 160:00 | | |
| Totals: | | 3302:03 | $0.00 | 0.00 |

## Time Detail

| | | | | | Data Up to Date: | 5/3/2016 12:55:10 PM | |
|---|---|---|---|---|---|---|---|
| Time Period: | 12/01/2014 - 1/31/2016 | | | | Executed on: | 5/03/2016 12:55PM GMT-04:00 | |
| Query: | Previously Selected Employee(s) | | | | Printed for: | marshshm | |
| Actual/Adjusted: | Show hours credited to this period only. | | | | Insert Page Break After Each Employee: | | No |

| Combined Pay Code Summary | | Hours | Money | Days |
|---|---|---|---|---|
| | Overtime Worked | 67:16 | | |
| | Overtime-Clocks | 914:51 | | |
| | PBSL-Total Wages-OT Calc | | $3,351.89 | |
| | Total Hours Paid | 3230:19 | | |
| | Total Hours Worked | 2974:19 | | |
| | Total Non Worked Hours | 327:44 | | |
| | Total Wages | 3230:19 | | |
| Totals: | | 10904:04 | $3,351.89 | 0.00 |

| Pay Code Summary | | Hours | Money | Days |
|---|---|---|---|---|
| | Call-In | 4:00 | | |
| | Holiday | 96:00 | | |
| | Illness Unpaid | 71:44 | | |
| | Overtime | 63:16 | | |
| | REG | 2055:28 | | |
| | Unscheduled Prem 1.5 | 19:23 | | |
| | Unscheduled Prem Week OT | 832:12 | | |
| | VacHrly-Curr Yr | 160:00 | | |
| Totals: | | 3302:03 | $0.00 | 0.00 |

Total Number of Employees: 1

## Bridgette Hurst

**Subject:**        FW: Job description

**Administrative Manager**
Martin Marietta - Cement - Midlothian, TX
Commission
Apply with your Indeed Resume

We're building our future with you.

*Martin Marietta, an American-based company and a member of the S&P 500 Index, is a leading supplier of aggregates and heavy building materials, with operations spanning 32 states, Canada and the Caribbean. Dedicated teams at Martin Marietta supply the resources for the roads, sidewalks and foundations on which we live.*

*Martin Marietta's Magnesia Specialties business provides a full range of magnesium oxide, magnesium hydroxide and dolomitic lime products.*

*At Martin Marietta, we are always looking for the best and the brightest, for people who have the potential to be the Company's future leaders. We are building on our foundation of success by selecting the finest people and helping them realize their potential. When you decide to build your career at Martin Marietta, you'll know what it's like to be respected, challenged and rewarded.*

### POSITION SUMMARY

The Administrative Manager is responsible for providing on-site, first level HR and employee relations support to the plant. This position also manages assigned administrative staff and oversees custodial services. This position reports to the Plant Manager with a strong dotted line reporting relationship to the Director of Human Resources.

### ESSENTIAL FUNCTIONS

- Works closely with HR Director on employment, compensation, disciplinary and other HR related matters
- Maintains desired plant staffing by coordinating plant recruiting efforts, advertising, sourcing, selection and pre-employment processing of applicants
- Coordinates and documents good faith outreach efforts in support of Affirmative Action and EEO efforts
- Ensures that BirdDog recruiting system is fully utilized to comply with requirements for accurate applicant tracking
- Supervises and coordinates onboarding process including timely i-9 completion and all associated new hire paperwork and training
- Works with plant management and HR and Safety to assess ongoing training needs; secures and/ or develops and/or facilitates training programs to address same
- Accesses JDE HR/PAYROLL system to generate, process and key ECNs for hourly employees
- Generates ECNs for salaried employees and prepares them for keying at Corporate
- Generates various reports from the HR/Payroll system
- Maintains current HR knowledge by attending educational workshops and other training opportunities, reviewing professional publications and networking with other HR professionals

1



**MM0411**

App. 055

- Actively engages with employees to assesses morale, and assist with problems solving related to their employment or benefits escalates issues to involve HR Director as needed

- Champions of positive employee relations in all phases of the operation

- Maintains employment files in audit read condition

- Coordinates employee communications for the plant

- Coordinates and documents strategic community relations efforts; Participates and encourages other employees at all levels to participate in such activities; Coordinates efforts with Martin Marietta Communications and Governmental Affairs

- Supervises and coordinates the random drug and alcohol screening program

- Provides support for corporate and plant safety programs and initiatives

- Serves on leadership team for Annual Refresher Training and may serve in outside safety leadership roles (MSHA conference committees, Holmes, etc)

- Administers gift card program and other employee recognition programs, i.e.- service awards, safety slogans, plant incentive plans, etc.

- Administers local aspects of Educational Assistance Program

- Oversees various HR and Administrative projects tied to the Management Incentive Program

- Ensures custodial services are performed with appropriate quality; facilities should be clean and presentable at all times

- Staff support for Plant Manager and management team

- Assists with projects, analyses, reports, and communications as needed

- Leads admin team in coordination of major events including BOD visits, tours, employee picnic, Christmas party, etc.

- Kronos Administrator, assists employees with payroll issues as needed

- Notary Public

- Other duties as directed by management

**MINIMUM EDUCATION AND EXPERIENCE**

- Bachelor's degree in Business Administration strongly preferred

- 2+ years HR experience required, HR experience in an industrial setting is strongly preferred

- Supervisory experience preferred

**KNOWLEDGE, SKILLS AND ABILITIES**

- Ability to work on many different tasks and priorities simultaneously in a high stress environment with superior time management skills

- Observe and comply with all safe work practices

- Thorough knowledge of company benefits and policies

- Working knowledge of basic employment law, ADA, FMLA, i-9, and MSHA regulations

- Project a positive attitude and professional appearance

- Strong leadership and teambuilding and public speaking skills

- Focused customer service orientation

2

**MM0412**

- Strong PC skills (MS Office / Windows environment)

- Experience with PC or web based HR Info Systems; Ceridian HRIS experience preferred

- Able to communicate effectively with employees at all levels

- Able to handle position responsibility with creativity

- Knowledge of Governmental regulations and requirements. (EEO, AAP, MSHA, DOT, DOL, Workers' Compensation, State Employment Commissions, etc.)

- Positive, professional impact

- Self-starter, Team Player

- Exceptional organizational, analytical and problem solving skills with a strong attention to detail

- Occasional overnight travel, up to a week at a time

- Must be able to read, write, and speak the English language fluently

**PHYSICAL REQUIREMENTS**

While performing the duties of this job, the employee is occasionally required to move around the work area: sit; perform manual tasks; operate tools and other office equipment such as computer, computer peripherals and telephones; extend arms; kneel, stoop and bend to access files; talk and hear. The employee must occasionally lift and/or move up to 25 pounds.

**WORKING CONDITIONS**

Most time is spent in an air conditioned office environment with regular periods of work spent outdoors in the plant environment which may include all weather conditions-heat, cold, wet or dry. May be exposed to dust, sand, gravel, diesel exhaust, cement, etc.

**DISCLAIMER**

The above statements are intended to describe the general nature and level of work being performed by people assigned to this classification. They are not to be construed as an exhaustive list of all responsibilities, duties, and skills required of personnel so classified. All personnel may be required to perform duties outside of their normal responsibilities from time to time, as needed.

