IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NEAL DAVIS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:16-cv-01312-L** |
| | § | |
| **MARTIN MARIETTA MATERIALS,** | § | |
| **INC.,** | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are Defendant Martin Marietta Materials, Inc.'s ("Defendant" or "MMM") Motion for Summary Judgment (Doc. 29), Brief in Support (Doc. 30), and Appendix (Doc. 31) filed September 25, 2020; Plaintiff Neal Davis's ("Plaintiff" or "Mr. Davis") Response (Doc. 32), Brief in Support (Doc. 33), and Appendix (Doc. 34) filed October 16, 2020; and Defendant's Reply (Doc. 35). After careful consideration of the motion, briefs of the parties, appendices, competent summary judgment evidence, and applicable legal authority, the court **grants in part and denies in part** Defendant MMM's Motion for Summary Judgment (Doc. 29).

## I.     Procedural Background

On March 14, 2016, Mr. Davis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for race and sex discrimination against MMM. On March 17, 2016, Mr. Davis initially filed this action in the 192nd Judicial District Court of Dallas County, Texas, alleging violations of the Fair Labor Standards Act ("FLSA") regarding unpaid overtime. The EEOC race and sex discrimination claims and the FLSA unpaid overtime claim arise out of and relate to circumstances and actions that occurred while Plaintiff was employed by Defendant. On May 12, 2016, Defendant removed this action to federal court based on diversity of citizenship

and federal question jurisdiction. The parties filed an Unopposed Motion to Stay (Doc. 10) on January 5, 2017, seeking consolidation of the FLSA and EEOC claims. This court declined to stay the action and, instead, ordered an administrative closure until the EEOC issued a right-to-sue letter on Plaintiff's race and sex discrimination claims on July 15, 2019. On October 9, 2019, Mr. Davis filed a Motion to Reopen (Doc. 12) along with an Amended Complaint that alleged violations of the FLSA, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. The court granted Plaintiff's motion and reopened this action with respect to its FLSA and Title VII claims on October 11, 2019, but denied the § 1981 claim on the grounds that there was no mention of Plaintiff's intent to file a § 1981 claim in its Unopposed Motion to Stay and the deadline for Plaintiff to amend his pleadings had passed.

On October 14, 2019, Plaintiff filed another amended pleading that he labeled as his First Amended Complaint ("First Amended Complaint"), which is the appellation the court hereafter uses, against MMM asserting two causes of action: Title VII/Texas Commission on Human Rights Act ("TCHRA") – Race and Sex Discrimination (Count One) and Violation of the FLSA (Count Two). Plaintiff's First Amended Complaint is not a model of pellucid draftsmanship and, therefore, causes great confusion regarding the claims that he is asserting in this action. Although Plaintiff lists only two counts, he is really asserting thirteen claims. Count One consists of twelve claims: two based on race and sex discrimination under Title VII, and two based on race and sex discrimination under the TCHRA for not being promoted in July 2015; two based on race and sex discrimination under Title VII, and two based on race and sex discrimination under the TCHRA for not being promoted in January 2016; two based on race and sex discrimination under Title VII, and two based on race and sex discrimination under the TCHRA for being terminated in January 2016. Accordingly, for purposes of clarity, the court will treat Count One as twelve claims for race

and sex discrimination. Further, Plaintiff lists his FLSA claim as Count Two. Once again, for the sake of clarity, the court will treat the overtime pay claim as Plaintiff's thirteenth claim. As later explained, the standard for discrimination claims for race and sex discrimination is the same under Title VII and the TCHRA, and the court's ruling applies equally to Plaintiff's claims under Title VII and the TCHRA.

The First Amended Complaint alleges that Plaintiff, an African-American male, applied for higher level positions throughout his ten-year tenure with MMM and was consistently rejected, even though he was highly qualified for the positions. Pl.'s Am. Compl., Doc. 15 at 3-4, ¶ 23-25. Mr. Davis argues that, when he approached Human Resources and requested why he had not been promoted, he was told that, if he wanted to be promoted, he should leave the company. *Id.* at 4, ¶ 26. Mr. Davis contends that, approximately one week after this conversation with Human Resources ("HR"), he was terminated on January 22, 2016. *Id.* He further contends that, throughout his employment, MMM required a significant number of hours over forty hours in a week under FLSA. *Id.* at 3, ¶ 18.

## II.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v.*

*Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes

**Memorandum Opinion and Order – Page 4**

over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Undisputed Facts

The court now sets forth the undisputed facts in this action based on the standard set forth in Section II of this opinion.

#### A. Title VII/TCHRA Race and Sex Discriminations–Failure to Promote to Human Resources/Administrative Manager in July 2015 (Claims 1-4)

1.  Mr. Davis is an African-American or black male, and he began his employment with MMM in December 2006.

2.  He applied to be HR/Administrative Manager at MMM in May 2015.

3.  The job description for this position stated the following: The HR/Administrative Manager is responsible for providing on-site, first level HR and employee relations support to the plant. The position manages assigned administrative staff and oversees custodial services. The position also reports to the Plant Manager with a strong dotted line reporting relationship to the Director of HR.