**Benefits:**

- Medical

- Prescription Drug

- Dental

- Vision

- Health Care Reimbursement Account

- Dependent Care Reimbursement Account

- Wellness Programs

- Employee Assistance Plan

- Paid Holidays and Vacation

- 401(k) - with Company matching

- Pension

- Salary Continuation -- Short-term Disability

3

**MM0413**

- Long-Term Disability Options
- Employee Life Insurance
- Spouse & Dependent Life Insurance
- Business Travel Accident Insurance
- Direct Deposit Payroll
- Educational/Tuition Assistance Plan
- College Scholarship Program – for dependent children
- Matching Gift Program
- New Auto Purchase Discount Plans

Martin Marietta - Cement - 17 days ago

Apply Now

Save this job

**Email this job to yourself or a friend:**

1. From my email address:
2. To email address:
3. [Send]

--
Bridgette Hurst
214-949-5376

--
Bridgette Hurst
214-949-5376

4

**MM0414**

## Texas Cement Production
## Lunch Pay

Any non-exempt employee working shift is paid through their lunch.

Any non-exempt employee that does not work shift is automatically deducted 30 minutes for lunch. If this employee works through their lunch the 30 minute lunch deduction can be canceled. If the employee leaves the plant during lunch or chooses to take a lunch longer than 30 minutes they are required to clock out when they leave and clock in when they return.

In the event of an outage (Mill, Kiln, etc.), all employees working on the outage, shift and not shift, will be paid through their lunch. The lunch deduction will be canceled by their supervisor.



Kronos Pay Rules

| Code | Description | Description 2 | Districts | Notes |
|------|-------------|---------------|-----------|-------|
| 001 | NO SHIFT DIFF | No Shift Diff (any location) | | |
| 002 | PLANT 30 | No Shift Diff - 30 minute meal - (30 min deduction) | | |
| 003 | PLANT DIFF | 3PM-10AM-Shift Diff .50 | | |
| 004 | 2PM-2AM DIFF | 2PM-2AM - Shift Diff .50 | | |
| 005 | RM DIFF | 5PM-1:30AM - Shift Diff .50 | 43 | Heritage Martin plants in SARM |
| 006 | ASPHALT DIFF | 4PM clock in - Shift Diff .50 | | |
| 007 | Davis | 4PM-5AM - Shift Diff .75 | 58 | Heritage Martin plant |
| 008 | Chico | 4PM-5AM - Shift Diff .75 | 58 | Heritage Martin plant |
| 009 | Snyder | 4PM-5AM - Shift Diff .75 | 58 | Heritage Martin plant |
| 011 | Mill Creek (BU 47107) | 1PM-6:30AM - Shift Diff .75 | 58 | Heritage Martin plant Mill Creek Granite |
| 017 | DFW Yards | 4PM-5AM - Shift Diff .75 | 58 | Miller, Dallas Rail, Celina, Rail yards in DFW |
| 024 | NT Agg - 4p-6a | Shift Diff .75 | 58 | Bridgeport, Mill Creek Limestone, Tin Top, |
| 10A | Arkansas District - Day Shift | Arkansas Dist - can use this or 001 (no shift) | | I think this was setup for the Arkansas RM plants that were acquired this year |
| PT1 | Part Time - No Holiday | Part Time - No Holiday | | |
| C21 | CMT-TX Weekly | TXI | 63, 64 | Texas Cement Terminals; no shift diff |
| C22 | CMT-TX Plant Non Shift Weekly | TXI | 61, 63, 64 | Hunter and Midlothian cement plants; 30 minute meal deduction; pays anything outside schedule at 1.5 |
| C23 | CMT-TX Plant Shift Weekly | TXI | 61, 63, 64 | Hunter and Midlothian cement plants; No deduction; pays anything outside of schedule at 1.5 |
| R01 | Ready Mix CTX Hourly | TXI | 43, 44 | Ready Mix in Central Texas; No shift diff |
| R02 | Ready Mix CTX Tankers | TXI | 43, 44 | Ready Mix Tanker drivers in Central Texas; 6pm-4am - Shift Diff .50 |
| R03 | Ready Mix Northeast Hourly | TXI | 42 | Ready Mix in Northeast Texas area and Arkansas; No shift diff |
| R12 | Ready Mix North TX Hourly | TXI | 41 | New Ready Mix DFW district pay rule. Applies to all hourly in DFW district. |
| R08 | Ready Mix Southeast Hourly | TXI | 44 | Ready Mix in SE Texas; no shift diff |
| R09 | RM-ETXLA | TXI | 42 | Ready Mix in ETX and LA; no shift diff |
| 015 | Hatton-Broken Bow 2nd Shift | 6PM clock in - Shift Diff .25 | | |
| 020 | Broken Bow 2nd Shift | Shift Diff .35 | | |
| 019 | Jones Mill | Shift Diff .25 | | |

**MARTIN MARIETTA MATERIALS**
**Supervisor's Report of Incidence**

Employee Name: **Neal Davis**                    Employee Number: XXXXXX

Location: Midlothian 54731                    Date: January 21, 2016

**Description of violation or incident (include date and time):** It has come to our attention that in the past 12 months, you have been tardy 24 times. According to our attendance policy this is unacceptable.

**Previous attempts to correct:** You were previously given a written warning on for being tardy 29 times in 12 months.

**What happens if not corrected:** Neal, your tardies has become a habitual pattern and given the fact that you have already been warned, the decision has been made to terminate your employment with Martin Marietta.

Check applicable step:

☐ **Oral Warning** (I have counseled the employee on the violation and corrective measures that can be taken)

☐ **Written Warning** (Copy of this report has been given to the employee)

☐ **Suspension** (Copy of this report has been given to the employee)

☒ **Termination**

     **Flagrant or continued violations after any of the above steps may result in further disciplinary action up to and including termination.**

Eric M. Wilson

Supervisor's Signature                    Employee's Signature
                                          (Indicate employee's refusal to sign)

Plant Manager / Department Head Signature

*(Original: Employee File; Copy: Employee; Copy: Human Resources)*



**MM0032**

 **Martin Marietta**      **Texas Cement**
**Attendance Standards**

Good attendance is an obligation that the employee promises to meet when he / she accepts employment with Martin Marietta, and it is an obligation that continues throughout his / her career.

## Definition of Absence

Any failure to report to work for an entire shift, whether reported or not reported, is an absence unless the employee:

- is serving on Jury Duty;
- is on a prearranged Vacation;
- is on FMLA Qualifying Leave (medical certification will be required);
- is on Non-FMLA Medical Leave (medical documentation will be required);
- is on Military Leave;
- is on Approved Funeral leave (paid or unpaid);
- is away from work due to a work related injury; or,
- has been excused by his / her immediate supervisor as a result of hours worked in the previous 24 hours.

## Definition of Tardiness

Any failure to report to work at the assigned time, any departure from work during the assigned work hours, or any departure from work at the end of the day, prior to the assigned time is considered to be tardiness.

Note: For purposes of the following sections, two "tardies" will be treated as one "absence."

## Reporting Off Work (Call In Requirement for Absence / Tardiness)

1. An employee who is going to miss work, for any reason, must personally notify the Company by contacting his / her supervisor, the supervisor's relief, or designee as appropriate.
2. The employee is expected to make this notification by personal telephone conversation with the supervisor or designee (not by voicemail, email, text or a 3rd party).
3. This notification must reach the Company prior to the start of the employee's scheduled shift, or the absence will be treated as a "no call" absence.
4. If an employee misses 3 consecutive workdays without notifying the Company, he / she shall be considered to have voluntarily resigned without notice. The effective date of the termination will be the last day the employee reported to work.