4.  The qualifications listed for this position were as follows: Bachelor's Degree in Business Administration is strongly preferred; two plus years of HR experience is required; HR experience in industrial setting is strongly preferred; and supervisory experience is preferred.

5. He has a Bachelor's Degree in HR and eight years of experience as a Recruiter in the U.S. Army, including supervisory and leadership experience.

6. Mr. Davis was a Senior HR person over three stations as part of the U.S. Army.

7. He was not promoted to the position.

8. Bridgette Hurst ("Ms. Hurst"), a white woman, was offered and accepted the position in July 2015. She has an Associate's Degree in Applied Science in Office Administration, four years of experience as an administrative assistant, and one year and one month experience as the HR Administrator for MMM's Midlothian plant.

**B. Title VII/TCHRA Race and Sex Discrimination Claims–Failure to Promote to Maintenance Planner in January 2016 (Claims 5-8)**

1. Mr. Davis also sought to be promoted to the Maintenance Planner position on November 2015.

2. The job description for the position stated the following: The Maintenance Planner is responsible for all planned maintenance activities. The primary objective of the Maintenance Planner is to improve the efficiency and productivity of the workforce, service companies, and contractors. The Maintenance Planner provides the employees with detailed job plans, including technical specifications, machinery history, parts and tools lists, and safety procedures in a very organized fashion. The Maintenance Planner also provides all necessary information to ensure that all work is

completed in a safe, efficient, and timely manner, and in compliance with environmental requirements.

3. The qualifications for the listed position were: A Bachelor's Degree in a related field is strongly preferred, but not required. Technical/vocational/trade school and/or significant experience in the cement industry will be considered in lieu of a degree with demonstrated skills in the use of computers and other aspects relevant to the position.

4. Mr. Davis has a Bachelor's Degree in Human Resources. He has experience as a Planner through the U.S. Army in which he was in charge of exercises and long and short-term development planning for soldiers. He earned several years of management and planning skills as a Sergeant First Class. He had also been employed with MMM for 10 years.

5. At the time Mr. Davis applied for promotion, he had been a Storeroom Attendant for nearly seven years. The Planner position to which Mr. Davis applied was a higher-level Storeroom Attendant position in management, and is also referred to as a Storeroom Attendant II position. As a storeroom attendant, he ordered parts in the storeroom, maintained and ordered inventory, kept parts lists, tool lists, ensured proper storage, and ensured inventory was on hand when needed.

6. Mr. Davis was not promoted to the position.

7. Amy LeAnn Kirkpatrick ("Ms. Kirkpatrick"), a white woman, had no college degree and began employment at MMM as an Administrative Assistant in Maintenance in 2014.

8.  Ms. Hurst offered Ms. Kirkpatrick the Maintenance Planner position on January 22, 2016, and Ms. Kirkpatrick accepted the position.

**C. Title VII/TCHRA Race and Sex Discrimination Claims–Wrongful Termination in January 2016 (Claims 9-12)**

1.  At the time he was terminated, Mr. Davis had applied for two higher positions, for which he was qualified.

2.  At the time Mr. Davis was terminated, he had inquired of Ms. Hurst, the decisionmaker who selected Ms. Kirkpatrick, why he was denied a promotion to the Planner position.

3.  Ms. Hurst told Mr. Davis that, if he wanted to be promoted to a management position, he should leave MMM altogether.

4.  Performance reviews show that Mr. Davis was praised by his supervisor, other supervisors, as well as his coworkers.

5.  MMM's attendance policy provided that any failure to report to work at the assigned time was considered tardiness. Two tardies were treated as one absence.

6.  For unreported absences after the first three months of employment, MMM's policy of disciplinary action provided that there would be a: written warning after one (1), disciplinary suspension after two (2), and termination after three (3). Under MMM's policy, an unreported absence is alternately referred to as a "no call" absence.

7.  For reported absences after the first three months of employment, MMM's policy of disciplinary action provided that there would be an: oral warning after three (3), written warning after five (5), and termination after six (6).

8. MMM terminated Mr. Davis's employment for tardiness on January 21, 2016.

9. Mr. Davis received one written warning for tardiness in 2013. He contested this written warning, and it was reduced to a verbal warning.

10. Mr. Davis did not receive a written or verbal warning for tardiness in 2014, 2015, or 2016.

**D. FLSA Violation–Overtime Pay (Claim 13)**

1. Mr. Davis was employed by MMM during the period for which he is claiming overtime.

2. Throughout Mr. Davis's employment, MMM required him to complete a workload that required significant hours over 40 hours a week, including working beyond eight hours at the end of his workday and during his lunch period.