**The guidelines described below should be followed in dealing with attendance problems. This is merely a guideline. Recurrent/chronic attendance problems may result in an accelerated disciplinary process. (Note: The example assumes the employee has not received any disciplinary action unrelated to attendance. If an employee has current disciplinary actions on file for any reason, then attendance policy violations would result in disciplinary action at the next appropriate step. )**

Effective 1/1/2015                                                                                    Page 1 of 2

 **Martin** **Texas Cement**
Marietta **Attendance Standards**

### Unreported Absences

Unreported or "no call" absences will result in disciplinary action as follows:

| Number of Unreported Absences | During the First 3 Months Of Employment | During any 12-Month Period After the First 3 Months of Employment |
|---|---|---|
| 1 | Written Warning | Written Warning |
| 2 | Employment Terminated for failure to meet attendance standards | Disciplinary Suspension |
| 3 | | Employment Terminated for failure to meet attendance standards |

### Reported Absences

Any unplanned absence by an employee hampers the efficiency of his / her work unit. Calling in to report that he / she will be absent does not constitute an "excused absence" and does not relieve the employee's obligation to maintain a good attendance record.

An absence due to a non-work-related injury or illness hampers the operation to the same degree as any other absence. Since these absences are considered involuntary and may last for several days, they are treated in the following manner in terms of meeting attendance standards.

- An absence of two or more consecutive scheduled workdays due to non-job related injury or illness is considered as a single absence.
- An employee absent for 3 or more consecutive workdays must provide his/her supervisor with an acceptable doctor's release before he / she is allowed to return to work.

| Number of Reported Absences | During the First 3 Months Of Employment | During any 12-Month Period After the First 3 Months of Employment |
|---|---|---|
| 1 | Oral Warning | None |
| 2 | Written Warning | None |
| 3 | Employment Terminated for failure to meet attendance standards | Oral Warning |
| 4 | n/a | Written Warning |
| 5 | n/a | Disciplinary Suspension |
| 6 | n/a | Employment Terminated for failure to meet attendance standards |

◆◆◆◆◆◆◆◆

**MM0034**

# Exceptions

| | | |
|---|---|---|
| Time Period: | 1/01/2015 - 1/22/2016 | |
| Query: | Previously Selected Employee(s) | |
| Exceptions: | (1): [Late In] | |
| Absences: | Both | |

| | |
|---|---|
| Data Up to Date: | 2/8/2016 4:23:44 PM |
| Executed on: | 2/08/2016 4:23PM GMT-06:00 |
| Printed for: | hurstbrr |

| Exception Day/Date | Exception | Scheduled | Actual or Pay Code | Amount | Amount Over Exception |
|---|---|---|---|---|---|
| Comment | | | | | |

**DAVIS, NEAL**     ID:    725641

| Exception Day/Date | Exception | Scheduled | Actual or Pay Code | Amount | Amount Over Exception |
|---|---|---|---|---|---|
| Thu 1/22/2015 | Late In | 1/22/2015 6:00:00 AM | 1/22/2015 6:01:00 AM | 0:01 | |
| Wed 2/11/2015 | Late In | 2/11/2015 6:00:00 AM | 2/11/2015 6:03:00 AM | 0:03 | 0:02 |
|   Excused | | | | | |
| Mon 2/16/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Tue 2/17/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Wed 2/18/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Thu 2/19/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Fri 2/20/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Mon 2/23/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Thu 2/26/2015 | Late In | 2/26/2015 6:00:00 AM | 2/26/2015 6:04:00 AM | 0:04 | 0:03 |
| Tue 3/3/2015 | Late In | 3/3/2015 6:00:00 AM | 3/3/2015 6:30:00 AM | 0:30 | 0:29 |
|   Excused | | | | | |
| Wed 3/4/2015 | Late In | 3/4/2015 6:00:00 AM | 3/4/2015 6:06:00 AM | 0:06 | 0:05 |
| Mon 4/6/2015 | Late In | 4/6/2015 6:00:00 AM | 4/6/2015 6:39:00 AM | 0:39 | 0:38 |
| Mon 4/13/2015 | Late In | 4/13/2015 6:00:00 AM | 4/13/2015 6:05:00 AM | 0:05 | 0:04 |
|   Train Blocking Entrance | | | | | |
| Wed 4/22/2015 | Late In | 4/22/2015 6:00:00 AM | 4/22/2015 6:01:00 AM | 0:01 | |
| Fri 5/1/2015 | Late In | 5/1/2015 6:00:00 AM | 5/1/2015 6:02:00 AM | 0:02 | 0:01 |
| Mon 5/4/2015 | Late In | 5/4/2015 6:00:00 AM | 5/4/2015 6:01:00 AM | 0:01 | |
| Wed 5/6/2015 | Late In | 5/6/2015 6:00:00 AM | 5/6/2015 6:01:00 AM | 0:01 | |
| Thu 5/14/2015 | Late In | 5/14/2015 6:00:00 AM | 5/14/2015 6:02:00 AM | 0:02 | 0:01 |
| Mon 5/25/2015 | Excused Absence | | Holiday | 8:00 | |
| Tue 5/26/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
|   Comment | | | | | |
| Wed 6/3/2015 | Late In | 6/3/2015 6:00:00 AM | 6/3/2015 6:01:00 AM | 0:01 | |
| Fri 6/5/2015 | Late In | 6/5/2015 6:00:00 AM | 6/5/2015 6:02:00 AM | 0:02 | 0:01 |
| Wed 6/10/2015 | Late In | 6/10/2015 6:00:00 AM | 6/10/2015 6:01:00 AM | 0:01 | |
|   Clock - PC Punch Failure | | | | | |
|   Excused | | | | | |
| Thu 6/25/2015 | Late In | 6/25/2015 6:00:00 AM | 6/25/2015 6:01:00 AM | 0:01 | |

**MM0035**

# Exceptions

| | | | Data Up to Date: | 2/8/2016 4:23:44 PM |
| Time Period: | 1/01/2015 - 1/22/2016 | | Executed on: | 2/08/2016 4:23PM GMT-06:00 |
| Query: | Previously Selected Employee(s) | | Printed for: | hurstbrr |
| Exceptions: | (1): |Late In| | | |
| Absences: | Both | | | |

| Exception Day/Date | Exception | Scheduled | Actual or Pay Code | Amount | Amount Over Exception |
|---|---|---|---|---|---|
| Comment | | | | | |