3. Payroll Adjustment Forms were used by management and HR to correct certain timesheet errors.

4. In relation to Mr. Davis's employment, management only used Payroll Adjustment Forms for timesheet errors involving major pay changes, such as accounting for significant time off or correcting an incorrect entry of vacation to illness, rather than minor pay changes.

5. Mr. Davis had not personally experienced Payroll Adjustment Forms being used to make modifications to hours worked.

6. Mr. Davis's supervisor, Eric Wilson, never instructed Mr. Davis or HR to adjust Mr. Davis's hours on the Payroll Adjustment Form.

7. When being called to work overtime, no one prevented Mr. Davis from clocking back in to work after he had already clocked out for the day.

8. The "procedure" and "general rule," however, when employees were called back to work overtime at MMM after clocking out for the day was not to clock back into the Kronos time machine, but, instead, to request that their supervisor make a modification to their time sheet by filling out the appropriate form. "Double clocking," or clocking back in after already clocking out, would disrupt the Kronos time clock system.

9. Mr. Davis asked his supervisor, Eric Wilson, to make adjustments to his time sheet on numerous occasions without success.

## IV.    Analysis

### A.  Standards for Title VII/TCHRA Race and Sex Discrimination Claims (Claims 1-12)

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin."    42 U.S.C. § 2000e–2(a)(1). As Mr. Davis offers only circumstantial evidence of discrimination, his Title VII claims are analyzed using the modified *McDonnell Douglas* burden-shifting paradigm. *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). To survive a motion for summary judgment under the modified *McDonnell Douglas* paradigm, a Title VII plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of racial discrimination in employment, an employee must show that: (1) he is a member of a protected class, (2) he was qualified for the position, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly

situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Once a *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04. "The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citations and internal quotation marks omitted). If the employer sustains its burden, the inference of discrimination disappears, and "the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Id.* (citation omitted). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (alteration in original) (citations and internal quotation marks omitted).

Under the TCHRA, "[a]n employer commits an unlawful employment practice if because of race . . . the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]" Tex. Labor Code Ann. § 21.051. Claims of race discrimination brought under Title VII and the TCHRA are governed by the same evidentiary framework. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *see also Reed v. Neopost USA, Inc.,* 701 F.3d 434, 439 (5th Cir. 2012) (quoting *Mission Consol. Indep. School Dist. v. Garcia,* 372 S.W.3d

629, 633 (Tex. 2012) (internal quotation marks omitted) ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' [the Texas Supreme Court has] consistently held that those analogous federal statutes and the cases interpreting them guide [the] reading of the TCHRA.")

Likewise, under state law, a plaintiff can defeat summary judgment by showing that his race or sex was a motivating factor for the employer's adverse employment decision. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) (citing § 21.125[a] of the TCHRA, now codified in the Texas Labor Code as § 125(a)). "Under the TCHRA, [a plaintiff] can do so by showing 'either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor[.]'" *Reed,* 701 F.3d at 439-40 (quoting *Michael,* 314 S.W.3d at 691).

Speculation that events were motivated in whole, or in part, by racial discrimination, is insufficient to raise a genuine dispute of material fact that racial discrimination was a motivating factor in an employer's decision to terminate an employee. *See Ramsey v. Henderson,* 286 F.3d 264, 269 (5th Cir.2002) (quoting *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc) ("This Court has cautioned that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment.")); *see also M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 25 (2000) ("Subjective beliefs are insufficient to overcome [employer's] summary judgment evidence.") (citations omitted).

### B.  Discussion

#### 1.  Failure to Promote to Human Resources/Administrative Manager in July 2015 (Claims 1-4)

MMM conceded at the hearing on March 10, 2021, that Mr. Davis has established a *prima facie* case of race and sex discrimination with respect to the HR/Administrative Manager position. Hr'g Tr. 2:11-4:10 March 10, 2021. Defendant, however, contends that Ms. Hurst was the best candidate selected for the position because she had recently served as HR Administrator for the company's Midlothian Plant where she performed substantially similar job duties. Def.'s Summ. J. Br., Doc. 30 at 4, ¶ 7-9. It also contends that Mr. Davis had no HR experience in the private sector, and was, therefore, inexperienced with key job duties such as applicant processing and private payroll functions. *Id.* To support these claims, MMM submitted the declarations of Ms. Hurst and Mr. Terry Doyle, a MMM HR employee who was involved in the decision to rehire Ms. Hurst, both of which established that Ms. Hurst had served in the position HR Administrator at the Midlothian Plant from approximately 2013 to October 2014 prior to voluntarily leaving the company. Def.'s App., Doc. 31 at 75, 87. The declarations also established that, at the time of her departure, Ms. Hurst was receiving positive performance reviews and successfully performing all duties relating to the position. *Id.*