**DAVIS, NEAL**  ID: 725641

| Exception Day/Date | Exception | Scheduled | Actual or Pay Code | Amount | Amount Over Exception |
|---|---|---|---|---|---|
| Tue 6/30/2015 | Late In | 6/30/2015 6:00:00 AM | 6/30/2015 6:02:00 AM | 0:02 | 0:01 |
| Thu 7/2/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| _Other_ | | | | | |
| Fri 7/3/2015 | Excused Absence | | Independence Day | 8:00 | |
| Mon 7/13/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| _Other_ | | | | | |
| Thu 7/16/2015 | Late In | 7/16/2015 6:00:00 AM | 7/16/2015 6:02:00 AM | 0:02 | 0:01 |
| Fri 7/31/2015 | Late In | 7/31/2015 6:00:00 AM | 7/31/2015 6:01:00 AM | 0:01 | |
| Fri 8/7/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| Fri 8/14/2015 | Late In | 8/14/2015 6:00:00 AM | 8/14/2015 6:01:00 AM | 0:01 | |
| Mon 9/7/2015 | Excused Absence | | Labor Day | 8:00 | |
| Tue 9/8/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| _Other_ | | | | | |
| Fri 9/25/2015 | Late In | 9/25/2015 6:00:00 AM | 9/25/2015 6:01:00 AM | 0:01 | |
| Sat 10/3/2015 | Late In | 10/3/2015 6:00:00 AM | 10/3/2015 6:02:00 AM | 0:02 | 0:01 |
| Wed 11/4/2015 | Late In | 11/4/2015 6:00:00 AM | 11/4/2015 6:01:00 AM | 0:01 | |
| Thu 11/26/2015 | Excused Absence | | Thanksgiving Day | 8:00 | |
| Fri 11/27/2015 | Excused Absence | | Thanksgiving Friday | 8:00 | |
| Tue 12/1/2015 | Late In | 12/1/2015 6:00:00 AM | 12/1/2015 6:02:00 AM | 0:02 | 0:01 |
| Mon 12/14/2015 | Late In | 12/14/2015 6:00:00 AM | 12/14/2015 6:02:00 AM | 0:02 | 0:01 |
| Thu 12/24/2015 | Excused Absence | | Christmas Eve | 8:00 | |
| Fri 12/25/2015 | Excused Absence | | Christmas Day | 8:00 | |
| Fri 1/1/2016 | Excused Absence | | New Year's | 8:00 | |
| Thu 1/7/2016 | Late In | 1/7/2016 6:00:00 AM | 1/7/2016 6:05:00 AM | 0:05 | 0:04 |
| Fri 1/15/2016 | Late In | 1/15/2016 6:00:00 AM | 1/15/2016 6:03:00 AM | 0:03 | 0:02 |

| Exception | Total | Total Amount Over Exception | |
|---|---|---|---|
| Excused Absence: | 13 | N/A | |
| Late In: | 27 | 1:35 | |
| Unexcused Absence: | 6 | N/A | |

**MM0036**

## Exceptions

| | | | |
|---|---|---|---|
| | | Data Up to Date: | 2/8/2016 4:23:44 PM |
| | | Executed on: | 2/08/2016 4:23PM GMT-06:00 |
| Time Period: | 1/01/2015 - 1/22/2016 | Printed for: | hurstbrr |
| Query: | Previously Selected Employee(s) | | |
| Exceptions: | (1): |Late In| | | |
| Absences: | Both | | |

Total Number of Exceptions: 46

MM0037



1341 West Mockingbird Lane · Dallas, Texas 75247 · 972.647.6700
*txi.com*

June 11th, 2013

Neal David'S
245 Ward Rd.
Midlothian ,TX 76065

Neal:

This letter constitutes a written warning in accordance with TXI's Human Resources Policy
Number 11 (P-11) due to the severity of the alleged action discussed below.

It has been reported to Human Resources, as well as discussed with you verbally on June the 3rd,
2013 regarding your excessive tardiness. The attached repot shows a record that in the last five
months there have been twenty nine tardiness against your work schedule, which is totally
unacceptable. It is imperative for the operation of this company and to the responsibilities of
your job that you work the required hours and that you are a reliable employee. When excessive
tardiness occurs, it puts undue stress on the plant operations. Our commitment is to provide daily
service and support to operations by starting at 6:00 am. You are the employee responsible to
initiate these operations in the Warehouse.

By signing this document, I understand the ramifications of the written warning. If there isn't
immediate and sustained change in my attendance, this will result in further disciplinary action
leading up to and including termination.

_____
Eric Wilson

6-11-13
Date

_____
Neal Davis

6-11-13
Date

We will provide EXCEPTIONAL building materials,
SERVICE and solutions so that customers CHOOSE TXI.

MM0038

App. 067

 **Texas Cement**
**Attendance Standards**

Good attendance is an obligation that the employee promises to meet when he / she accepts employment with Martin Marietta, and it is an obligation that continues throughout his / her career.

### Definition of Absence
Any failure to report to work for an entire shift, whether reported or not reported, is an absence unless the employee:
- is serving on Jury Duty;
- is on a prearranged Vacation;
- is on FMLA Qualifying Leave (medical certification will be required);
- is on Non-FMLA Medical Leave (medical documentation will be required);
- is on Military Leave;
- is on Approved Funeral leave (paid or unpaid);
- is away from work due to a work related injury; or,
- has been excused by his / her immediate supervisor as a result of hours worked in the previous 24 hours.

### Definition of Tardiness
Any failure to report to work at the assigned time, any departure from work during the assigned work hours, or any departure from work at the end of the day, prior to the assigned time is considered to be tardiness.

Note:  For purposes of the following sections, two "tardies" will be treated as one "absence."

### Reporting Off Work (Call In Requirement for Absence / Tardiness)
1. An employee who is going to miss work, for any reason, must personally notify the Company by contacting his / her supervisor, the supervisor's relief, or designee as appropriate.
2. The employee is expected to make this notification by personal telephone conversation with the supervisor or designee (not by voicemail, email, text or a 3rd party).
3. This notification must reach the Company prior to the start of the employee's scheduled shift, or the absence will be treated as a "no call" absence.
4. If an employee misses 3 consecutive workdays without notifying the Company, he / she shall be considered to have voluntarily resigned without notice. The effective date of the termination will be the last day the employee reported to work.

**The guidelines described below should be followed in dealing with attendance problems. This is merely a guideline. Recurrent/chronic attendance problems may result in an accelerated disciplinary process. (Note: The example assumes the employee has not received any disciplinary action unrelated to attendance. If an employee has current disciplinary actions on file for any reason, then attendance policy violations would result in disciplinary action at the next appropriate step. )**

Effective 1/1/2015



Page 1 of 2

**MM0033**

 **Martin Marietta**   **Texas Cement**
**Attendance Standards**

### Unreported Absences

Unreported or "no call" absences will result in disciplinary action as follows:

| Number of Unreported Absences | During the First 3 Months Of Employment | During any 12-Month Period After the First 3 Months of Employment |
|---|---|---|
| 1 | Written Warning | Written Warning |
| 2 | Employment Terminated for failure to meet attendance standards | Disciplinary Suspension |
| 3 | | Employment Terminated for failure to meet attendance standards |

### Reported Absences

Any unplanned absence by an employee hampers the efficiency of his / her work unit. Calling in to report that he / she will be absent does not constitute an "excused absence" and does not relieve the employee's obligation to maintain a good attendance record.

An absence due to a non-work-related injury or illness hampers the operation to the same degree as any other absence. Since these absences are considered involuntary and may last for several days, they are treated in the following manner in terms of meeting attendance standards.

- An absence of two or more consecutive scheduled workdays due to non-job related injury or illness is considered as a single absence.
- An employee absent for 3 or more consecutive workdays must provide his/her supervisor with an acceptable doctor's release before he / she is allowed to return to work.

| Number of Reported Absences | During the First 3 Months Of Employment | During any 12-Month Period After the First 3 Months of Employment |
|---|---|---|
| 1 | Oral Warning | None |
| 2 | Written Warning | None |
| 3 | Employment Terminated for failure to meet attendance standards | Oral Warning |
| 4 | n/a | Written Warning |
| 5 | n/a | Disciplinary Suspension |
| 6 | n/a | Employment Terminated for failure to meet attendance standards |



**MM0034**



1341 West Mockingbird Lane • Dallas, Texas 75247 • 972.647.6700

*txi.com*

November 19, 2013

Neal David
245 Ward Rd.
Midlothian ,TX 76065

Neal:

Due to the severity of the alleged actions discussed below, this letter constitutes a final written warning in accordance with TXI's Human Resources Policy Number 11 (P-11).