Because MMM has met its burden to articulate a legitimate, nondiscriminatory reason for hiring Ms. Hurst in lieu of promoting Mr. Davis, these claims hinge on whether Mr. Davis can raise a genuine dispute of material fact that MMM's articulated reason is merely a pretext for race and sex discrimination or that either discrimination was a motivating factor in MMM's hiring decision. Mr. Davis argues that MMM's lack of adherence to its own publicized job qualifications and MMM's implicit racist practices establish, or raise a genuine dispute of material fact, that MMM's reason for failing to promote him is pretextual. Pl.'s Resp. Br., Doc. 33 at 17-18. Because

**Memorandum Opinion and Order – Page 13**

the Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff, allegations of implicit racist or sexist practices are not competent summary judgment evidence. *Alvarado*, 492 F.3d at 611. The court, therefore, will only consider the issue of MMM's lack of adherence to its stated job qualifications in its failure to promote Mr. Davis.

The court cannot hold that that Mr. Davis has presented sufficient evidence of pretext, such that a reasonable factfinder could conclude MMM's proffered explanation is false. The court cannot say, based on the evidence before it, that MMM's decision to hire someone who had previously performed the position with success was motivated by intentional race or sex discrimination. A reasonable factfinder would find that it was a reasonable decision for MMM to select Ms. Hurst for the position.

In giving notice of the vacancy of the position for HR/Administrative Manager, MMM stated that it preferred candidates with a Bachelor's Degree in Business Administration, HR experience in an industrial setting, and supervisory experience. Pl.'s App., Doc. 34 at 64.  The notice did not state a preference for private sector experience, although it did state a preference for a person with experience in an industrial setting. *Id.* Ms. Hurst did not have a Bachelor's Degree in Business Administration; she held an Associate's Degree in Office Administration, which is lower than a Bachelor's Degree. She had also previously been employed at MMM's Midlothian Plant as HR Administrative Support for slightly over a year and worked as an Administrative Assistant for FKP Architects for approximately four years.

Mr. Davis, on the other hand, held a Bachelor's Degree in Human Resources, had eight years of experience as a Recruiter in the United States Army, and had been working at MMM as an employee in its warehouse for ten years. *Id.* at 43, 71. Although Mr. Davis emphasizes that Ms. Hurst did not have the type of college degree that MMM listed as a strong preference and benefited

from having a type of experience not listed as a qualification for the role, these facts are not sufficient for the court to determine that MMM's decision to hire Ms. Hurst was based on unlawful criteria. Notably, MMM stated that a Bachelor's degree was "strongly preferred," not required. Further, an employer's subjective assessment for not selecting a candidate may serve as a legitimate, nondiscriminatory reason for the candidate's nonselection if the employer articulates a clear and reasonably specific basis for that assessment. *Alvarado*, 492 F.3d at 616. That MMM valued Ms. Hurst's private sector skills over Mr. Davis's experience as an Army Recruiter because that private sector work gave her experience in matters such as payroll and background checks is a reasonably specific basis for the subjective assessment to hire her over Mr. Davis.

Moreover, when the court thinks of an industrial setting, what comes to mind are businesses that are warehouses, factories, manufacturers, plants, and others that provide goods, products, or services to the public and society at large. The U.S. military really does not fall into the category of an industrial setting. Of course, this statement is not intended to disparage a great institution that protects and keeps this country safe. The court is simply saying that working with the United States military, or being a member, is not necessarily synonymous with work experience in an industrial setting.

In his attempt to show that MMM's justification was a pretext for discrimination, Mr. Davis also asserts that he was the better qualified candidate for the position. In the Title VII failure-to-promote context, the Fifth Circuit has found pretext on a showing that the unsuccessful employee was "clearly better qualified" than the successful candidate, as opposed to merely better qualified. *Autry v. Fort Bend Indep. Sch. Dist.,* 704 F.3d 344, 347 (5th Cir. 2013). Mr. Davis has not demonstrated that he was the "clearly better qualified candidate." Given that the "essential functions" of the position describe duties for which private sector experience would be beneficial

**Memorandum Opinion and Order – Page 15**

to operating the payroll system and maintaining employment files for auditing purposes, Mr. Davis was, at best, qualified for the position. *See* Pl.'s App., Doc. 34 at 63-64. Mr. Davis's better education and longer tenure with the company alone do not establish that he was clearly better qualified. *See Price v. Federal Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (citing *Nichols v. Lewis Grocer,* 138 F.3d 563, 568-69 (5th Cir.1998)). "[T]o establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job. *Id.* (quotation marks omitted); *see McLendon v. Ingalls Shipbuilding, Inc.*, 2001 U.S. App. LEXIS 31785, *11, 2001 WL 650487 (5th Cir. May 31, 2001) (noting that employment discrimination laws have not "vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom and fairness of the business judgments made by employers" and dismissing the plaintiff's claim because the evidence established only that the employer made a "judgment call" as to whom was the better qualified candidate for the position at issue) (citation omitted). In an unreported case, the Fifth Circuit clarified that an unsuccessful candidate was clearly better qualified when his or her qualifications were so obviously superior to the successful candidate's qualifications that no reasonable person, using impartial judgment, could have chosen the selected candidate. *Gillaspy v. Dallas Indep. Sch. Dist.,* 278 F. App'x 307, 313-14 (5th Cir. 2008) (citing *Deines v. Texas Dep't of Protective & Regul. Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999). Although Mr. Davis's qualifications are sufficient, they are not obviously superior to those of Ms. Hurst.