The purpose of this letter is to communicate the disciplinary action as a consequence for the continuation of certain behavior patterns negatively impacting your work consistency. The following details the subject to this disciplinary action:

*(handwritten: DID not happen)*  *(handwritten: Sam)*  *(handwritten: Verbal)*

As it was addressed verbally on June the 3rd of 2013, and on a written warning on June 11th of 2013 we continue to observe the same behavior pattern for excessive tardiness.
The attached repot shows a record that recently there has been multiple tardiness against your work schedule, which is totally unacceptable since this behavior has been addressed with you already on June 11th, 2013. It is imperative for the operation of this company and to the responsibilities of your job that you work the required hours and that you are a reliable employee. When excessive tardiness occurs, it puts undue stress on the plant operations. Our commitment is to provide daily service and support to operations by starting at 6:00 am. You are the employee responsible to initiate these operations in the Warehouse.

*(handwritten: DID not Happen Hunting)*

Additional you cannot request another warehouse employee to change their schedule to accommodate your personal needs as you did on 11/19/2013. The Warehouse supervisor is the only authorized to change employees schedule and/or approve over time.

It was also observed on 11/19/2013 that you left for lunch at 11:57:20 and did not came back from lunch until after 12:39:47 which exceeds the 30 minutes allowance that hourly employees are to take for lunch without clocking in and out.

*(handwritten: WHAT is this?)*

All these behavior of absenteeism from the plant in the morning or around lunch time create disruption from the Warehouse operations to support the Plant.

By signing this document, I understand the ramifications of the final written warning. If there isn't immediate and sustained change in my performance it may result in further disciplinary action up to and including termination of your employment.

*(handwritten, left: Peri-Lucy Toloter) This will be counted/ rof/ This verbal will No AB off 6/11/2014 to ssp. Need)*

*(handwritten, center: I, Neal Davis Only Received one write up for the 2016. year of 2006- This is 17 Anything Else is in my would record forged. consider 1/22/16)*

We will provide EXCEPTIONAL building materials,
SERVICE and solutions so that customers CHOOSE TXI.

**App. 070**

EXHIBIT 8/7/20
27
Davis

Davis 000027



1341 West Mockingbird Lane · Dallas, Texas 75247 · 972.647.6700
*txi.com*

Eric Wilson                                                    Date

_____                    _____
Neal Davis                                                    Date

We will provide EXCEPTIONAL building materials,
SERVICE and solutions so that customers CHOOSE TXI.

App. 071

Davis 000028

## Davis, Neal

**To:** Raab, Jill
**Subject:** Attendance Standards/Four Step Guidelines

I strongly believe good attendance is an obligation that the employee promises to meet when he/she accepts Employment with TXI, and it is an obligation that continues throughout his/her career.

On June 3, 2013 I Neal Davis was given a Verbal Reminder by Lucy Tovar and Eric Wilson on my past Attendance Standards. After that time No Attendance problems occurred. On June 11, 2013 I was given A Written Reminder for the same incident. Stating that I should have been up to this point for the past incident. When Question the written warning I was told not to worry about it, At that time I did not think it was the right decision and still do not think it is today. Missing steps and unauthorized documents accrued doing that day on June 11,2013. I truly believe the first written Warning should not count because it went with the verbal warning. The Incident that occurred on November 19, 2013 I do not agree with the written notice because my supervisor Was informed and Approve the change. Furthermore, I did not call another employee to change his work schedule or approve his over time.

I believe the four steps guidelines was not follow correctly and should be evaluated. Please contact me reference this incident.

Thanks,

Neal Davis



1

Davis 000029

MARTIN MARIETTA MATERIA.
**Supervisor's Report of Incidence**

Employee Name:  **Carl Weatherford**          Employee Number: **790983**

Location: Midlothian 54731                    Date: December 15, 2015

**Description of violation or incident (include date and time):** Attendance: You were 2.5 hours late for shift on 11/30/15 and 1 hour late on 12/7/15. You were also late for work on 9/25/15 and 9/26/15. Prior notice before shift start time was not given for any of the tardies.

**Previous attempts to correct:** Carl, We have had a few discussions about your tardiness and the importance to you being here on time, every day you are scheduled to work. On 9/26/15, you received an oral warning for tardies on 9/25 and 9/26 while you were still within your 90 day probationary period. Due to the fact that you did not call in before the start of your shift, the disciplinary action should have been a written warning. Your two additional "no call" absences could have resulted in the termination of your employment according to the attendance standard.

**What is required to correct:** Carl, you must meet the requirements of the Texas Cement Attendance Standard or face further disciplinary action. Your repeated failure to report tardies before the start of your shift is unacceptable. Rather than terminate your employment at this time,  the decision has been made to suspend you without pay for 3 days because of the 4 unreported tardies. This will be your last chance to correct your attendance problem.

**What happens if not corrected:** Continued tardiness, absenteeism or other performance problems will lead to further disciplinary action up to and including the termination of your employment.  If you will be tardy or miss work, you must call in to your supervisor to report your absence prior to the start of your scheduled shift. (See attached copy of the Texas Cement Attendance Standard)

Check applicable step:

☐ **Oral Warning** (I have counseled the employee on the violation and corrective measures that can be taken)

☐ **Written Warning** (Copy of this report has been given to the employee)

☒ **Suspension** (Copy of this report has been given to the employee)

☐ **Termination**

**Flagrant or continued violations after any of the above steps may result in further disciplinary action up to and including termination.**

_____  12-16-15    _____
Supervisor's Signature                       Employee's Signature

                                             (Indicate employee's refusal to sign)

_____  12/16/15
Plant Manager / Department Head Signature

*(Original:  Employee File;  Copy:  Employee;  Copy:  Human Resources)*



EXHIBIT B 17120
3D
Davis

## MARTIN MARIETTA MATERIALS
### Supervisor's Report of Incidence

Employee Name: Carl Weatherford                      Employee Number: 790983

Location: Midlothian Cement                           Date: 6/30/2016

Description of violation or incident (include date and time): Noncompliance of attendance standards: On 2/22/16 you were 8 minutes late and didn't call prior to your shift. You were 3.5 hours late on 6/22/16, you didn't show for a verbally agreed assignment on 6/26/16 and 5 min late on 6/2716. Prior notice wasn't given on 6/22/16 or 6/26/16 as per the Attendance guidelines, that is considered a "no call" and a "no call / no show" respectively

Previous attempts to correct: Carl multiple people have taken a genuine interest in your attendance here at Martin Marietta, and have had discussions with you several times. The importance of being on time can't be stressed enough, if you aren't at your appointed place at your appointed time others are left to deal with the immediate consequences of your inaction.
On 9/26/15, you received and oral warning for tardies on 9/25 ans 9/26 while you were still in your probationary period. Due to the fact that you did not call in before the start of your shift, the disciplinary action should have been a written warning. Your two additional "no call" absences could have resulted in the termination of your employment according to the attendance standard. You were 2.5 hours late for shift on 11/30/15 and 1` hour late on 12/7/15.

What happens if not corrected: Carl, your attendance is a pattern of behavior that runs counter to the Texas Cement Attendance Standard, and the culture of conduct required of a proficient apprentice maintenance technician. Due to your attendance history and the different times that the attendance standard has been made available to you, the decision has been made to terminate your employment.

Check applicable step:

☐ **Oral Warning** (I have counseled the employee on the violation and corrective measures that can be taken)

☐ **Written Warning** (Copy of this report has been given to the employee)

☐ **Suspension** (Copy of this report has been given to the employee)

☒ **Termination**

> **Flagrant or continued violations after any of the above steps may result in further disciplinary action up to and including termination.**

_____          _____

Supervisor's Signature                               Employee's Signature
                                                     (Indicate employee's refusal to sign)

_____

Plant Manager / Department Head Signature

*(Original: Employee File; Copy: Employee; Copy: Human Resources)*

## DECLARATION OF BRIDGETTE HURST

My name is Bridgette Hurst, and I am making the following Declaration under penalty of perjury:

1. I am competent to make this Declaration.  I have personal knowledge of the facts stated here, which are true and correct.