The court, thus, determines that MMM's departure from its posted job description is insufficient to raise a genuine dispute of material fact with respect to pretext. A reasonable juror could not conclude that MMM's failure to adhere to its posted job qualifications and promote Mr.

**Memorandum Opinion and Order – Page 16**

Davis was motivated by his race or sex. Accordingly, as Plaintiff has failed to raise a genuine dispute of material fact regarding pretext with respect to these four claims, MMM is entitled to judgment as a matter of law. Summary judgment, therefore, will be granted regarding the Title VII/TCHRA claims for race and sex discrimination for failure to promote Mr. Davis to the HR/Administrative Manager position in July 2015.

### 2. Failure to Promote to Maintenance Planner in January 2016 (Claims 5-8)

MMM conceded at the hearing on March 10, 2021, that Mr. Davis has established a *prima facie* case of race and sex discrimination with respect to the Maintenance Planner position. Hr'g Tr. 2:11-4:10 March 10, 2021. Defendant, however, articulates that Ms. Kirkpatrick was given the job because she had already successfully performed the Maintenance Planner's job duties during Planner Glenn Alexander's extended medical leave. Def.'s Rep. Summ. J. Br., Doc. 35 at 6. To support this argument, MMM submitted the declaration of Ms. Hurst who was a decisionmaker in the hiring of Ms. Kirkpatrick. Ms. Hurst's declaration establishes that, from an unspecified date in 2015 to the beginning of 2016, Ms. Kirkpatrick performed the job duties of the Maintenance Planner because Mr. Alexander, the employee who held that position was on extended medical leave; that Ms. Kirkpatrick received "solid" reviews for that work; and that, in light of her proven ability to perform the job, she was promoted to Planner when the employee on medical leave ended his employment with MMM. Def.'s App., Doc. 31 at 75-76.

Mr. Davis responds that MMM's reason is pretextual because, when the employee who held the position of Maintenance Planner went on extended medical leave, he and his supervisor, Mr. Wilson, jointly performed the duties of the Planner, not Ms. Kirkpatrick. Pl.'s Dep. 113:16-114:1 (Def.'s App., Doc. 31 at 17); Davis Aff. ¶ 20 (Pl.'s App., Doc. 34 at 45).

**Memorandum Opinion and Order – Page 17**

Here, there is a conflict in testimony that raises a credibility issue. MMM's evidence that Ms. Kirkpatrick performed Mr. Alexander's job duties during his extended medical leave is Ms. Hurst's sworn declaration. Def.'s App., Doc. 31 at 75-76. Mr. Davis's evidence that he and Mr. Wilson assumed Mr. Alexander's duties while he was on leave is supported by Mr. Davis's deposition as well as his affidavit. MMM contends that Mr. Davis's affidavit is contrary to his deposition testimony and is, therefore, a sham affidavit. If an affidavit merely explains or clarifies deposition testimony, it is not a sham affidavit. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *see also Robinson v. Nexion Health at Terrell, Inc.*, 671 F. App'x 344, 344 (5th Cir. 2016) (finding that, if plaintiff's deposition testimony and subsequent affidavit can be reconciled, the subsequent affidavit is not a sham affidavit).

Plaintiff has raised a genuine dispute of material fact regarding pretext. Because Defendant's stated reason for its failure to promote Mr. Davis with respect to the Maintenance Planner position in January 2016 raises a genuine dispute of material fact, summary judgment with respect to these four claims will be denied.

### 3. Wrongful Termination (Claims 9-12)

MMM conceded at the hearing on March 10, 2021, that Mr. Davis has established a *prima facie* case of race and sex discrimination with respect to his wrongful termination claims. Hr'g Tr. 2:11-4:10 March 10, 2021. Defendant, however, maintains that Mr. Davis was terminated because he violated MMM's written attendance policy, specifically with respect to tardiness. Def.'s Summ. J. Br., Doc. 30 at 5. MMM provides evidence that, after earlier attendance policy warnings, Plaintiff was tardy twenty-four times in the twelve months prior to his termination. Pl.s Dep. 118:1-7 (Def.'s App., Doc. 31 at 18). Mr. Davis does not dispute the number of times he was tardy, but he argues that a number of them should not have counted because of the so-called seven-minute

rule. MMM's written attendance policy provided that two tardies are treated as one absence and, during any twelve-month period after the first three months of employment, the following four-step procedure was to be followed:  Employees would receive an oral warning after three absences (six tardies), a written warning after four absences (eight tardies), a disciplinary suspension after five absences (ten tardies), and a termination for failure to meet attendance standards after six absences (twelve tardies). Def.'s App., Doc. 31 at 68-89.