2. I am currently the Senior Human Resources Generalist for Martin Marietta's cement plant located in Midlothian, Texas.  I was the Human Resources Administrator at the Midlothian Plant from approximately 2013 through October 2014, when I voluntarily left Martin Marietta.  At the time of my departure, I was receiving positive performance reviews, and I was successfully performing all of the duties related with the HR position at the Midlothian plant.

3. In or about June 2015, I reapplied for an open Human Resources position at the Midlothian plant.  The job title was different—Administrative Manager—and it now also encompassed HR for the plant's salaried employees.  But my Human Resources job duties were substantially similar to those that I had successfully performed during the prior year.  Plus, plant management was largely the same, and so they were well aware of my experience and skill set.  I was selected for the position, and I remain the primary Human Resources representative located at the Midlothian plant.

4. Based on my HR position, I am aware of the circumstances regarding the decision to hire LeAnn Kirkpatrick as the Maintenance Planner for the Midlothian plant.  Ms. Kirkpatrick was the Maintenance Administrator at the Midlothian Plant from April 2014 to January 2016.  During 2015 through the beginning of 2016, Ms. Kirkpatrick performed the job duties of the Maintenance Planner because the employee who held that position was on

1

extended medical leave. She received solid reviews for this extra work. In light of her proven ability to do the job, she was promoted to Planner when the employee on medical leave ended his employment with Martin Marietta.

5. Jason Crowther was the Assistant Plant Manager for the Midlothian plant, and he would have been the supervisor of Neal Davis's supervisor (Eric Wilson). Mr. Crowther encouraged Human Resources (as well as supervisors) to review attendance records to ensure compliance with the plant's attendance policy.

6. As part of my regular job duties, I reviewed Neal Davis's attendance records in or about January 2016. When conducting the investigation, whenever Mr. Davis's time records showed he clocked in after his 6:00 a.m. start time that was counted as one tardy unless the time records showed an excuse. Based on my investigation, Mr. Davis had been tardy 24 times within the past 12 months.

7. Attached as **Exhibit A** is a true and correct copy of my investigation documents including the termination document and my highlighted review of the attendance policy and Mr. Davis's time records. The termination decision was also reviewed by plant management.

8. It's my understanding that Plaintiff's supervisor had never terminated an employee. And so, during the termination meeting with Mr. Davis, I played a role in notifying Mr. Davis about the termination decision.

9. Carl Weatherford was a Midlothian Plant employee. He was suspended on or about December 15, 2015 based on four tardies contrary to the attendance policy. After additional attendance issues, Mr. Weatherford was terminated pursuant to the attendance policy. A true and correct copy of Mr. Weatherford's disciplinary/termination documents are attached as **Exhibit B**.

2

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 24 day of September , 2020.

Bridgette Hurst, Declarant

3

**MARTIN MARIETTA MATERIALS**
**Supervisor's Report of Incidence**

Employee Name: **Neal Davis**                    Employee Number: XXXXXX

Location: Midlothian 54731                         Date: January 21, 2016

**Description of violation or incident (include date and time):** It has come to our attention that in the past 12 months, you have been tardy 24 times. According to our attendance policy this is unacceptable.

**Previous attempts to correct:** You were previously given a written warning on for being tardy 29 times in 12 months.

**What happens if not corrected:** Neal, your tardies has become a habitual pattern and given the fact that you have already been warned, the decision has been made to terminate your employment with Martin Marietta.

Check applicable step:

☐ **Oral Warning** (I have counseled the employee on the violation and corrective measures that can be taken)

☐ **Written Warning** (Copy of this report has been given to the employee)

☐ **Suspension** (Copy of this report has been given to the employee)

☒ **Termination**

> **Flagrant or continued violations after any of the above steps may result in further disciplinary action up to and including termination.**

*Eric M. Wilson*

Supervisor's Signature

Employee's Signature
(Indicate employee's refusal to sign)

Plant Manager / Department Head Signature

*(Original: Employee File; Copy: Employee; Copy: Human Resources)*

**HURST DECLARATION - EX. A**



**MM0032**

 **Martin Marietta**          **Texas Cement**
                        **Attendance Standards**

Good attendance is an obligation that the employee promises to meet when he / she accepts employment with Martin Marietta, and it is an obligation that continues throughout his / her career.

### Definition of Absence

Any failure to report to work for an entire shift, whether reported or not reported, is an absence unless the employee:

- is serving on Jury Duty;
- is on a prearranged Vacation;
- is on FMLA Qualifying Leave (medical certification will be required);
- is on Non-FMLA Medical Leave (medical documentation will be required);
- is on Military Leave;
- is on Approved Funeral leave (paid or unpaid);
- is away from work due to a work related injury; or,
- has been excused by his / her immediate supervisor as a result of hours worked in the previous 24 hours.

### Definition of Tardiness

Any failure to report to work at the assigned time, any departure from work during the assigned work hours, or any departure from work at the end of the day, prior to the assigned time is considered to be tardiness.

Note: For purposes of the following sections, two "tardies" will be treated as one "absence."

### Reporting Off Work (Call In Requirement for Absence / Tardiness)

1. An employee who is going to miss work, for any reason, must personally notify the Company by contacting his / her supervisor, the supervisor's relief, or designee as appropriate.
2. The employee is expected to make this notification by personal telephone conversation with the supervisor or designee (not by voicemail, email, text or a 3rd party).
3. This notification must reach the Company prior to the start of the employee's scheduled shift, or the absence will be treated as a "no call" absence.
4. If an employee misses 3 consecutive workdays without notifying the Company, he / she shall be considered to have voluntarily resigned without notice. The effective date of the termination will be the last day the employee reported to work.

**The guidelines described below should be followed in dealing with attendance problems. This is merely a guideline. Recurrent/chronic attendance problems may result in an accelerated disciplinary process. (Note: The example assumes the employee has not received any disciplinary action unrelated to attendance. If an employee has current disciplinary actions on file for any reason, then attendance policy violations would result in disciplinary action at the next appropriate step. )**

Effective 1/1/2015                                                      Page 1 of 2

MM0033

 **Texas Cement Attendance Standards**

## Unreported Absences

Unreported or "no call" absences will result in disciplinary action as follows:

| Number of Unreported Absences | During the First 3 Months Of Employment | During any 12-Month Period After the First 3 Months of Employment |
|---|---|---|
| 1 | Written Warning | Written Warning |
| 2 | Employment Terminated for failure to meet attendance standards | Disciplinary Suspension |
| 3 | | Employment Terminated for failure to meet attendance standards |

## Reported Absences

Any unplanned absence by an employee hampers the efficiency of his / her work unit. Calling in to report that he / she will be absent does not constitute an "excused absence" and does not relieve the employee's obligation to maintain a good attendance record.

An absence due to a non-work-related injury or illness hampers the operation to the same degree as any other absence. Since these absences are considered involuntary and may last for several days, they are treated in the following manner in terms of meeting attendance standards.