Mr. Davis contends that MMM's reliance on its attendance policy as justification for his termination is pretext for two reasons. First, he contends that MMM had a practice of not counting an employee as tardy if he came to work seven minutes after his shift started ("the seven-minute rule"), and the vast majority of Mr. Davis's alleged tardies fell within the seven-minute window. Second, Mr. Davis argues that MMM did not follow the four-step procedure outlined in its written attendance policy with respect to his termination. Pl.'s Dep. 148:9-18 (Def.'s App., Doc. 31 at 21).

To support his argument regarding the seven-minute rule, Mr. Davis produces evidence and argues that the vast majority of his alleged start times, which served as the basis of his termination based on tardiness, were between one to five minutes past his start time, yet he was never written up for tardiness or verbally warned about tardiness in the twelve months prior to his termination. Pl.'s App., Doc. 34 at 91-96. Mr. Davis testified in his affidavit that, although the rule was unwritten, it was communicated "at the onboard meeting with Martin Marietta's corporate HR." *Id.* at 48, ¶ 44. Mr. Davis also contends that other employees were aware of the seven-minute rule and relies upon declarations by two former MMM employees corroborating the existence of the rule. Pl.'s App., Doc. 34 at 34-41. In its Reply, MMM presents argument that its decisionmakers are not aware of the seven-minute rule, that its decisionmakers did not authorize the seven-minute, and that its attendance policy makes no mention of the seven-minute rule. Def.'s

Reply Br., Doc. 35 at 14. MMM, however, presents no evidence to support these arguments. With respect to the meeting with corporate HR, the court, viewing the evidence in the light most favorable to Plaintiff, can reasonably infer that the seven-minute rule was discussed at the meeting and, therefore, that at least one of MMM's corporate personnel was aware of the so-called seven-minute rule. Since, MMM has presented no evidence concerning the so-called seven-minute rule, there is nothing in the record to contradict or refute Mr. Davis's evidence regarding this issue. Plaintiff's testimony alone, therefore, is sufficient to create a genuine dispute of material fact regarding the seven-minute rule.

To support his contention that MMM failed to follow the procedures of its attendance policy, Mr. Davis produces competent summary judgment evidence that MMM terminated him without providing the requisite warnings during a twelve-month period. On the other hand, the termination notice for Mr. Carl Weatherford, a white male employee who was terminated on June 30, 2016, included the dates of discussions and warnings that occurred in the twelve months preceding his termination. These dates appeared next to the phrase "Description of violation or incident (include date and time)." Mr. Davis's termination notice provided no timeline of events. Pl.'s App., Doc. 34 at 91. Instead, Mr. Davis's termination notice simply stated, "It has come to our attention that in the past 12 months, you have been tardy 24 times. According to our attendance policy this is unacceptable." Def.'s App., Doc. 31 at 61. Next to the phrase "Previous attempts to correct," the notice vaguely informed, "You were previously given a written warning for being tardy 29 times in 12 months." *Id. The notice did not mention that the prior written warning to which it referred had occurred almost three years earlier on June 11, 2013*. In an annual performance review conducted on April 20, 2015, Mr. Davis was praised by his supervisors as "consistently dependable and conscientious and fully reliable in terms of attendance and

punctuality." *Id.* at 8. This was within the twelve-month time frame upon which MMM purportedly based its termination of Mr. Davis. In its Reply, MMM did not respond to Mr. Davis's argument that it did not follow the four-step procedure detailed in its attendance policy when terminating him. Moreover, although Mr. Weatherford was not terminated until June 30, 2016, there is a seven-month overlap in the twelve months preceding Mr. Weatherford's termination and the date Plaintiff was terminated. Therefore, the same policy and notice that applied to Mr. Weatherford should have also applied to Mr. Davis. MMM has offered no explanation for the difference in treatment of the two men. The court, thus, finds Mr. Davis's evidentiary showing of pretext raises a genuine dispute of material fact.

In the absence of proof that the plaintiff was treated differently than other non-minority employees, a defendant's failure to follow its own policy is not probative of discriminatory animus. *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 346 (5th Cir. 2007). "Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Id.* (citation omitted) Here, Mr. Davis was treated differently from Mr. Weatherford because of MMM's arbitrary failure to follow its own policy. A reasonable juror could conclude that MMM's termination of Mr. Davis after not adhering to its attendance policy was motivated by Mr. Davis's race.

For the reasons stated, there is a genuine dispute of material fact regarding Mr. Davis's Title VII and TCHRA race discrimination claims for wrongful termination, and MMM is, therefore, not entitled to judgment as a matter of law as to Claims 9 and 10. Accordingly, summary judgment with respect to Claims 9 and 10 will be denied.