- An absence of two or more consecutive scheduled workdays due to non-job related injury or illness is considered as a single absence.
- An employee absent for 3 or more consecutive workdays must provide his/her supervisor with an acceptable doctor's release before he / she is allowed to return to work.

| Number of Reported Absences | During the First 3 Months Of Employment | During any 12-Month Period After the First 3 Months of Employment |
|---|---|---|
| 1 | Oral Warning | None |
| 2 | Written Warning | None |
| 3 | Employment Terminated for failure to meet attendance standards | Oral Warning |
| 4 | n/a | Written Warning |
| 5 | n/a | Disciplinary Suspension |
| 6 | n/a | Employment Terminated for failure to meet attendance standards |

♦♦♦◆◆♦♦♦

# Exceptions

| | | | Data Up to Date: | 2/8/2016 4:23:44 PM |
| --- | --- | --- | --- | --- |
| | | | Executed on: | 2/08/2016 4:23PM GMT-06:00 |
| Time Period: | 1/01/2015 - 1/22/2016 | | Printed for: | hurstbrr |
| Query: | Previously Selected Employee(s) | | | |
| Exceptions: | (1): [Late In] | | | |
| Absences: | Both | | | |

| Exception Day/Date | Exception | Scheduled | Actual or Pay Code | Amount | Amount Over Exception |
| --- | --- | --- | --- | --- | --- |
| Comment | | | | | |
| DAVIS, NEAL | ID: 725641 | | | | |
| Thu 1/22/2015 | Late In | 1/22/2015 6:00:00 AM | 1/22/2015 6:01:00 AM | 0:01 | |
| Wed 2/11/2015 | Late In | 2/11/2015 6:00:00 AM | 2/11/2015 6:03:00 AM | 0:03 | 0:02 |
| Excused | | | | | |
| Mon 2/16/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Tue 2/17/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Wed 2/18/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Thu 2/19/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Fri 2/20/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Mon 2/23/2015 | Unexcused Absence | | Illness Unpaid | 8:00 | |
| Thu 2/26/2015 | Late In | 2/26/2015 6:00:00 AM | 2/26/2015 6:04:00 AM | 0:04 | 0:03 |
| Tue 3/3/2015 | Late In | 3/3/2015 6:00:00 AM | 3/3/2015 6:30:00 AM | 0:30 | 0:29 |
| Excused | | | | | |
| Wed 3/4/2015 | Late In | 3/4/2015 6:00:00 AM | 3/4/2015 6:06:00 AM | 0:06 | 0:05 |
| Mon 4/6/2015 | Late In | 4/6/2015 6:00:00 AM | 4/6/2015 6:39:00 AM | 0:39 | 0:38 |
| Mon 4/13/2015 | Late In | 4/13/2015 6:00:00 AM | 4/13/2015 6:05:00 AM | 0:05 | 0:04 |
| Train Blocking Entrance | | | | | |
| Wed 4/22/2015 | Late In | 4/22/2015 6:00:00 AM | 4/22/2015 6:01:00 AM | 0:01 | |
| Fri 5/1/2015 | Late In | 5/1/2015 6:00:00 AM | 5/1/2015 6:02:00 AM | 0:02 | 0:01 |
| Mon 5/4/2015 | Late In | 5/4/2015 6:00:00 AM | 5/4/2015 6:01:00 AM | 0:01 | |
| Wed 5/6/2015 | Late In | 5/6/2015 6:00:00 AM | 5/6/2015 6:01:00 AM | 0:01 | |
| Thu 5/14/2015 | Late In | 5/14/2015 6:00:00 AM | 5/14/2015 6:02:00 AM | 0:02 | 0:01 |
| Mon 5/25/2015 | Excused Absence | | Holiday | 8:00 | |
| Tue 5/26/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| Comment | | | | | |
| Wed 6/3/2015 | Late In | 6/3/2015 6:00:00 AM | 6/3/2015 6:01:00 AM | 0:01 | |
| Fri 6/5/2015 | Late In | 6/5/2015 6:00:00 AM | 6/5/2015 6:02:00 AM | 0:02 | 0:01 |
| Wed 6/10/2015 | Late In | 6/10/2015 6:00:00 AM | 6/10/2015 6:01:00 AM | 0:01 | |
| Clock - PC Punch Failure | | | | | |
| Excused | | | | | |
| Thu 6/25/2015 | Late In | 6/25/2015 6:00:00 AM | 6/25/2015 6:01:00 AM | 0:01 | |

MM0035

# Exceptions

| | | | | |
|---|---|---|---|---|
| | | | Data Up to Date: | 2/8/2016 4:23:44 PM |
| | | | Executed on: | 2/08/2016 4:23PM GMT-06:00 |
| Time Period: | 1/01/2015 - 1/22/2016 | | Printed for: | hurstbrr |
| Query: | Previously Selected Employee(s) | | | |
| Exceptions: | (1): [Late In] | | | |
| Absences: | Both | | | |

| Exception Day/Date | Exception | Scheduled | Actual or Pay Code | Amount | Amount Over Exception |
|---|---|---|---|---|---|
| *Comment* | | | | | |
| DAVIS, NEAL | ID: 725641 | | | | |
| Tue 6/30/2015 | Late In | 6/30/2015 6:00:00 AM | 6/30/2015 6:02:00 AM | 0:02 | 0:01 |
| Thu 7/2/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| *Other* | | | | | |
| Fri 7/3/2015 | Excused Absence | | Independence Day | 8:00 | |
| Mon 7/13/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| *Other* | | | | | |
| Thu 7/16/2015 | Late In | 7/16/2015 6:00:00 AM | 7/16/2015 6:02:00 AM | 0:02 | 0:01 |
| Fri 7/31/2015 | Late In | 7/31/2015 6:00:00 AM | 7/31/2015 6:01:00 AM | 0:01 | |
| Fri 8/7/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| Fri 8/14/2015 | Late In | 8/14/2015 6:00:00 AM | 8/14/2015 6:01:00 AM | 0:01 | |
| Mon 9/7/2015 | Excused Absence | | Labor Day | 8:00 | |
| Tue 9/8/2015 | Excused Absence | | VacHrly-Curr Yr | 8:00 | |
| *Other* | | | | | |
| Fri 9/25/2015 | Late In | 9/25/2015 6:00:00 AM | 9/25/2015 6:01:00 AM | 0:01 | |
| Sat 10/3/2015 | Late In | 10/3/2015 6:00:00 AM | 10/3/2015 6:02:00 AM | 0:02 | 0:01 |
| Wed 11/4/2015 | Late In | 11/4/2015 6:00:00 AM | 11/4/2015 6:01:00 AM | 0:01 | |
| Thu 11/26/2015 | Excused Absence | | Thanksgiving Day | 8:00 | |
| Fri 11/27/2015 | Excused Absence | | Thanksgiving Friday | 8:00 | |
| Tue 12/1/2015 | Late In | 12/1/2015 6:00:00 AM | 12/1/2015 6:02:00 AM | 0:02 | 0:01 |
| Mon 12/14/2015 | Late In | 12/14/2015 6:00:00 AM | 12/14/2015 6:02:00 AM | 0:02 | 0:01 |
| Thu 12/24/2015 | Excused Absence | | Christmas Eve | 8:00 | |
| Fri 12/25/2015 | Excused Absence | | Christmas Day | 8:00 | |
| Fri 1/1/2016 | Excused Absence | | New Year's | 8:00 | |
| Thu 1/7/2016 | Late In | 1/7/2016 6:00:00 AM | 1/7/2016 6:05:00 AM | 0:05 | 0:04 |
| Fri 1/15/2016 | Late In | 1/15/2016 6:00:00 AM | 1/15/2016 6:03:00 AM | 0:03 | 0:02 |
| Exception | | Total | Total Amount Over Exception | | |
| Excused Absence: | | 13 | N/A | | |
| Late In: | | 27 | 1:35 | | |
| Unexcused Absence: | | 6 | N/A | | |

MM0036

App. 082

## Exceptions

| | | | |
|---|---|---|---|
| | | Data Up to Date: | 2/8/2016 4:23:44 PM |
| | | Executed on: | 2/08/2016 4:23PM GMT-06:00 |
| Time Period: | 1/01/2015 - 1/22/2016 | Printed for: | hurstbrr |
| Query: | Previously Selected Employee(s) | | |
| Exceptions: | (1): |Late In| | | |
| Absences: | Both | | |

Total Number of Exceptions: 46

MM0037



1341 West Mockingbird Lane · Dallas, Texas 75247 · 972.647.6700

*txi.com*

June 11th, 2013

Neal David's
245 Ward Rd.
Midlothian ,TX 76065

Neal:

This letter constitutes a written warning in accordance with TXI's Human Resources Policy
Number 11 (P-11) due to the severity of the alleged action discussed below.