Although MMM conceded that Mr. Davis established a *prima facie* case, no viable claim of sex discrimination exists regarding his termination. This is so because Plaintiff has produced

not even a scintilla of evidence to show that a female employee or any other employee was treated more favorably with respect to attendance than he was because of such person's sex. Mr. Davis only maintains that a white male was treated more favorably than he was with respect to his termination, and these claims are tied exclusively to race. The court, therefore, as a matter of law, cannot conclude that MMM was motivated to intentionally discriminate against Mr. Davis because of his sex with respect to his termination. Even assuming that Mr. Davis has established a *prima facie* case with respect to his termination, he wholly fails to raise a genuine dispute of material fact regarding pretext. Accordingly, MMM is entitled to judgment as a matter of law, and the court will grant summary judgment in favor of MMM regarding Claims 11 and 12.

### C. FLSA Violation – Overtime Pay (Claim 13)

The FLSA, 29 U.S.C. §§ 201–209, requires all covered employers to pay non-exempt employees at one and one-half times their regular hourly rate for all hours in excess of 40 during one work week. 29 U.S.C. § 207(a)(1). Employers subject to the FLSA are required to "make, keep, and preserve" records of their employees' wages and hours worked. 29 U.S.C. § 211(c). An employee who brings suit for unpaid overtime compensation generally bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated. *Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1351 (5th Cir.1980), *abrogated on other grounds by McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988).

When an employer fails to maintain complete and accurate timekeeping records, however, "[t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.,* 463 F. 2d 1289, 1293 (D.C. Cir.1972)). Instead, when "the inaccuracy is due

to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a sufficient basis for damages." *Reeves,* 616 F. 2d at 1351. Unpaid-wages claims under the FLSA when the employer's records are inaccurate or inadequate and the employee puts forth representative evidence proving that he performed work for which he was not properly compensated are analyzed using the two-part *Mt. Clemens* burden-shifting framework. *United States Dep't of Labor v. Five Star Automatic Fire Prot., L.L.C.,* 987 F.3d 436, 440 (5th Cir.), *reh'g denied*, 997 F.3d 1258 (5th Cir. 2021). An employee satisfies his burden if he: (1) proves that he has performed work for which he was improperly compensated; and (2) produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Anderson,* 328 U.S. at 687-88. The burden, then, shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.* at 688. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may only be approximate. *Id.*

Additionally, a plaintiff must show that he was "employed" by an employer during the period for which he claims overtime. *Newton v. Henderson,* 47 F.3d 746, 748 (5th Cir.1995). An employee is "employed" during those hours that the employer had either actual or constructive knowledge that the employee was working. *Id.* (citation omitted). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Id.* (internal quotations omitted). "An employee is not estopped from claiming additional overtime if the employer knew or had reason to believe that

the reported information was inaccurate." *Id.* at 749 (quoting *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir.1972)).

Here, Mr. Davis contends he is unable to prove the precise extent of uncompensated work because his supervisor instructed him not to record his overtime in the Kronos time clock system typically used to record employee worktime. Pl.'s Dep. 170:10-17 (Pl.'s App., Doc. 34 at  110). It is undisputed that Mr. Davis was MMM's employee and was allowed to perform overtime work. Mr. Davis contends that his lunch break was regularly cut short or denied and that he regularly had to work beyond his eight hours at the end of the day. Pl.'s Dep. 162:4-171:14 (Pl.'s App., Doc. 34 at  115-116). He offers his "best recollection" that he was not paid for approximately 15 hours of work per week. *Id.* The court is able to determine, by just and reasonable inference, that Mr. Davis was an employee, worked the hours, and was not paid.

MMM attempts to negate the reasonableness of this inference to be drawn from Mr. Davis's evidence by arguing that the reason Mr. Davis was not paid is the result of his own failure. MMM contends it paid Mr. Davis a substantial amount for overtime work over the course of his employment, but not the specific hours Mr. Davis is claiming because Mr. Davis did not follow the formal policy for documenting his overtime work and lack of compensation. Def.'s Summ. J. Br., Doc. 30 at 3, ¶ 3-5.  Accurate timekeeping and compensation, however, is not the employee's burden; it is the employer's. The law is clear that, even if the employee does not claim his overtime compensation, the employer who knows an employer is working overtime must initiate compensation. *Newton v. Henderson,* 47 F.3d at 748.

While Mr. Davis and MMM agree that a formal policy exists for recording employee hours, Mr. Davis states, under oath, that, on a day-to-day basis and in an overtime context, there was a "general rule" that the formal policy was not to be followed. Pl.'s Dep. 168:21-172:13 (Pl.'s App.,

**Memorandum Opinion and Order – Page 24**

Doc. 34 at 112-117). Despite the existence of a formal policy that employees should record overtime, evidence of a *de facto* policy that employees should not record overtime is sufficient for the court to make a just and reasonable inference that time records were incomplete and an employee performed work for which he was improperly compensated. *Five Star Automatic,* 987 F.3d at 440. MMM raised no evidence to dispute this general rule and, thus, fails to negate the inferences raised by Mr. Davis's representative evidence showing unpaid work.