It has been reported to Human Resources, as well as discussed with you verbally on June the 3rd,
2013 regarding your excessive tardiness. The attached repot shows a record that in the last five
months there have been twenty nine tardiness against your work schedule, which is totally
unacceptable. It is imperative for the operation of this company and to the responsibilities of
your job that you work the required hours and that you are a reliable employee. When excessive
tardiness occurs, it puts undue stress on the plant operations. Our commitment is to provide daily
service and support to operations by starting at 6:00 am. You are the employee responsible to
initiate these operations in the Warehouse.

By signing this document, I understand the ramifications of the written warning. If there isn't
immediate and sustained change in my attendance, this will result in further disciplinary action
leading up to and including termination.

Eric M. Wilson                               6-11-13
_____                  _____
Eric Wilson                                  Date

Neal Davis                                   6-11-13
_____                  _____
Neal Davis                                   Date

We will provide EXCEPTIONAL building materials,
SERVICE and solutions so that customers CHOOSE TXI.

**MM0038**

### MARTIN MARIETTA MATERIA.
### Supervisor's Report of Incidence

Employee Name: **Carl Weatherford**     Employee Number: **790983**

Location: Midlothian 54731     Date: December 15, 2015

**Description of violation or incident (include date and time):** Attendance: You were 2.5 hours late for shift on 11/30/15 and 1 hour late on 12/7/15. You were also late for work on 9/25/15 and 9/26/15. Prior notice before shift start time was not given for any of the tardies.

**Previous attempts to correct:** Carl, We have had a few discussions about your tardiness and the importance to you being here on time, every day you are scheduled to work. On 9/26/15, you received an oral warning for tardies on 9/25 and 9/26 while you were still within your 90 day probationary period. Due to the fact that you did not call in before the start of your shift, the disciplinary action should have been a written warning. Your two additional "no call" absences could have resulted in the termination of your employment according to the attendance standard.

**What is required to correct:** Carl, you must meet the requirements of the Texas Cement Attendance Standard or face further disciplinary action. Your repeated failure to report tardies before the start of your shift is unacceptable. Rather than terminate your employment at this time, the decision has been made to suspend you without pay for 3 days because of the 4 unreported tardies. This will be your last chance to correct your attendance problem.

**What happens if not corrected:** Continued tardiness, absenteeism or other performance problems will lead to further disciplinary action up to and including the termination of your employment. If you will be tardy or miss work, you must call in to your supervisor to report your absence prior to the start of your scheduled shift. (See attached copy of the Texas Cement Attendance Standard)

Check applicable step:

☐ **Oral Warning** (I have counseled the employee on the violation and corrective measures that can be taken)

☐ **Written Warning** (Copy of this report has been given to the employee)

☒ **Suspension** (Copy of this report has been given to the employee)

☐ **Termination**

**Flagrant or continued violations after any of the above steps may result in further disciplinary action up to and including termination.**

_(signature)_ 12-16-15 _(signature)_

Supervisor's Signature     Employee's Signature

_(signature)_     (Indicate employee's refusal to sign)

_(signature)_ 12/16/15

Plant Manager / Department Head Signature

*(Original: Employee File; Copy: Employee; Copy: Human Resources)*



**HURST DECLARATION - EX. B**     App. 085

## MARTIN MARIETTA MATERIALS
### Supervisor's Report of Incidence

Employee Name: Carl Weatherford                      Employee Number: 790983

Location: Midlothian Cement                                    Date: 6/30/2016

Description of violation or incident (include date and time): Noncompliance of attendance standards:
On 2/22/16 you were 8 minutes late and didn't call prior to your shift. You were 3.5 hours late on
6/22/16, you didn't show for a verbally agreed assignment on 6/26/16 and 5 min late on 6/2716. Prior
notice wasn't given on 6/22/16 or 6/26/16 as per the Attendance guidelines, that is considered a "no
call" and a "no call / no show" respectively

Previous attempts to correct: Carl multiple people have taken a genuine interest in your attendance
here at Martin Marietta, and have had discussions with you several times. The importance of being on
time can't be stressed enough, if you aren't at your appointed place at your appointed time others are
left to deal with the immediate consequences of your inaction.
On 9/26/15, you received and oral warning for tardies on 9/25 ans 9/26 while you were still in your
probationary period. Due to the fact that you did not call in before the start of your shift, the
disciplinary action should have been a written warning. Your two additional "no call" absences could
have resulted in the termination of your employment according to the attendance standard. You were
2.5 hours late for shift on 11/30/15 and 1` hour late on 12/7/15.

What happens if not corrected: Carl, your attendance is a pattern of behavior that runs counter to the
Texas Cement Attendance Standard, and the culture of conduct required of a proficient apprentice
maintenance technician. Due to your attendance history and the different times that the attendance
standard has been made available to you, the decision has been made to terminate your
employment.

Check applicable step:

☐ **Oral Warning** (I have counseled the employee on the violation and corrective measures that can
be taken)

☐ **Written Warning** (Copy of this report has been given to the employee)

☐ **Suspension** (Copy of this report has been given to the employee)

☒ **Termination**

    **Flagrant or continued violations after any of the above steps may result in further
disciplinary action up to and including termination.**

_____            _____

Supervisor's Signature                                      Employee's Signature
                                                                          (Indicate employee's refusal to sign)

_____

Plant Manager / Department Head Signature

*(Original:  Employee File;  Copy:  Employee;  Copy:  Human Resources)*

## DECLARATION OF TERRY DOYLE

My name is Terry Doyle, and I am making the following Declaration under penalty of perjury:

1. I am competent to make this Declaration.  I have personal knowledge of the facts stated here, which are true and correct.

2. I am a Martin Marietta Human Resources employee in the Southwest Division, which includes the company's Cement Plant in Midlothian, Texas.

3. In or about June 2015, I was involved in the decision to rehire Bridgette Hurst to serve as the Midlothian Cement Plant's Administrative Manager.  It was a key hiring consideration that Ms. Hurst had recently served in a Human Resources capacity at the Midlothian Cement Plant.  I believed Ms. Hurst's prior employment demonstrated she would successfully perform key Cement Plant Human Resources duties that were required for the Administrative Manager position. She also already understood our HR systems and processes. Indeed, she had directly relevant experience and demonstrated skills to perform all of the job duties. Plus, I believed that she was well-regarded by Plant management and employees who previously worked with her.

4. As a result of the above, I thought Ms. Hurst was the best candidate for the position, which is why she was selected for the Administrative Manager job position.

I declare under penalty of perjury that the foregoing is true and correct.


Signed this  22  day of ___September___, 2020.


_____
Terry Doyle, Declarant

1