        For the reasons stated, there is a genuine dispute of material fact regarding Mr. Davis's FLSA claim for overtime pay, and MMM is, not entitled to judgment as a matter of law with respect to Claim VII.

## V.      Defendant's Evidentiary Objections

        MMM contends that Plaintiffs Yzquierdo and Prah Declarations should be stricken as untimely and improper disclosures because "[o]n September 23, [2020,] weeks after the discovery deadline and two days before the dispositive motion deadline, Plaintiff supplemented its initial disclosures to include, for the first time, five additional witnesses. And now, Plaintiff's opposition motion cites declarations from two of these individuals, Ebenezer Prah and Frederick Yzquierdo." Def.'s Reply Br., Doc. 35 at 14. Mr. Davis argues that, rather than untimely disclosures, the declarations are timely and properly supplemented information based on newly discovered evidence pursuant to Rule 26(a) and (e). Pl.'s Resp. Def. Mot. to Strike, Doc. 39 at 3-4. Mr. Davis contends that, while moving his belongings out of a storage unit, he found a paper containing names and information regarding former co-workers and potential witnesses to this case, and immediately provided the witness information to counsel who, then, immediately provided it to MMM. *Id.* at 2-3. MMM argues that Messrs. Prah and Yzquierdo's testimony concerning the seven-minute rule should not be considered by the court. As the court has previously stated that Mr. Davis's testimony alone

**Memorandum Opinion and Order – Page 25**

was sufficient to raise a genuine dispute of material fact regarding the seven-minute rule, it need not consider testimony of these two former employees. Accordingly, the court **overrules as moot** MMM's objection of those portions of these two declarations.

MMM also contends that Mr. Davis's unsworn interrogatories, produced on January 10, 2019, are inadmissible because they do not comply with the strict requirements for affidavit testimony. Def.'s Reply Br., Doc. 35 at 11. Mr. Davis responds that he submitted verified answers to the interrogatories on March 9, 2020, but that the verification was inadvertently left out of the summary judgment response evidence. Pl.'s Resp. Def. Mot. to Strike, Doc. 39 at 4-5; Exhibit C. MMM replies that the verification is insufficient because it states that Mr. Davis's responses are "based on reasonable inquiry that the foregoing . . . are true and correct to best of [his] knowledge, information, and belief" in contravention of Rule 56(c)(4) which requires that summary judgment evidence be based on personal knowledge alone. Def.'s Reply Def. Mot. to Strike, Doc. 40 at 4-5.

The court agrees that summary judgment evidence should be based on personal knowledge when it is the testimony or sworn statement of a person. In this case, however, to strike the interrogatory answers would be exalting form over substance because the bulk of the information in Mr. Davis's interrogatory answers is contained in his deposition and affidavit. At this stage, the court is reticent to strike the entirety of the interrogatory answers. Moreover, if this were really a contention that MMM wanted to pursue, it should have filed a motion to compel if the answers were incomplete or evasive. Fed. R. Civ. P 37(a)(4). None was filed.

Accordingly, the court **denies** MMM's motion to strike Mr. Davis's Interrogatory Responses.

**VI.    Conclusion**

For the reasons herein stated, the court **grants** Defendant's Motion for Summary Judgment (Doc. 29) with respect to Plaintiff's Title VII and TCHRA race and sex discrimination claims for

failure to promote to HR/Administrative Manager in July 2015 (Claims 1-4) and Title VII and TCHRA sex discrimination claims for wrongful termination in January 2016 (Claims 11-12). The court **denies** Defendant's Motion for Summary Judgment (Doc. 29) with respect to Plaintiff's Title VII and TCHRA race and sex discrimination claims for failure to promote to Maintenance Planner in January 2016 (Claims 5-8), Title VII and TCHRA race discrimination claims for wrongful termination in January 2016 (Claims 9-10), and the FLSA overtime pay claim (Claim 13).

The court has ruled on MMM's summary judgment motion. Neither party has prevailed on all of their claims or defenses at this stage. This ruling puts the parties on notice as to where they stand, allows them to reevaluate their respective positions, and decide whether they wish to proceed to trial or resolve this matter short of trial. Neither party is "out of the woods" yet, and no person can predict what a jury will do based on the facts and determinations of credibility. The parties are to inform the court by **August 27, 2021**, whether they are interested in a free settlement conference before a United States Magistrate Judge. In light of the COVID-19 Pandemic, if this case is not settled, the court has no room on its docket to try to this action until mid-2022 or later.

**It is so ordered** this 13th day of August, 2021.

Sam A. Lindsay
United States District Judge